Jonathan D. Ball (*ballj@gtlaw.com*)
GREENBERG TRAURIG LLP
MetLife Building
200 Park Avenue
New York, New York 10166
Tel: (212) 801-9200; Fax: (212) 801-6400
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GROUP ONE LTD.,<br><br>    Plaintiff,<br><br>  v.<br><br>GTE GmbH and RALF WEIGEL<br><br>    Defendants. | C.A. No. 1:20-cv-02205-MKB-RER |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S EX PARTE
APPLICATION FOR A TEMPORARY RESTRAINING ORDER, ORDER
AUTHORIZING ALTERNATIVE SERVICE, AND ORDER TO SHOW CAUSE FOR
<u>PRELIMINARY INJUNCTION</u>**

GREENBERG TRAURIG LLP

Jonathan D. Ball, Ph.D.
MetLife Building
200 Park Avenue
New York, NY 10166
Tel: (212) 801-9200
Fax: (212) 801-6400
ballj@gtlaw.com

*Attorneys for Plaintiff*
*Group One Ltd.*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

STATEMENT OF FACTS ................................................................................................... 2

ARGUMENT ...................................................................................................................... 3

   I.   THIS COURT HAS PERSONAL JURISDICTION OVER THE DEFENDANTS .......... 3

   II.   GROUP ONE MEETS THE STANDARD FOR A TEMPORARY RESTRAINING
       ORDER AND PRELIMINARY INJUNCTION. ............................................................ 5

      A.  Group One Is Likely to Succeed on The Merits of Its Claims Against Defendants..... 5

      B.  Group One Will Suffer Irreparable Harm if the Court Does Not Grant Immediate
         Relief ....................................................................................................................... 12

      C.  The Balance of Hardships Weighs in Group One's Favor ........................................ 17

      D.  The Injunctive Relief Sought By Group One Serves the Public Interest.................... 19

      E.  Group One's Request for Injunctive Relief Is Timely. .............................................. 19

   III.  EX PARTE RELIEF SHOULD BE GRANTED ............................................................ 20

   IV.  THE COURT SHOULD NOT REQUIRE GROUP ONE TO POST A BOND OR
       ALTERNATIVELY, REQUIRE ONLY A MINIMAL BOND ...................................... 21

   V.   GROUP ONE IS ENTITLED TO AN ORDER AUTHORIZING SERVICE OF
       PROCESS BY EMAIL ON DEFENDANTS ................................................................. 22

      A.  Rule 4(f)(3) of the Federal Rule of Civil Procedure Authorizes Alternate Service on
         Individuals in a Foreign Country. ............................................................................. 22

CONCLUSION ................................................................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acumed LLC v. Stryker Corp.*,
    551 F.3d 1323 (Fed. Cir. 2008)...........................................................................14

*AMTO, LLC v. Bedford Asset Mgmt., LLC*,
    2015 U.S. Dist. LEXIS 70577 (S.D.N.Y. June 1, 2015).........................................24

*Apple Inc. v. Samsung Elecs. Co.*,
    695 F.3d 1370 (Fed. Cir. 2012)...........................................................................12

*United States ex rel. Barko v. Halliburton Co.*,
    952 F. Supp. 2d 108 (D.D.C. 2013) .....................................................................23

*BigStar Entm't, Inc. v. Next Big Star, Inc.*,
    105 F. Supp. 2d 185 (S.D.N.Y. 2000).....................................................................6

*Blumenthal Distrib. v. Exec. Chair, Inc.*,
    2010 U.S. Dist. LEXIS 142193 (E.D.N.Y. Nov. 9, 2010)......................................14

*Broadcom Corp. v. Emulex Corp.*,
    732 F.3d 1325 (Fed. Cir. 2013)...........................................................5, 13, 14, 16

*Broadfoot v. Diaz (In re International Telemedia Assocs.)*,
    245 B.R. 713 (Bankr. N.D. Ga. 2000) ..................................................................25

*Celsis in Vitro, Inc. v. Cellzdirect, Inc.*,
    664 F.3d 922 (Fed. Cir. 2012)........................................................................14, 19

*CJ Prods. LLC v. Snuggly Plushez LLC*,
    809 F. Supp. 2d 127 (E.D.N.Y. 2011) ..................................................................20

*Cordelia Lighting, Inc. v. Zhejiang Yankon Grp.*,
    2015 WL 1265241 (C.D. Cal. Apr. 27, 2015) ......................................................15

*D.H. Blair & Co. v. Gottdiener*,
    462 F.3d 95 (2d Cir. 2006)...................................................................................4

*DeWitt Stern Group, Inc. v. Eisenberg*,
    2013 U.S. Dist. LEXIS 78598 (S.D.N.Y. June 4, 2013)........................................21

*Doctor's Assocs. v. Distajo*,
    107 F.3d 126 (2d Cir. 1997)................................................................................21

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
   717 F.3d 1336 (Fed. Cir. 2013).......................................................................14

*eBay Inc. v. MercExchange, L.L.C.* ,
   547 U.S. 388 (2006) ......................................................................................14

*Elcometer, Inc. v. TQC-USA, Inc.*,
   2013 U.S. Dist. LEXIS 19874 (E.D. Mich. Feb. 14, 2013) ....................................26

*FTC v. PCCare247 Inc.*,
   2013 U.S. Dist. LEXIS 31969 (S.D.N.Y. Mar. 7, 2013) .................................23, 25

*FTC v. Pecon Software Ltd.*,
   2013 U.S. Dist. LEXIS 111375 (S.D.N.Y. Aug. 7, 2013) .....................................24

*Gaffigan v. Doe*,
   689 F. Supp. 2d 1332 (S.D. Fla. 2009) ..............................................................26

*Gang Li v. Dolar Shop Rest. Grp., LLC*,
   2019 U.S. Dist. LEXIS 156851 (E.D.N.Y. Sept. 13, 2019).....................................24

*Genentech, Inc. v. Novo Nordisk A/S*,
   935 F. Supp. 260 (S.D.N.Y. 1996), *rev'd on other grounds*, 181 F.3d 1361
   (Fed. Cir. 1997).......................................................................................14

*Glaxo Grp. Ltd. v. Apotex, Inc.*,
   64 F. App'x 751 (Fed. Cir. Apr. 22, 2003) .........................................................17

*Grand River Enter. Six Nations, Ltd. v. Pryor*,
   481 F.3d 60 (2d Cir. 2007)......................................................................14, 16

*Gurung v. Malhotra*,
   279 F.R.D. 215 (S.D.N.Y. 2011) ......................................................................24

*Hybritech Inc. v. Abbott Labs.*,
   849 F.2d 1446 (Fed. Cir. 1988).........................................................................19

*Ideavillage Prods. Corp. v. Bling Boutique Store*,
   2017 U.S. Dist. LEXIS 61189 (S.D.N.Y. Apr. 21, 2017).......................................20

*Ingraham v. Carroll*,
   687 N.E.2d 1293 (N.Y. 1997)............................................................................4

*J.P. Morgan Sec. v. La. Citizens Prop. Ins. Corp.*,
   712 F. Supp. 2d 70 (S.D.N.Y. 2010).....................................................................6

*Jacobson v. Cox Paving Co.*,
   1991 U.S. Dist. LEXIS 17787 (D. Ariz. May 20, 1991) ........................................18

*Jazini by Jazini v. Nissan Motor Co.*,
148 F.3d 181 (2d Cir. 1998)............................................................................................3

*Johnson & Johnson v. Azam Int'l Trading*,
2013 U.S. Dist. LEXIS 112755 (E.D.N.Y. July 18, 2013) .......................................................4

*Kearns v. Chrysler Corp.*,
32 F.3d 1541 (Fed. Cir. 1994).....................................................................................5, 13

*King v. Innovation Books*,
976 F.2d 824 (2d Cir. 1992)............................................................................................20

*Kustom Signals, Inc. v. Applied Concepts, Inc.*,
264 F.3d 1326 (Fed. Cir. 2001).......................................................................................6

*McCluskey v. Belford High Sch.*,
2010 U.S. Dist. LEXIS 62608 (E.D. Mich. June 24, 2010)..............................................26

*McGraw-Hill Global Educ. Holdings, LLC v. Mathrani*,
295 F. Supp. 3d 404 (S.D.N.Y. 2017).................................................................................3

*Microsoft Corp. v. Doe*,
2012 U.S. Dist. LEXIS 162122 (E.D.N.Y. Nov. 13, 2012)...............................................26

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*,
290 F.3d 578 (3d Cir. 2002)........................................................................................15, 16

*Pfizer, Inc. v. Teva Pharms. USA, Inc.*,
429 F.3d 1364 (Fed. Cir. 2005).......................................................................................6

*Philip Morris USA Inc. v. Veles Ltd.*,
2007 U.S. Dist. LEXIS 19780 (S.D.N.Y. Mar. 13, 2007) ..........................................22, 25, 26

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005)........................................................................................7

*Prediction Co. LLC v. Rajgarhia*,
2010 U.S. Dist. LEXIS 26536 (S.D.N.Y. Mar. 22, 2010) .............................................25, 26

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
702 F.3d 1351 (Fed. Cir. 2012).......................................................................................14

*Read Corp. v. Viper Int'l*,
1996 U.S. App. LEXIS 3847 (Fed. Cir. Feb. 23, 1996) .......................................................18

*Rio Props., Inc. v. Rio Int'l Interlink*,
284 F.3d 1007 (9th Cir. 2002) ..........................................................................................23

*RSM Prod. Corp. v. Fridman*,
    2007 U.S. Dist. LEXIS 37713 (S.D.N.Y. May 24, 2007).......................................................22

*Salinger v. Colting*,
    607 F.3d 68 (2d Cir. 2010)..........................................................................................................5

*Smith Int'l, Inc. v. Hughes Tool Co.*,
    718 F.2d 1573 (Fed. Cir. 1983)................................................................................................18

*Sofamor Danek Group, Inc. v. DePuy-Motech, Inc.*,
    74 F.3d 1216 (Fed. Cir. 1996)....................................................................................................7

*Sulzer Mixpac AG v. Medenstar Indus. Co.*,
    312 F.R.D. 329 (S.D.N.Y. Nov. 27, 2015) .........................................................................24, 27

*Sunward Elecs., Inc. v. McDonald*,
    2003 U.S. Dist. LEXIS 28127 (N.D.N.Y Apr. 24, 2003) ..........................................................3

*Teledyne Indus., Inc. v. Windmere Prods, Inc.*,
    433 F. Supp. 710 (S.D. Fla. 1977) ...........................................................................................17

*Toro Co. v. Deere & Co.*,
    355 F.3d 1313 (Fed. Cir. 2004)..................................................................................................7

*Trebro Mfg., Inc. v. Firefly Equip., LLC*,
    748 F.3d 1159 (Fed. Cir. 2014)...................................................................................15, 17, 19

*U2 Home Entm't, Inc. v. Bowery Music City, Inc.*,
    2003 U.S. Dist. LEXIS 21992 (S.D.N.Y. Dec. 8, 2003) .........................................................20

*Virgin Enters. Ltd. v. Nawab*,
    335 F.3d 141 (2d Cir. 2003).......................................................................................................5

*In re Vuitton Et Fils, S.A.*,
    606 F.2d 1 (2d Cir. 1979)..........................................................................................................21

*Westchester Legal Services, Inc. v. County of Westchester*,
    607 F. Supp. 1379 (S.D.N.Y. 1985)...........................................................................................6

*Williams-Sonoma Inc. v. Friendfinder Inc.*,
    2007 U.S. Dist. LEXIS 31299 (N.D. Cal. Apr. 17, 2007) ......................................................25

*Yurman Design Inc. v. Chaindom Enters.*,
    1999 U.S. Dist. LEXIS 18382 (S.D.N.Y. Nov. 29, 1999) .........................................................6

**Statutes**

35 U.S.C. 282................................................................................................................................6

35 U.S.C. § 271 ..................................................................................................................6

35 U.S.C. § 283 ...........................................................................................................1, 13

**Other Authorities**

C.P.L.R. § 302(a)(1) ......................................................................................................3, 4

C.P.L.R. § 302(a)(2) .........................................................................................................4

Fed. R. Civ. P. 65(b) .......................................................................................................20

Fed. R. Civ. P. 4(f) ........................................................................................22, 23, 24, 25

Fed. R. Civ. P. R. 65 ..........................................................................................3, 5, 20, 21

Pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure, and 35 U.S.C. § 283, Group One Ltd. (hereinafter, "Group One" or "Plaintiff") by and through its undersigned counsel, hereby moves the Court *ex parte* for a Temporary Restraining Order, Order Authorizing Alternate Service, and Order to Show Cause for Preliminary Injunction, and states as follows:

## INTRODUCTION

Defendants GTE GmbH and Ralf Weigel (collectively "Defendants" or "GTE), are illicitly incorporating the patented, innovative features of Group One's let-detection systems[1] into their infringing Trinity System to avoid losing their stranglehold on the market to Group One's superior system. That infringement should be enjoined.

Group One is a pioneer and innovator in let-detection systems, and has been granted numerous patents for its systems. Central to this motion is U.S. Patent No. 10,583,341 ("the '341 Patent" or "Asserted Patent") (Goldstein Decl., Ex. 1), which is directed to systems for determining if a service let occurs by detecting and measuring a force exerted by the net. The claims also include an integrated shot clock control, anticipating a new rule requiring an on-court shot clock.

GTE is Group One's direct and only competitor in the market for providing let-detection systems to major tennis tournaments, events, leagues, sanctioning bodies, and organizations for those matches which include the let rule. (Goldstein Decl. ¶ 6.) Before its infringement, GTE provided a rudimentary let-detection system to various tennis tournaments that was unchanged for approximately twenty years. (Goldstein Decl. ¶¶ 13-14.) Once Group One began marketing its innovative let-detection system and GTE began losing customers to Group One's superior system, GTE abruptly began incorporating into its infringing Trinity System innovations that were driving

---

[1] Tennis gameplay begins with a serve. If the tennis ball contacts the net on the serve, but then still proceeds to the proper service box, it is called a "let."

1

demand for Group One's let-detection system. (*Id.* at ¶ 14.) These changes included copying Group One's integrated shot clock function. (*Id.* at ¶ 16.)

Group One filed this suit on May 14, 2020, after its efforts to stop GTE's infringement were unsuccessful. (Dkt. 1.) After filing suit, the United States Tennis Association ("USTA") announced, unexpectedly, that the Governor of New York had approved its plan to host the 2020 U.S. Open at the Billie Jean King National Tennis Center in New York from August 24, 2020 to September 13, 2020. (Goldstein Decl. ¶ 24, Ex. 12.) Unless enjoined, GTE will infringe the '341 patent during the upcoming 2020 U.S. Open with its copycat let-detection system.[2] (Goldstein Decl. ¶¶ 14-19.) GTE's infringement will irreparably harm Group One, causing it to lose current and future sales, damaging its business reputation, and impairing its business relations with current and prospective customers. (Goldstein Decl. ¶¶ 19-22.)

Due to the high likelihood of success on Group One's claims for patent infringement, and the immediate and irreparable harm facing Group One, GTE should be restrained and preliminarily enjoined from making, using, selling, offering for sale, and importing its infringing Trinity System within the U.S.

## STATEMENT OF FACTS

The facts supporting Plaintiff's requests herein are set forth in the Complaint and the accompanying Declaration of Frederick Goldstein, dated July 6, 2020. For brevity, those facts are not repeated here.

---

[2] GTE has provided its let-detection system to the U.S. Open for many years though multi-year contracts. (Goldstein Decl. ¶ 6.). Given that history, it is all but certain that GTE has offered for sale and will import and use its infringing system at the upcoming 2020 U.S. Open. (Goldstein Decl. ¶¶ 15-19).

## ARGUMENT

### I.  THIS COURT HAS PERSONAL JURISDICTION OVER THE DEFENDANTS

For a district court to grant a plaintiff injunctive relief under Rule 65 of the Federal Rules of Civil Procedure, the court must have personal jurisdiction over the defendant. *Sunward Elecs., Inc. v. McDonald*, 2003 U.S. Dist. LEXIS 28127, *2-*3 (N.D.N.Y Apr. 24, 2003). However, prior to discovery, a plaintiff need only make a *prima facie* showing of personal jurisdiction. *Jazini by Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998) ("'[P]rior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith . . . legally sufficient allegations of jurisdiction', i.e., by making a 'prima facie showing' of jurisdiction.") (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990), *cert. denied*, 498 U.S. 854 (1990)).

New York's long-arm statute is satisfied here on multiple grounds, including under § 302(a)(1) of the New York Civil Practice Law and Rules ("C.P.L.R."), which provides:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent: (1) transacts any business within the state or contracts anywhere to supply goods or services in the state . . . .

C.P.L.R. § 302(a)(1).

GTE has, among other things, infringed Group One's duly issued patents in New York, through at least its use, sale, offer for sale and importation of its let detection systems in New York. (Goldstein Decl. ¶¶ 16-19.) GTE will continue to infringe at the upcoming 2020 U.S. Open in New York. (*Id.*) These activities alone support personal jurisdiction over Defendants in New York. *See McGraw-Hill Global Educ. Holdings, LLC v. Mathrani*, 295 F. Supp. 3d 404, 410 (S.D.N.Y. 2017) ("This Court need look no further than § 302(a)(1)" to establish personal jurisdiction over

defendants accused of infringement related to sales of products in New York.); *Johnson & Johnson v. Azam Int'l Trading*, 2013 U.S. Dist. LEXIS 112755, at *9-*14 (E.D.N.Y. July 18, 2013).

Personal jurisdiction also exists under C.P.L.R. § 302(a)(2) because GTE has and will continue to commit tortious acts of infringement within the State. Specifically, GTE has, among other things, infringed Group One's duly-issued patents in New York, through at least its use, sale, offer for sale and importation of its let detection systems in New York. (Goldstein Decl. ¶¶ 16-19.) GTE will continue to infringe at the upcoming U.S. Open in New York. (*Id.*) These activities alone support personal jurisdiction over Defendants in New York. *See* C.P.L.R. § 302(a)(2).

Because the New York long-arm statute does not extend to the limits of due process, a separate due process analysis is unnecessary. *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir. 2006) ("[T]he constitutional requirements of personal jurisdiction are satisfied because application of N.Y. C.P.L.R. § 302(a) meets due process requirements."); *Ingraham v. Carroll*, 687 N.E.2d 1293, 1295 (N.Y. 1997) ("The subdivision 302(a)(3) was not designed to go to the full limits of permissible jurisdiction. The limitations contained in subparagraphs (i) and (ii) were deliberately inserted to keep the provision well within constitutional bounds." (internal quotations and citations omitted)). Nonetheless, minimum contacts in a due process analysis are clearly satisfied in this case. Therefore, asserting personal jurisdiction in the instance case does not offend traditional notions of fair play and substantial justice because Defendants have imported, distributed, offered for sale and/or sold infringing products for the express purpose that all such activities are to occur in New York, and infringed and will infringe the Asserted Patent in New York, causing injury to Group One in New York. *See, e.g.*, C.P.L.R. § 302(a)(1); C.P.L.R. § 302(a)(2).

II.     **GROUP ONE MEETS THE STANDARD FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION.**

This Court has the authority to grant temporary, preliminary, and final injunctive relief as it may deem reasonable to prevent or restrain patent infringement. Fed. R. Civ. P. 65. Courts have granted temporary restraining orders and preliminary injunctions in similar cases. *See, e.g.*, *Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1549-1550 (Fed. Cir. 1994) ("In view of the fact that the principal right afforded by a patent is the 'right to exclude,' … 'the nature of the patent grant … weighs against holding that monetary damages will always suffice to make the patentee whole.'") (quoting *H.H. Robertson Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 387-88 (Fed. Cir. 1987)); *Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1338 (Fed. Cir. 2013) ("[t]he courts have a long history of remedying trespass on property rights—including patent rights—by removing the trespasser.").

In deciding an application for a temporary restraining order or preliminary injunction, courts in the Second Circuit apply the same four-factor analysis, which requires the movant to establish (1) "either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation"; (2) that the movant is "likely to suffer irreparable injury in the absence of an injunction"; (3) "the balance of hardships tips in [the movant's] favor"; and (4) the "'public interest would not be disserved' by the issuance of a preliminary injunction." *Salinger v. Colting*, 607 F.3d 68, 74, 79-80 (2d Cir. 2010) (citations omitted); *see also Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 145 (2d Cir. 2003).

A.      **Group One Is Likely to Succeed on The Merits of Its Claims Against Defendants.**

In determining whether a plaintiff has demonstrated a likelihood of success on the merits of the ultimate case, a court is not called upon to decide the full merits of the controversy. The court need only find that the plaintiff has presented a strong *prima facie* case to justify the

discretionary issuance of preliminary relief. *J.P. Morgan Sec. v. La. Citizens Prop. Ins. Corp.*, 712 F. Supp. 2d 70, 75–76 (S.D.N.Y. 2010). The movant does not need to prove that success is certain, but only that the probability of prevailing is better than fifty percent. *BigStar Entm't, Inc. v. Next Big Star, Inc.*, 105 F. Supp. 2d 185, 191 (S.D.N.Y. 2000).

Moreover, a likelihood of success on the merits on every claim for relief is not required. Instead, the movant need only show a likelihood of success on the merits of at least one of its claims. *Yurman Design Inc. v. Chaindom Enters.*, 1999 U.S. Dist. LEXIS 18382, at \*14 (S.D.N.Y. Nov. 29, 1999) ("Where a plaintiff seeks a preliminary injunction and asserts multiple claims upon which the relief may be granted, the plaintiff need only establish a likelihood of success on the merits of one of the claims.") (internal citations omitted); *Westchester Legal Services, Inc. v. County of Westchester*, 607 F. Supp. 1379, 1382 (S.D.N.Y. 1985) (same). For this reason, this motion focuses on Group One's patent infringement claims against GTE even though Group One is likely to prevail on each of its claims.

### 1.     Patent Infringement Under 35 U.S.C. § 271.

There is no question that Group One is likely to succeed on its patent  infringement claims against GTE. GTE's Trinity let detection system infringes at least claim 9 of the '341 Patent because it meets every element of that claim.[3] *See Kustom Signals, Inc. v. Applied Concepts, Inc.*, 264 F.3d 1326, 1333 (Fed. Cir. 2001). "Determining the likelihood of infringement requires two steps, first claim construction and second a comparison of the properly construed claims to the accused product." *Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 429 F.3d 1364, 1372 (Fed. Cir. 2005).

---

[3] An issued U.S. Patent is presumed valid.  See 35 U.S.C. 282. Consequently, a challenger bears the burden of proving invalidity by clear and convincing evidence."

In construing a claim, courts begin with the language of the claim, which "'define[s] the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). Claim terms "'are generally given their ordinary and customary meaning,'" which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1312- 1313 (quoting *Vitrionics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).

Beyond that, to ascertain meaning the court may look first to the intrinsic evidence (the context of the claims, the patent specification, and the prosecution history). *Phillips*, 415 F.3d at 1313-1316. Most often, this will resolve any ambiguity in the claim language, if such exists. *Id.* at 1315. The court may not, however, import limitations from the specification into the claim, such as by limiting the claims to the embodiments described in the specification or limiting the claim in any way such that the clear language and meaning of the claim is lost. *Id.* at 1323-24.

Claim construction at the preliminary injunction stage need not be comprehensive or final, *Sofamor Danek Group, Inc. v. DePuy-Motech, Inc.*, 74 F.3d 1216, 1221 (Fed. Cir. 1996), and no explicit construction is necessary if the construction is simple, or for claims whose meaning cannot be reasonably disputed, *Toro Co. v. Deere & Co.*, 355 F.3d 1313, 1322 (Fed. Cir. 2004).

Here, all the terms in the claims of the '341 patent can be given their ordinary meaning and no claim construction is required to assess infringement at this time. *See Toro*, 355 F.3d at 1322.[4]

## 2.   The Trinity System Infringes At Least Claim 9 of the '341 Patent.

---

[4] To simplify the issues for this motion for preliminary injunction, Group One is asserting a likelihood of success on only one claim of the '341 Patent. The Trinity System infringes other claims of this and other patents asserted in this matter.

The Trinity System is an "electronic net cord monitor . . . designed for Tennis." Ex. 6 at 1. "The system consist[s of] two wireless sensors on the top of the net [that is] paired [with a] handset per [*sic*] court, which detects all net faults, [such as lets] during the serve." *Id.* The Trinity System connects to and/or communicates with a chair umpire's tablet to notify the umpire of whether a let has occurred (depicted below). *Id.* at 5



To detect lets, the Trinity System measures a force associated with a tennis net via "two wireless sensors on the top of the net." In the Trinity System, these sensors are piezoelectric transducers that measure and sense the vibrational force exerted by the net. *See, e.g.*, *Why the Piezoelectric Effect is Tennis' Technological Ace* (describing how the Trinity System operates using piezoelectric sensors) (Ex. 3); Ex. 5, U.S. Patent No. 5,585,778. When the net vibrates at above a predetermined threshold, *i.e.* when the ball strikes or exerts a force on the net, the Trinity System provides an audio (beep) and/or visual (light) notification to the chair umpire. *See* Ex. 3 (explaining

that the Trinity System beeps when it detects a let); *see also* Ex. 6 at 2 (indicating that the Trinity

System "[b]eep[s]" and providing the handset protocol "if 'let' = beep").

In fact, the Trinity System contains "8 Sensitivity steps from low to high" to ensure that

the force detected by the device that trigger user notification is indicative of a ball striking the net

and not a different force on the net (*i.e.*, to avoid false let calls). Ex. 6 at 2. The Trinity Specification

explains that the adjustable sensitivity is particularly helpful to avoid false let calls caused by wind,

and even compares its functionality to Group One's Net System.[5] It states that the Trinity System

"is [] very robust against wind influence during outdoor events. There is no need to switch off the

'beep' because of false let calls from the system. When the umpire using the other system [Group

One's system], he have to switch off the beep, that nobody can hear the wrong let calls. Group

One call it 'Advanced Wind Setting'." *Id.* at 1.

To enable or arm the Trinity System, a user presses an ON button at the front of the Trinity

handset. *See id.* at 3 (providing a picture of the Trinity handset). In discussing the purportedly

"robust" and superior wind settings for the Trinity System, the Trinity Specification explains that

the system only provides an indication when a let is detected. *Id.* at 1 ("There is no need to switch

off the 'beep' because of false let calls from the system.") The Trinity System also has an integrated

shot clock function for enforcing a time limit for a tennis player to serve via a red button disposed

at the bottom of the handset. *Id.* at 3 (providing a picture of the Trinity handset and showing a red

button on the bottom of the handset with a clock icon denoting its function.) The Trinity

Specification provides the handset protocol for the integrated shot clock and explains that the clock

icon represents the shot clock functionality (depicted below):

---

[5] The Trinity Specification contains false and defamatory statements about Group One and its Net
System, which are the subject of Counts Seven through Thirteen of the Complaint.

| | | |
|---|---|---|
| ⏱ | Start        Serve Clock | 1.Click |
| | Pause        Serve Clock | 2. Click |
| | Resume     Serve Clock | 3. Click |
| | Reset         Serve Clock | Double Click |

*Id.* For purposes of this motion, Group One provides below a Claim Chart analyzing the

infringement of Claim 9 of the '341 patent by GTE's Trinity system.

**Infringement of Claim 9 of the '341 Patent**

| A method, comprising: | The Trinity System practices a method: |
|---|---|
| Measuring a force associated with a net extending across a tennis court. | The Trinity System measures a force associated with a net extending across a tennis court. Indeed, the Trinity Specification provides that "[t]he new wireless Trinity® electronic net cord monitor is ***a calibrated measurement instrument*** designed for Tennis." (Ex. 6 at 1.) |
| Indicating using an indicator, whether a threshold force meets or exceeds during a short duration using at least one of (1) a vibration force, (2) a light, and (3) a sound, the threshold force being indicative of an impact between a ball and the net; | When a ball strikes the net (providing a threshold force that exceeds a predetermined level during a short duration), the Trinity System provides at least a sound (beep) and visual indication (light). The threshold force in Trinity is adjusted with its "8 stage sensitivity switch", as shown in the picture below by the dial in the blue circle. *Id.* |

<table>
<tr>
<td></td>
<td>



(Ex. 6.)
</td>
</tr>
<tr>
<td>Pressing a button on one of a handset and a tablet to arm a let detection function, wherein the indicating step is only performed when the let detection function has been armed; and</td>
<td>

As shown in the picture below by the "ON" button circled in orange, the Trinity let detection system is armed by pressing a button on at least the handset connected to a tablet, and only provides an indication when the let detection function is armed.  (*Id.*)


</td>
</tr>
</table>

| | |
|---|---|
| Pressing a button on one of the handset and the tablet to control a shot clock in order to help enforce a time limit imposed upon a player at various stages of a tennis match | As shown in the picture below the red button (circled in red), the Trinity let detection system handset has an integrated shot clock control which controls the on court shot clock by pressing the button on a handset. (*Id.*)  |

Group One is therefore likely to succeed on the merits of its patent infringement claims.

## B.  Group One Will Suffer Irreparable Harm if the Court Does Not Grant Immediate Relief

"[T]o satisfy the irreparable harm factor in a patent infringement suit, a patentee must establish both of the following requirements: 1) that absent an injunction, it will suffer irreparable harm, and 2) that a sufficiently strong causal nexus relates the alleged harm to the alleged infringement." *Apple Inc. v. Samsung Elecs. Co.*, 695 F.3d 1370, 1374 (Fed. Cir. 2012).

Group One has suffered and will continue to suffer irreparable harm to its interests due to GTE's willful acts of infringement unless this Court issues a temporary restraining order and preliminary injunction pending the resolution of this case. (Goldstein Decl. ¶¶ 20-22.) The irreparable harm to Group One cannot be fully remedied after a final adjudication, whether by

damages or a permanent injunction. (*Id.*) Group One has invested significant effort in building the reputation of quality of its state-of-the-art let-detection system, which contains novel features that have significantly advanced match play in tennis. (*Id.* ¶ 5.) Group One has also built a reputation for its patent portfolio in tennis. (*Id.* at ¶¶ 2, 5.) Having failed to introduce a single innovation of their own since first entering the market in 1995, Defendants are piggy-backing on Group One's innovations. (*Id*. ¶¶ 13-14.) Defendants market their competing let detection systems in the United States, in the same channels where Group One operates. (*Id*. ¶ 6.) Given the limited size of the market, an infringing sale for GTE is more than a lost sale to Group One—it is a lost customer relationship, not just for the let detection system, but potentially for Group One's full range of tennis products. (*Id.* at 7-10.) Defendants' infringement has and will to damage the goodwill and reputation for quality which Group One has spent significant time and resources to develop in the tennis market. (*Id.* at ¶¶ 5, 20-22.)

U.S. patent law expressly provides for the grant of injunctions to prevent infringement, "in accordance with the principles of equity." 35 U.S.C. § 283. "In view of the fact that the principal right afforded by a patent is the 'right to exclude,' … 'the nature of the patent grant … weighs against holding that monetary damages will always suffice to make the patentee whole.'" *Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1549-50 (Fed. Cir. 1994) (quoting *H.H. Robertson Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 387-88 (Fed. Cir. 1987) (second alteration in original)). "Indeed, 'while monetary relief is often the sole remedy for past infringement, it does not follow that a monetary award is also the sole remedy against *future* infringement." *Kearns*, 32 F.3d at 1550 (quoting *Atlas Powder Co. v. Ireco Chemicals*, 773 F.2d 1230, 1233 (Fed. Cir. 1985)). That is why "[t]he courts have a long history of remedying trespass on property rights—including patent rights—by removing the trespasser." *Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1338 (Fed.

Cir. 2013). The court's equity analysis "proceeds with an eye to the 'long tradition of equity practice' granting 'injunctive relief upon a finding of infringement in the vast majority of patent cases.'" *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1362 (Fed. Cir. 2012) (citation omitted); *Blumenthal Distrib. v. Exec. Chair, Inc.*, 2010 U.S. Dist. LEXIS 142193, at *34 (E.D.N.Y. Nov. 9, 2010) ("'given the difficulty of protecting a right to *exclude* through monetary remedies'… most courts have granted injunctions upon a finding of infringement") (emphasis in original; quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 395 (2006) (Roberts, J., concurring)).

"Patent property rights are especially difficult to protect with solely monetary relief …." *Broadcom*, 732 F.3d at 1338 (citing *Presidio,* 702 F.3d at 1362-1363). Specifically, "[w]here two companies are in competition against one another, the patentee suffers the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented inventions." *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013). Moreover, "[i]rreparable injury encompasses different types of losses that are often difficult to quantify, including lost sales and erosion in reputation and brand distinction," *id.* at 1344, as well as "decreases in market share" and "[d]ecreases in revenue which cause decreases in research and development funding or lost business opportunities…." *Genentech, Inc. v. Novo Nordisk A/S*, 935 F. Supp. 260, 282 (S.D.N.Y. 1996), *rev'd on other grounds*, 181 F.3d 1361, 1368 (Fed. Cir. 1997); *see Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008) ("infringement may cause a patentee irreparable harm not remediable by a reasonable royalty"); *Celsis in Vitro, Inc. v. Cellzdirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012) ("Price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm."); *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 67 (2d Cir. 2007)

("It is well-established that a movant's loss of current or future market share may constitute irreparable harm."); *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 596 (3d Cir. 2002) ("In a competitive industry where consumers are brand-loyal, . . . [the] loss of market share is a potential harm which cannot be redressed by a legal or equitable remedy following a trial.")

Where a "lost sale also translates into a lost customer," such as in industries where, product life spans several years, this tips the scale in favor of finding irreparable harm. *See Trebro Mfg., Inc. v. Firefly Equip., LLC*, 748 F.3d 1159, 1170 (Fed. Cir. 2014); *Cordelia Lighting, Inc. v. Zhejiang Yankon Grp*., 2015 WL 1265241, at *8 n.2 (C.D. Cal. Apr. 27, 2015) (noting the facts "tip[] in favor of irreparable harm" where "fixtures have life spans of roughly ten years," "once a customer purchases a fixture, that customer is essentially gone from the market").

Here, the let-detection services industry is a highly competitive industry with only a small number of customers, in which even a single lost sale has significant repercussions. (Goldstein Decl. ¶¶ 7-10.) Indeed, the market for significant services contracts is essentially limited to the ATP tour, the WTA tour, and four marquee tennis tournaments (also known as the "Grand Slams"— the Australian Open, the U.S. Open, Wimbledon, and the French Open). (Goldstein Decl. ¶ 7.) Unlike commodity items, such as disposable razors or consumer goods, that are purchased monthly, or weekly, the Grand Slams take place just once a year, and services contracts for these events generally span several years. Goldstein Decl. ¶¶ 7-8.) Consequently, a lost sale to a competitor, such as GTE, means that the lost customer is unlikely to seek Group One's services for years, if ever. (Goldstein Decl. ¶ 10.)

This harm is compounded because consumers seeking let-detection services are heavily influenced by the experiences and choices of these Grand Slam tournaments, and generally

15

consumers use the same let-detection provider used by the Grand Slam tournaments and are likely to purchase the same service provider again and again. (Goldstein Decl. ¶¶ 7, 9.) Accordingly, a single lost sale can mean a loss of future business both to the same customer and to others. (Goldstein Decl. ¶ 10.) *Grand River Enterprise Six Nations*, 481 F.3d at 67 ("In a competitive industry where consumers are brand-loyal, . . . loss of market share is a 'potential harm which cannot be redressed by a legal or an equitable remedy following a trial.'") (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co*., 290 F.3d 578, 596 (3d Cir. 2002)).

Without an injunction, GTE will continue offering its infringing Trinity System, incorporating Group One's patented features, in the U.S. market that Group One is entitled to enjoy exclusively. (Goldstein Decl. ¶¶ 20-22). Protection against such unlawful direct competition is precisely what patent law grants. *See, e.g.*, *Broadcom*, 732 F.3d at 1337 (affirming grant of permanent injunction and upholding finding of irreparable harm where parties were "direct competitors in a limited market" for a product where "the patented feature … drive[s] the demand for the product").

Should the Defendants be allowed to import and then use their infringing equipment at the US Open 2020, Group One will lose a full year's worth of sales (the U.S. Open is an annual event) and all the ancillary benefits of being the official supplier to the U.S. Open, not just for let detection systems, but with regards to Group One's full portfolio of tennis products. (Goldstein Decl. ¶ 22.) It puts off for another year, at the least, the various business opportunities that Group One has offered to the USTA which are predicated upon being an existing supplier to the U.S. Open. (*Id.*) Such irreparable harm, visited upon Group One by a direct competitor, weighs heavily in favor of the issuance of the requested preliminary injunction.

16

### C.     The Balance of Hardships Weighs in Group One's Favor

The balance of hardships weighs decidedly in favor of Group One. If an injunction is denied, GTE will without question continue capitalizing on Group One's patented innovations, and denying Group One its exclusive rights. (Goldstein Decl. ¶¶ 15-19.) Further, other potential infringers will be encouraged to enter into the market with new infringing products. In short, Group One's patent rights will be devalued and Group One will lose the exclusivity afforded to it by its duly-issued patent to establish and maintain a market for its novel let detection systems. *See Trebro Mfg., Inc. v. Firefly Equip., LLC*, 748 F.3d 1159, 1172 (Fed. Cir. 2014) (where defendant was "only non-licensed competitor in the market," balance of hardships favored patentee because this "suggest[ed] that this patent will have significantly less value if Trebro cannot use it to exclude an infringing product from the market"); *Glaxo Grp. Ltd. v. Apotex, Inc.*, 64 F. App'x 751, 756 (Fed. Cir. Apr. 22, 2003) (affirming grant of preliminary injunction and agreeing that balance of hardships favored the patentee because "additional generic competition would likely drive down the brand name's price and market share, causing permanent loss of customers and users of plaintiffs' patented product"); *see also Teledyne Indus., Inc. v. Windmere Prods, Inc.*, 433 F. Supp. 710, 740 (S.D. Fla. 1977) ("to permit [defendant] to infringe during the pendency of the lawsuit would in effect grant [defendant] a license valid as long as it can continue to contest this suit," which may "tempt[] [others] to begin infringement on these terms as well"). Competition from infringing products could also erode prices and Group One's market share. (Goldstein Decl. ¶ 22.) Allowing GTE to continue its infringement pending trial would allow it to improperly benefit from Group One's innovations, maintain market share through its willful infringe, and erode the value of Group One's intellectual property. (*Id.*)

By contrast, GTE's hardship, if the preliminary injunction is granted, is no greater than any other patent infringer's. Any claim of hardship by Defendants would be particularly ill-founded because they are willful infringers. Group One provided notice of the '341 Patent and its infringement as soon as Group One received notice that the U.S. Patent Office was going to issue the '341 Patent. (Goldstein Decl. ¶ 23; Ex. 7.) Despite being provided with the issued claims of the '341 Patent, GTE failed to substantively respond to Group One's infringement allegations and chose to continue their blatant infringement. (Goldstein Decl. ¶ 23; Ex. 8.) Such knowing infringement weighs in favor of granting an injunction. "Those who take calculated risks should be well aware that they thereby assume the risk of being put out of that business by the issuance of a preliminary injunction." *Jacobson v. Cox Paving Co.*, 1991 U.S. Dist. LEXIS 17787, at *59 (D. Ariz. May 20, 1991) (granting preliminary injunction and finding balance of hardships weighed in favor of injunction where defendant "was well aware of the [plaintiff's] … patents and made a calculated decision to bring an infringing product to market before the … patents expired"); *see, e.g.*, *Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581 (Fed. Cir. 1983) (reversing denial and remanding for issuance of preliminary injunction where balance favored plaintiff because defendant "knew of the [plaintiff's] patents when it designed [its infringing product] and took a calculated risk that it might infringe those patents"); *Read Corp. v. Viper Int'l*, 1996 U.S. App. LEXIS 3847, at *9 (Fed. Cir. Feb. 23, 1996) (affirming grant of preliminary injunction and endorsing lower court finding that "the balance of hardships favor[ed plaintiff]" because "granting the injunction merely require[d defendant] to pay the consequences of its calculated risk that it might infringe [plaintiff's] patents").

GTE's decision to forge ahead with its infringing Trinity System—even after being expressly put on notice of the Asserted Patent—means that any potential harm resulting from an

injunction is caused GTE by itself, and is insufficient to tip the balance of equities in its favor. Accordingly, this element strongly favors granting a preliminary injunction. *See*, *e.g.*, *Celsis*, 664 F.3d at 931 (affirming grant of preliminary injunction and finding equities favored injunction where "the preliminary record suggest[ed] that [defendant's] losses were the result of its own calculated risk in selling a product with knowledge of [plaintiff's] patent").

### D. The Injunctive Relief Sought By Group One Serves the Public Interest.

"[T]here exists a public interest in protecting rights secured by valid patents." *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1458 (Fed. Cir. 1988). And there is no "critical public interest that would be injured by the grant of preliminary relief." *Id.*; *see Trebro*, 748 F.3d at 1172 (vacating denial of preliminary injunction where, "as to the public interest, there is scant evidence … showing that an injunction would harm the public" because "[t]he patent deals with sod harvesting and covers a small market that may not have a broad-reaching effect").

The patented technology here involves let-detection systems used in an exceptionally narrow market, not life-saving medication or some technology of great public importance. (Goldstein Decl. ¶ 3.) Thus, the public would not be affected by an injunction against GTE, and this factor weighs in favor of granting a preliminary injunction. Moreover, Group One can readily step in and provide its let detection system at the U.S. Open so that there will be no disruption to the U.S. Open, the players, or the public. (Goldstein Decl. at 26.)

### E. Group One's Request for Injunctive Relief Is Timely.

Given the urgency of this matter and Group One's need to seek prompt relief, Group One has filed its request for a temporary restraining order and preliminary injunction as soon as practicable. When the '341 patent issued and when this case commenced, Group One did not seek the requested relief due to the ongoing COVID-19 crisis, and because nearly every major sporting

19

event was either cancelled or put on hold. For example, the NCAA cancelled its annual basketball tournament ("March Madness"), the professional basketball (NBA) season was suspended, and the Major League Baseball (MLB) season was postponed. *See* Exs. 9-11. It was not until the USTA's announcement on June 16, 2020 that the public (and Group One) learned that Governor Cuomo had authorized the US Open to proceed. *See* Ex. 12. Indeed, the U.S. Open will be the first global sporting event since the pandemic began. *See id.* Until the USTA's announcement merely weeks ago that the U.S. Open would proceed, there was no reason to believe that GTE would imminently infringe the '341 Patent at the 2020 U.S. Open. When Group One learned that the Trinity System will be used and imported into the United States for the 2020 U.S. Open, it took immediate steps to enjoin GTE from doing so, by filing this motion.

As such, Group One did not delay seeking injunctive relief in this matter and Group One's actions have been both reasonable and timely.[6]

## III.   EX PARTE RELIEF SHOULD BE GRANTED

Rule 65 of the Federal Rules of Civil Procedure provides that a court may issue a temporary restraining order without written or oral notice if, by affidavit or verified complaint, the applicant shows that "immediate and irreparable injury, loss, or damage will result … before the adverse

---

[6] Any delay from Group One's reasonable investigation of GTE's infringement does not negate irreparable harm. *CJ Prods. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127, 162 (E.D.N.Y. 2011) ("Any delay due to a good faith investigation, or by virtue of failure to realize the extent of the infringement, does not defeat equitable relief"); *King v. Innovation Books*, 976 F.2d 824, 831 (2d Cir. 1992) (eight months of trying to stop infringing activity reasonable under the circumstances and contrast with those in which delay negates the presumption of irreparable harm);[6] *Ideavillage Prods. Corp. v. Bling Boutique Store*, 2017 U.S. Dist. LEXIS 61189, at *14 (S.D.N.Y. Apr. 21, 2017) ("Various courts in this Circuit have found that delay [in asserting intellectual property rights] was justified where . . . the plaintiff made a good faith effort to investigate the alleged infringement").

party can be heard in opposition . . . ." Fed. R. Civ. P. 65(b); *see also U2 Home Entm't, Inc. v. Bowery Music City, Inc.*, 2003 U.S. Dist. LEXIS 21992, at *3-4 (S.D.N.Y. Dec. 8, 2003).

Here, *ex parte* relief is appropriate because Defendants are foreign entities that have thus far sought to evade service despite having notice of these proceedings and their current and prospective infringement of the Asserted Patent. (Goldstein Decl. ¶ 25.) For example, Group One has repeatedly sent notice letters to Defendants and their legal representatives concerning their infringement and this action. (*Id.*; Exs. 14-15[7].) Defendants have not responded whatsoever. (Goldstein Decl. ¶ 25.) It is highly unlikely that a briefing and hearing schedule can be completed by the parties before the 2020 U.S. Open is scheduled to commence on or about August 24, 2020, and before GTE's infringement of the '341 Patent. In addition, it may become too far along in the process for the USTA to switch let-detection systems so close to the commencement of the tournament absent the requested relief. "Immediate action is vital when . . . [the] sale [of disputed property] to an innocent third party is threatened.  In these situations, giving the defendant notice of the application for an injunction could result in an inability to provide any relief at all." *In re Vuitton Et Fils, S.A.*, 606 F.2d 1, 10 (2d Cir. 1979) (quoting *Developments in the Law Injunctions*, 78 HARV. L. REV. 994, 1060 (1965)). Accordingly, based on the circumstances of this case, Defendants' unlawful activities should be temporarily restrained on an *ex parte* basis.

## IV.    THE COURT SHOULD NOT REQUIRE GROUP ONE TO POST A BOND OR ALTERNATIVELY, REQUIRE ONLY A MINIMAL BOND

Rule 65(c) of the Federal Rules of Civil Procedure invests the district court with wide discretion to determine the amount, if any, of security required for injunctive relief. *Doctor's*

---

[7] Presumably due to size restrictions, Defendants' counsel in Germany's email address did not initially accept Group One's notification email. As a result, Group One sent the notification email via secure FTP. There were no issues emailing Defendants or their Australian counsel.

*Assocs. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997). Namely, the court may "dispense with the bond requirement 'where there has been no proof of likelihood of harm.'" *See id.* (quoting *Doctor's Assocs. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996)); *see also DeWitt Stern Group, Inc. v. Eisenberg*, 2013 U.S. Dist. LEXIS 78598, at *16 (S.D.N.Y. June 4, 2013) (finding bond requirement unnecessary).

Group One respectfully requests that that the Court exercise its discretion to dispense with the filing of a bond in this case. As discussed above, there is no realistic likelihood of harm to Defendants in this case because there is no evidence that Group One's requested injunction will cause harm, but instead will stop Defendants' unlawful conduct. If a bond is required, Group One requests that the amount set be minimal.

## V.    GROUP ONE IS ENTITLED TO AN ORDER AUTHORIZING SERVICE OF PROCESS BY EMAIL ON DEFENDANTS

This Court may authorize Group One to use alternate service under the applicable federal rules. For Defendants who are located outside the United States, Federal Rule of Civil Procedure 4(f) authorizes service by email at the Court's discretion. Under the present circumstancesservice of Defendants by email is proper and wholly equitable under the stated circumstances, particularly where Defendants have thus far evaded service. (Goldstein Decl. ¶ 25.)

### A.    Rule 4(f)(3) of the Federal Rule of Civil Procedure Authorizes Alternate Service on Individuals in a Foreign Country.

Rule 4(f)(3) of the Federal Rule of Civil Procedure allows the Court to authorize service of process by any "means not prohibited by international agreement as may be directed by the court," so long as the alternative method of service authorized by the Court is "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See Philip Morris USA Inc. v. Veles Ltd.*,

2007 U.S. Dist. LEXIS 19780, at *5-8 (S.D.N.Y. Mar. 13, 2007) (internal quotations omitted); *see also RSM Prod. Corp. v. Fridman*, 2007 U.S. Dist. LEXIS 37713, at *3 (S.D.N.Y. May 24, 2007) ("The decision whether to allow alternative methods of serving process . . . is committed to the sound discretion of the district court.") (citation and internal quotation marks omitted).

Alternative service under Rule 4(f)(3) need not be the "last resort nor extraordinary relief. Alternative service is merely one means among several which enables service of process on an international defendant." *FTC v. PCCare247 Inc.*, 2013 U.S. Dist. LEXIS 31969, at *6-7 (S.D.N.Y. Mar. 7, 2013) (citing *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 115 (S.D.N.Y. 2010); *see also Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002); *United States ex rel. Barko v. Halliburton Co.*, 952 F. Supp. 2d 108, 116 (D.D.C. 2013). In fact, a plaintiff is not required to attempt service through other means provided under Rule 4(f) before the Court may order service under Rule 4(f)(3). *Rio Props.*, 284 F.3d at 1014-15; *PCCare247*, 2013 U.S. Dist. LEXIS 31969, at *8. Alternative service of process by email is proper where, as here, the proposed method of service is not prohibited by international agreement and due to the nature of the defendants' business, makes the most sense because it is the most likely method of service to provide prompt, actual notice of the claims. *See Rio Props.*, 284 F.3d at 1017-18 ("[W]hen faced with an international e-business scofflaw, playing hide-and-seek with the federal court, email may be the only means of effecting service of process"). Here, Group One has sent a copy of the Complaint: (1) to GTE's legal representatives in Germany on several occasions; (2) to GTE/Weigel's legal representatives in Australia for the parallel patent infringement litigation; and (3) has sent the Complaint to GTE/Weigel directly. *See* Exs. 14-16. It is therefore likely that Defendants have received notice of the Complaint (as well as a copy thereof) on multiple occasions. (Goldstein Decl. ¶ 25.)

23

**1.**     **Service of Process by Email Is Not Prohibited by International Agreement.**

In addition, although The Hague Convention would apply with respect to service on the Named Defendants located in Germany, The Hague Convention does not prohibit service by email, even where the country (like Germany) in which defendants are located has objected to specific forms of service permitted by Article 10 of The Hague Convention, such as postal mail. *Gang Li v. Dolar Shop Rest. Grp., LLC*, 2019 U.S. Dist. LEXIS 156851, at *4-*5 (E.D.N.Y. Sept. 13, 2019) ("I agree with the reasoning of the courts that have found email service not prohibited [where a country has objected to other forms of service permitted by Article 10 of the Hague Convention"). *AMTO, LLC v. Bedford Asset Mgmt., LLC*, No. 14 CV 9913, 2015 U.S. Dist. LEXIS 70577, 2015 WL 3457452, at *7 (S.D.N.Y. June 1, 2015) ("Because Russia has not explicitly objected to service by electronic means, and the Court is not aware of any other international agreement or Russian law that prohibits service via email, the Court concludes that, as a general matter, service via email for a defendant residing in Russia may qualify as an alternative means of service under Rule 4(f)(3)."); *Sulzer Mixpac AG v. Medenstar Indus. Co*., 312 F.R.D. 329, 331 (S.D.N.Y. Nov. 27, 2015) ("China's objection to service by postal mail does not cover service by email, and these forms of communication differ in relevant respects. Email communications may be more reliable than long-distance postal communications, and the arrival of an email at its destination address may be more readily tracked."); *Gurung v. Malhotra*, 279 F.R.D. 215, 219 (S.D.N.Y. 2011) (allowing service on defendants in India by electronic mail because India's "objection to service through postal channels does not amount to an express rejection of service via electronic mail."); *FTC v. Pecon Software Ltd.*, 2013 U.S. Dist. LEXIS 111375, at *4-5 (S.D.N.Y. Aug. 7, 2013) (holding that India's objection to Article 10 of the Service Convention did not prevent service by email pursuant to Rule 4(f)(3) and stating that

"[n]umerous courts have held that service by email does not violate any international agreement where the objections of the recipient nation are limited to those means enumerated in Article 10."); *Williams-Sonoma Inc. v. Friendfinder Inc.*, 2007 U.S. Dist. LEXIS 31299, at *2 (N.D. Cal. Apr. 17, 2007) (permitting service by email pursuant to Rule 4(f)(3) on defendants located in countries that had objected to Article 10 of Service Convention).

### 2. Service of Process by Email Is Reasonably Calculated to Provide Notice to the Defendants.

"By design, Rule 4(f)(3) was adopted in order to provide a modern flexibility and discretion to the federal courts in today's digital age in dealing with questions of alternative methods of service of process in foreign countries." *Philip Morris,* 2007 U.S. Dist. LEXIS 19780, at *8 (internal quotations and citation omitted). "Such flexibility necessarily includes the utilization of modern communication technologies to effect service when warranted by the facts." *Broadfoot v. Diaz (In re International Telemedia Assocs.)*, 245 B.R. 713, 720 (Bankr. N.D. Ga. 2000). Thus, courts have fashioned a variety of different methods of service, including service by email. *See, e.g.*, *PCCare247,* 2013 U.S. Dist. LEXIS 31969, at *18-20 (allowing service by email and Facebook); *Prediction Co. LLC v. Rajgarhia*, 2010 U.S. Dist. LEXIS 26536, at *1-5 (S.D.N.Y. Mar. 22, 2010) (allowing service by email address previously used by defendant to communicate with plaintiff); *Philip Morris*, 2007 U.S. Dist. LEXIS 19780, at *9-10 (allowing service by email and fax).

Service by email on a defendant engaged in an online operation, who typically communicates with his customers and suppliers almost exclusively via email, is appropriate and constitutionally acceptable here as Defendants have communicated with Plaintiff and its counsel via email in foreign proceedings concerning infringement of related patents, and email is the most effective means of providing the defendant with notice of the action. *See, e.g.*,

*Prediction Co.*, 2010 U.S. Dist. LEXIS 26536, at *1-5 (allowing service by email address previously used by defendant to communicate with plaintiff); *Philip Morris*, 2007 U.S. Dist. LEXIS 19780, at *9-10 (allowing service by email and fax); *McCluskey v. Belford High Sch.*, 2010 U.S. Dist. LEXIS 62608, at *9-10 (E.D. Mich. June 24, 2010) (concluding that service via email was appropriate where the defendants relied on an email address to conduct their business); *Elcometer, Inc. v. TQC-USA, Inc.,* 2013 U.S. Dist. LEXIS 19874, at *7 (E.D. Mich. Feb. 14, 2013) (same); *Gaffigan v. Doe*, 689 F. Supp. 2d 1332, 1342 (S.D. Fla. 2009) (finding service by email appropriate where defendants used email to confirm orders placed on their websites); *Microsoft Corp. v. Doe*, 2012 U.S. Dist. LEXIS 162122, at *8 (E.D.N.Y. Nov. 13, 2012) (allowing service of process by email where defendants responded to emails).

Here, email service has the greatest likelihood of reaching Defendants, who have already communicated directly with Plaintiff's patent counsel in Australia and the U.S. concerning anticipated or pending patent infringement litigation on prior occasions. Serving Defendants by the same email mode of communication preferred by Defendants themselves will satisfy due process by apprising them of the action in a timely fashion and giving them the opportunity to answer Group One's claims. The current global pandemic provides further reason to allow service via email, as it is the most efficient and least invasive method to accomplish service.

Similarly, email service is also the best way to notify the Defendants of this lawsuit and any action related to it. As Defendants conduct business and attend tennis tournaments across the globe, Defendants "presumably rel[y]at least partially on contact [their e-mail addresses] to conduct overseas business, and it is reasonable to expect [these defendants] to learn of the suit against it through th[ese] email address[es]." *Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 332 (S.D.N.Y. 2015).

## CONCLUSION

Based on the foregoing, Group One respectfully requests that the Court grant all of the

relief requested herein.

Dated: July 6, 2020

GREENBERG TRAURIG LLP

*Jonathan D. Ball*
_____

Jonathan D. Ball, Ph.D.
MetLife Building
200 Park Avenue
New York, NY 10166
Tel: (212) 801-9200
Fax: (212) 801-6400
ballj@gtlaw.com

*Attorneys for Plaintiff*
*Group One Ltd.*

27