UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------- x
GROUP ONE LTD.,                               :
                                              :
                          Plaintiff,          :        REPORT AND
                                              :        RECOMMENDATION
           -against-                          :
                                              :        No. 20-CV-02205-MKB-JRC
GTE GmbH and RALF WEIGEL,                      :
                                              :
                          Defendants.         :
---------------------------------------------------------------------x
JAMES R. CHO, United States Magistrate Judge:

## Introduction

Plaintiff Group One Ltd. ("Group One" or "plaintiff") brings this action for patent

infringement under the Patent Act, 35 U.S.C. §§ 100, *et seq.*, false advertising under 15 U.S.C.

§ 1125(c) of the Lanham Act; federal unfair competition in violation of Section 43(a) of the

Lanham Act, 15 U.S.C. § 1125(c); unfair and deceptive trade practices under New York law;

unfair competition under the common law of the State of New York; false advertising in

violation of N.Y. Gen. Bus. Law § 350(e)(3); and trade libel against defendants GTE GmbH

("GTE") and Ralf Weigel ("Weigel," and collectively, "defendants").

Plaintiff alleges that defendants "have embarked on an international campaign of

infringing several of Group One's duly issued patents directed to let-detection systems for tennis,

and have knowingly spread malicious falsehoods about the capabilities of Group One's superior

let-detection system to avoid losing customers to Group One."  First Amended Complaint ("Am.

Compl."), Dkt. 39, ¶ 1.

Defendants initially appeared in this action and responded to the Court's July 8, 2020

Order to Show Cause ("OTSC") for Preliminary Injunction ("PI"), Temporary Restraining Order

("TRO"), and Order Authorizing Alternative Service (referred to as "2020 OTSC"), Dkt. 8.  *See*

Dkt. 12 (Defendants' Response to 2020 OTSC).  On September 23, 2020, defendants moved to dismiss plaintiff's Complaint, Dkts. 21, 22, and on February 3, 2021, the Court granted in part defendants' motion with respect to Mr. Weigel for lack of personal jurisdiction, Dkt. 25.

On February 23, 2021, shortly after Mr. Weigel was terminated as a party defendant, GTE's counsel moved to withdraw.  *See* Dkt. 29.  On February 25, 2021, the Court granted the motion to withdraw and notified GTE that it would be deemed in default if its new counsel did not file a notice of appearance within 30 days.  *See* Dkt. entry dated February 25, 2021.

Since the withdrawal of defendants' counsel, defendants have not appeared through new counsel, nor otherwise defended this action.  On July 9, 2021, plaintiff moved for default judgment.  *See* Dkts. 47, 48.  Currently pending before this Court, on a referral from the Honorable Chief Judge Margo K. Brodie, is plaintiff's motion for default judgment.  *See* Order Referring Motion dated July 10, 2021.  For the reasons stated below, this Court recommends granting in part and denying in part plaintiff's motion, and denying an award of damages.

## I.    Background

The following facts are taken from the Amended Complaint (Dkt. 39) and assumed to be true for purposes of plaintiff's motion.  Plaintiff Group One is a limited liability company in the Isle of Man, with an administrative office at Viking House, St. Paul's Square, Ramsey, Isle of Man IM8 1GB.  *See* Am. Compl. ¶ 3.  Defendant GTE is a German corporation with its principal place of business at Im Brunnenrain 6, 74653 Ingelfingen-Lipfersberg, Germany, and Mr. Weigel is the CEO, sole employee, and sole Owner of GTE with a residence at Im Brunnenrain 6, 74653 Ingelfingen-Lipfersberg, Germany.  *See id*. ¶¶ 5-6.

Plaintiff alleges that Fredric Goldstein ("Goldstein") developed a novel let-detection system[1] that included features such as "tennis's first integrated shot clock," *i.e.*, a means to control the shot clock through the let-detection system (the "Net System"). *See id.* ¶ 25. Goldstein applied for several patents covering plaintiff's Net System and Group One, as the assignee, began marketing the system. *See id.*

Plaintiff also alleges that defendants' business is in direct competition with plaintiff's business in the let-detection market. *See id.* ¶ 24. Defendants marketed a let-detection system that was relatively unchanged from 1995 until 2018 (the "Old Trinity System"). *See id.* ¶ 29. In or around January 2015, the Association of Tennis Professionals ("ATP") replaced defendants' let-detection system with plaintiff's Net System. *See id.* ¶ 26. To compete with plaintiff's system, defendants allegedly modified the Old Trinity System to include a shot clock control (referred to as the "present Trinity System"). *See id.* ¶¶ 29, 45.

On April 30, 2019, the United States Patent and Trademark Office ("USPTO") issued Patent No. 10,272,307 ("the '307 patent"). *See id.* ¶¶ 40-41. On March 10, 2020, the USPTO issued Patent No. 10,583,341 ("the '341 patent). *See id.* ¶¶ 45, 49. Both patents are titled "Tennis New Tension System Including Service Let Indication Feature" and are designed to determine if a service let occurs through the detection and measurement of force exerted by the net. *See id.* ¶¶ 41, 49. Both patents included "the first integrated shot clock control in tennis." *See id.* Before the USPTO issued each patent, Group One allegedly sent defendants notice of the

---

[1] The let-detection system helps identify when a "let" occurs during a tennis player's serve. *See* Am. Compl. ¶ 23. A "let" occurs when a tennis ball comes in contact with the net on a player's serve, but still proceeds over the net into the proper service box. *See id.* ¶ 22. When this occurs, the player must redo the serve. *See id.* Because players can serve balls at speeds exceeding 140 miles per hour, judges and linesmen may find it difficult to detect a let. *See id.* ¶ 23. The let-detection system helps determine if a "let" has occurred. *See id.*

issuance of the impending patents, requested information about defendants' contemplated use of the present Trinity System (that plaintiff alleges infringes its patents), and informed defendants that the present Trinity System "comprising a let detection system with shot clock control, falls squarely within the scope of the '341 patent." *Id*. ¶¶ 40-49.

Plaintiff further alleges that defendants' present Trinity System, which they marketed and supplied to the United States Tennis Association ("USTA") for the 2019 U.S. Open, directly infringes plaintiff's patents, as evidenced by a side-by-side comparison of the patent claims and the present Trinity System's specifications. *See id*. ¶¶ 30, 54-55, 82-83. Moreover, plaintiff alleges that defendants' Old Trinity System, used at the 2020 U.S. Open,[2] included a second handset with a shot clock control button that also directly infringes plaintiff's patents. *See id*. ¶¶ 56, 84. By using, selling, offering to sell, or importing the infringing products, plaintiff alleges that defendants are liable for induced infringement and contributory infringement of plaintiff's patents. *See id*. ¶¶ 61-78, 89-106.

In addition to the patent infringement allegations, plaintiff claims defendants' marketing materials misrepresented plaintiff's product to potential customers, and that these misrepresentations caused plaintiff to lose prospective customers and business opportunities. *See id*. ¶¶ 31-39. According to plaintiff, the statements in defendants' marketing documents to customers contained materially false information about plaintiff's product. *See id*.

Plaintiff seeks relief based on defendants' direct, induced, and contributory infringement of the '307 and '341 patents, in violation of 35 U.S.C. § 271 (Counts One through Six);

_____

[2] As discussed in Section II (Procedural History), below, defendants and non-party USTA appeared at various times throughout this action to assert defenses against plaintiff's patent infringement claims with respect to the present Trinity System and the Old Trinity System used at the 2020 U.S. Open. As discussed in Section III.B (Patent Infringement Claims), below, plaintiff does not controvert these defenses.

defendants' false advertising under the Lanham Act and false description and representations (Counts Seven and Eight); and defendants' tortious interference with prospective business relations (Count Nine), unfair competition (Count Ten), deceptive trade practices (Count Eleven), false advertising (Count Twelve), and trade libel (Count Thirteen) under New York law. Plaintiff further seeks a permanent injunction and damages.

## II.   Procedural History

On May 15, 2020, plaintiff commenced this action against defendants for patent infringement, false advertising, and unfair competition under federal law, and for tortious interference with prospective business relations, unfair and deceptive trade practices, unfair competition, false advertising, and trade libel under New York law. *See* Compl., Dkt. 1. On July 6, 2020, before defendants were served with the Complaint, plaintiff moved for a Temporary Restraining Order and Preliminary Injunction against defendants, alleging that, without a TRO, defendants' infringing product would be used at the upcoming 2020 U.S. Open. *See* Dkt. 6.

On July 8, 2020, Chief Judge Brodie conducted a telephonic hearing on plaintiff's motion, and issued an Order to Show Cause for Preliminary Injunction, Temporary Restraining Order, and Order Authorizing Alternative Service. *See* Minute Entry dated July 8, 2020; Dkt. 8 (2020 OTSC). The Court granted the TRO and ordered defendants to show cause why the Court should not grant plaintiff a preliminary injunction. *See* Dkt. 8. On July 9, 2020, plaintiff served the Summons, Complaint, and TRO on defendants. *See* Dkt. 9.

On July 20, 2020, plaintiff filed a reply in support of its application for a preliminary injunction, Dkt. 10, and attached documents defendants had provided to plaintiff in response to the preliminary injunction motion. *See* Dkt. 10-2.

5

On July 22, 2020, the Court held a preliminary injunction hearing; counsel for plaintiff and defendant Ralf Weigel, appearing *pro se*, participated in the conference.  *See* Minute Entry dated July 22, 2020.  The Court adjourned the hearing to give defendants an opportunity to retain counsel.  *See id*.

On July 28, 2020, counsel filed an appearance on behalf of defendants, and responded to the 2020 OTSC.  *See* Dkts. 11-13.  In response, defendants argued that:  (1) the "accused product" and functionality (*i.e.*, stop-clock control functionality) predates plaintiff's asserted patents; (2) the current version of the allegedly infringing Trinity System would not be used at the 2020 U.S. Open; and (3) the "accused product" or let detection system in use does not directly infringe the asserted patent.  *See generally* Dkt. 12.

On July 29, 2020, the Court held a preliminary injunction hearing.  All parties appeared through counsel.  *See* Minute Entry dated July 29, 2020.  The Court denied plaintiff's motion to strike defendants' response to the 2020 OTSC as untimely, and further adjourned the hearing to July 31, 2020 at which time the Court would hear testimony and receive evidence in connection with the alleged patent infringement.  *See id*.

On July 30, 2020, defendants and the USTA filed declarations representing that the "accused product" would not be used at the 2020 U.S. Open (*i.e.*, the USTA will not use any functionality of any Trinity product to control any Start of Point, Serve Clock or any other Shot Clock timer).  *See* Dkts. 14 ¶ 5; 15 ¶ 9.  Based on these representations, plaintiff withdrew its preliminary injunction motion as moot.  *See* Dkt. 16.

On September 23, 2020, defendants moved to dismiss the Complaint arguing lack of personal jurisdiction over Mr. Weigel and insufficient service of process on defendants.  *See* Dkt. 21.  On February 3, 2021, Chief Judge Brodie granted in part and denied in part defendants'

6

motion.  *See* Memorandum and Order, Dkt. 25.  The Court dismissed the claims against Mr. Weigel for lack of personal jurisdiction, but denied GTE's motion for insufficient service of process.  *See id.*

On February 23, 2021, defendants' attorney moved to withdraw as counsel.  *See* Dkt. 29. The Court granted the motion to withdraw two days later, with the warning that defendants would be in default if their new counsel did not appear within 30 days.  *See* Dkt. entry dated February 25, 2021.  After GTE failed to secure new counsel, plaintiff moved for entry of default against defendant GTE, Dkts. 35, 36, and on April 15, 2021, the Clerk of the Court entered a Certificate of Default against GTE, Dkt. 37.

On March 1, 2021, plaintiff moved to amend the Complaint, Dkt. 33, and on March 31, 2021, the Court granted plaintiff's motion, *see* Dkt. entry dated March 31, 2021.  Plaintiff attempted to serve the Amended Complaint on defendants for good measure, despite the entry of default against GTE.[3]  Despite service of the Amended Complaint,[4] defendants failed to answer, move or otherwise respond to the Amended Complaint.  Accordingly, on June 21, 2021, plaintiff moved for entry of default, Dkt. 45, and on June 30, 2021, the Clerk of the Court entered a certificate of default against both defendants GTE and Mr. Weigel, Dkt. 46.  On July 9, 2021, plaintiff moved for default judgment.  *See* Dkt. 48.

---

[3] Notwithstanding the prior dismissal, plaintiff again named Mr. Weigel as a defendant in the Amended Complaint and alleged personal jurisdiction over Mr. Weigel based on his acts of patent infringement and other tortious acts within New York.  *See* Am. Compl., Dkt. 39 ¶ 19.
[4] The Court authorized service of the Complaint and Summon on defendants by email.  *See* Dkt. 8 at 3.  In accordance with the alternative service order, Dkt. 8, Group One served the Amended Complaint and Summons on defendants by emailing Mr. Weigel's wife, Renee Weigel, who is a registered agent of GTE.  *See* Memorandum of Law in Support of Plaintiff's Motion for Default Judgment ("Pl.'s Mem.") at 6, Dkt. 48-1; Aff. of Serv., Dkt. 44.  For these reasons, this Court recommends finding that plaintiff properly served defendants with the Amended Complaint.

Approximately one month after plaintiff moved for default judgment, plaintiff filed a second Motion for Order to Show Cause for Preliminary Injunction and Temporary Restraining Order against defendants in light of the upcoming 2021 U.S. Open.  *See* Dkt. 51.  Plaintiff alleged that even though the "accused product" was not used at the 2020 U.S. Open, the "non-infringing" Old Trinity System product used at the 2020 U.S. Open was configured to have stop-clock control functionality and, thus, also infringed plaintiff's patent.  *See* Declaration of Frederic Goldstein ("Goldstein Decl."), Dkt. 54 at ¶ 13.[5]  Plaintiff argued that a TRO and PI were necessary because without them, defendants' products would be used in a manner that infringes on plaintiff's patent.  *See* Memorandum of Law in Support of Plaintiff's Ex Parte Application for a Temporary Restraining Order and Order to Show Cause for Preliminary Injunction, Dkt. 53 at 4-5.

On August 24, 2021, Chief Judge Brodie granted plaintiff's motion for a TRO and ordered defendants to show cause why the Court should not grant plaintiff a preliminary injunction.  *See* Memorandum & Order ("2021 TRO"), Dkt. 55.  On August 30, 2021, plaintiff moved to enforce the 2021 TRO against the USTA and to restrain the USTA from using defendants' product at the 2021 U.S. Open.  *See* Dkt. 58.

On August 31, 2021, Chief Judge Brodie ordered the USTA to show cause why the Court should not hold the USTA in contempt for failing to comply with the Court's 2021 TRO.  *See* Order to Show Cause dated August 31, 2021, Dkt. 61 ("2021 OTSC").  On September 2 and 8, 2021, the USTA responded to the 2021 OTSC.  *See* Dkts. 65, 70.  In its responses, the USTA argued as follows:  (1) the "accused product" and functionality (*i.e.*, stop-clock control

---

[5]  Plaintiff raised these same allegations in the Amended Complaint.  *See* Am. Compl. ¶¶ 50, 56, 84, 92.

functionality) predates plaintiff's asserted patents; (2) the "accused product" would not be used at the 2021 U.S. Open; and (3) the "accused product" does not directly infringe the asserted patent.  *See generally id*.  The USTA's response largely mirrors defendants' response to the 2020 OTSC.  Based on the USTA's responses, the Court denied plaintiff's motion to hold the USTA in contempt,[6] and deferred ruling on the request for a preliminary injunction in light of the pending Motion for Default Judgment.  *See* Minute Entry dated September 9, 2021.  This Court now turns to the Motion for Default Judgment.

III.    **Discussion**

A.    **Default Judgment Standard**

Rule 55 of the Federal Rules of Civil Procedure governs motions for default judgment. The Rule sets forth a two-step process for entry of a default judgment.  *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95-96 (2d Cir. 1993).  First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case.  *See id.*; *see also* Fed R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default").  This first step is nondiscretionary.  *See United States v. Conolly*, 694 F. App'x 10, 12 (2d Cir. 2017).  Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise

---

[6]  Plaintiff subsequently filed two motions for reconsideration of the Court's September 9, 2021 ruling.  *See* Dkts. 81, 82.  The USTA filed responses in opposition to plaintiff's motions on January 13 and 17, 2022.  *See* Dkts. 84, 85.  Plaintiff filed replies in support of its motions on January 24 and 28, 2022.  *See* Dkts. 87, 88.  In its motions for reconsideration, plaintiff argues that Chief Judge Brodie misapplied the law on indirect infringement, and that the USTA committed misconduct in the course of litigating the contempt proceedings which justifies vacatur of Chief Judge Brodie's ruling.  *See* Dkts. 81, 82.  The issues raised in plaintiff's motions for reconsideration have no bearing on this Court's analysis of the instant default judgment. Thus, this Report and Recommendation does not address plaintiff's reconsideration motions.

move to set aside the default pursuant to Rule 55(c), the Court may enter a default judgment. *See* Fed. R. Civ. P. 55(b).

Here, the Clerk of the Court first entered a certificate of default against defendant GTE on April 15, 2021. *See* Dkt. 37. On June 30, 2021, after defendants failed to appear through counsel and failed to respond to the Amended Complaint, the Clerk of the Court entered a certificate of default against both defendants GTE and Mr. Weigel. *See* Dkt. 46. To date, defendants have not moved to vacate the certificate of default.

"Default judgments are 'generally disfavored and are reserved for rare occasions.'" *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2011) (quoting *Enron Oil*, 10 F.3d at 96). The Second Circuit has provided guidance as to when the court may grant a motion for default judgment and has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort. *See Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "afford[] litigants a reasonable chance to be heard." *Enron Oil*, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," doubts should be resolved in favor of the defaulting party. *See id*. Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because defendants are in default. *See Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

A default serves as the defendant's admission that the complaint's well-pleaded factual allegations are true. *See Masino v. Architectural Pavers Corp.*, No. 09-CV-2213, 2010 WL

415286, at *2 (E.D.N.Y. Jan. 15, 2010); *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (after default the "court is required to accept all of the [plaintiff's] [well-pleaded] allegations as true and draw all reasonable inferences in its favor."). A fact is not considered "well-pleaded," however, "if it is inconsistent with [the] other allegations of the complaint or with facts of which the court can take judicial notice, or is contrary to uncontroverted material in the file of the case." *Hop Hing Produces Inc. v. Lin Zhang Trading Co., Inc.*, No. 11-CV-03259, 2013 WL 3990761, at *3 (E.D.N.Y. Aug. 5, 2013) (internal quotations and citations omitted). Ultimately, whether to grant a motion for default judgment is "left to the [court's] sound discretion." *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999); *Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. D & A Bus Co.*, 270 F. Supp. 3d 593, 606 (E.D.N.Y. 2017).

The Court considers a number of factors in deciding whether to grant a default judgment, including: (1) whether the grounds for default are clearly established; (2) whether the claims were adequately pleaded in the complaint, thereby placing the defendant on notice, *see* Fed. R. Civ. P. 54(c) (stating: "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); *King v. STL Consulting LLC*, No. 05-CV-2719, 2006 WL 3335115, at *4-*5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated in awarding damages that accrued during the pendency of a litigation, so long as the complaint put the defendant on notice that the plaintiff may seek such damages); and (3) the amount of money potentially involved -- the more money involved, the less justification for entering the default judgment. *See Hirsch v. Innovation Int'l, Inc.*, No. 91-CV-4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992). Additionally, the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff

has been substantially prejudiced by the delay involved, and whether the default judgment might have a harsh effect on the defendant. *See Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

"In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default." *Double Green Produce, Inc. v. Forum Supermarket Inc.*, No. 18-CV-2660, 2019 WL 1387538, at *2 (E.D.N.Y. Jan. 29, 2019); *Enron Oil*, 10 F.3d at 96; *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170-71 (2d Cir. 2001). These factors are "1) whether the defendant's default was willful; 2) whether the defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Double Green Produce*, 2019 WL 1387538, at *2 (quoting *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003)).

"As to the first factor, [d]efendants' failure to obtain new [counsel] or communicate with this Court sufficiently demonstrates willfulness." *Trs. of Bldg. Trades Educ. Benefits Fund v. Romero Elec. LLC*, No. 19-CV-3515, 2021 WL 3604811, at *4 (E.D.N.Y. July 19, 2021) (citation omitted), *report and recommendation adopted*, 2021 WL 3603613 (E.D.N.Y. Aug. 13, 2021). In the context of a default, courts will find willfulness "where the conduct of counsel or the litigant was egregious and was not satisfactorily explained." *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). Courts find willfulness where a corporate defendant fails to comply with a court order to obtain counsel. *See Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001) (upholding default judgment where individual and corporate defendants did not obtain counsel in the time frame ordered by the court); *Dow Chem. Pacific Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 336 (2d Cir. 1986) (finding that there was "no question" that default was

properly entered where corporate defendant failed to comply with court's order to obtain new counsel); *S & S Mach. Corp. v. Wuhan Heavy Duty Mach. Tool Grp. Co.*, No. 07-CV-4909, 2012 WL 958527, at *3 (E.D.N.Y. Mar. 21, 2012) (noting that where a court has ordered a corporate entity to appear through counsel, it is appropriate to enter a default judgment when the entity willfully disregards the court order); *Franco v. Ideal Mortg. Bankers, Ltd.*, No. 07-CV-3956, 2010 WL 3780972, at *3 (E.D.N.Y. Aug. 23, 2010) ("The presence of a disregarded [o]rder is determinative in granting default judgment against a corporate entity that fails to retain counsel.").

Here, defendants provided information to plaintiff in response to the Complaint, filed a response to the plaintiff's 2020 Motion for a Temporary Restraining Order and for Preliminary Injunction, appeared through counsel, attended preliminary injunction hearings on July 22 and 29, 2020, and moved to dismiss the Complaint. *See* Dkt. 10;[7] Dkts. 18-21.

Since the withdrawal of defendants' counsel on February 25, 2021, however, defendants have failed to retain new counsel or otherwise comply with this Court's Order directing defendants to appear through counsel within 30 days, *see* Order dated February 25, 2021, despite being served with a copy of the Order. *See* Dkt. 32 (Certificate of Service). Further, defendants have not opposed plaintiff's motion for default judgment, despite being served a copy of the motion. *See* Dkt. 49 (Affidavit of Service). Based on these facts, this Court finds defendants' conduct willful. *See Romero Elec.*, 2021 WL 3604811, at *4 (same).

As to the second factor, while defendants have not responded to the Amended Complaint, there have been substantial defenses put forth, both by defendants and non-party USTA, with

---

[7] In this filing, plaintiff includes as Exhibit 1 an email and attachments sent to plaintiff's counsel from GTE that purports to respond to the 2020 OTSC. *See* Dkt. 10-2.

respect to the patent infringement claim in response to the 2020 and 2021 TRO and PI Motions and Orders to Show Cause.[8]  "A defense is meritorious if it is good at law so as to give the factfinder some determination to make." *Am. Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) (quotations omitted).  A defendant must "present evidence of facts that, if proven at trial, would constitute a complete defense." *McNulty*, 137 F.3d at 740 (internal quotations and citations omitted).  Evidence beyond mere "conclusory denials" is required.  *See Enron Oil*, 10 F.3d at 98.

The Court considers whether any of the patent infringement defenses submitted in this case could rise to the level of a complete defense, and concludes that there are meritorious defenses to plaintiff's patent infringement claims.  As explained below, this Court has serious questions as to whether defendants' product and functionality preceded plaintiff's patents.  *See Double Green Produce*, 2019 WL 1387538, at *3 ("[b]ecause there are serious questions regarding . . . liability in this action, it would be inappropriate to enter a default judgment" (quoting *Winn v. Ballet Makers, Inc.*, No. 87-CV-7286, 1996 WL 325610, at *1 (S.D.N.Y. June 12, 1996)).

With respect to the third factor, because defendants have failed to secure new counsel and plaintiff has demonstrated an interest in prosecuting this case, ignoring the default could prejudice plaintiffs, "as there are no additional steps available to secure relief [against

---

[8] In some cases, a disappearing defendant's submission may be stricken from the record "in light of [the] Defendants' failure to oppose Plaintiffs' motion for default judgment and Defendants' failure to introduce any evidence that would constitute a meritorious defense." *Romero Elec.*, 2021 WL 3604811, at *4.  However, as discussed below in Section III.B, this Court recommends finding that defendants' prior submissions and defenses raised by the USTA put forth a potential complete defense to plaintiff's patent infringement claim, and should be considered.  *Cf. id.* at *4 ("although Defendants filed an answer to the Complaint, the Answer contains only general denials and affirmative defenses, rendering it inadequate under the applicable law").

defendants] in this Court." *Romero Elec.*, 2021 WL 3604811, at *4 (quoting *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226, 2008 WL 5560868 at *2 (S.D.N.Y. Oct. 27, 2008)).  Without the entry of a default judgment, plaintiff could be left without the ability to recover against defendants for the claims set forth in the Amended Complaint.

Even though not a party to this action, the submissions of the USTA in the 2021 TRO and contempt proceedings, Dkts. 65, 67, 70, demonstrate that the USTA is an interested party, may have evidence related to plaintiff's patent infringement allegations, and may be prejudiced by entry of default against the defendants.[9]  In an attempt to secure additional information from non-party USTA, plaintiff attempted to serve the USTA with a Rule 45 subpoena.  *See* Dkt. 72.  Further, plaintiff has indicated that it intends to file a separate patent infringement complaint against the USTA related to its use of defendants' let-detection systems.  *See* Dkt. 73.  Given the existence of alternate means to pursue the patent infringement claim, this Court finds that the prejudice factor does not necessarily weigh in favor of default judgment.

The Court now assesses the propriety of default judgment for each of plaintiff's claims in the Amended Complaint.

### B. Patent Infringement Claims

Plaintiff alleges a violation of 35 U.S.C. § 271.  Liability for patent infringement is established when a defendant "without authority makes, uses, offers to sell, or sells any patented

---

[9] On September 2, 2021, non-party USTA raised the issue of prejudice in its response to the 2021 Order to Show Cause.  *See* Dkt. 65 (acknowledging that defendants raised similar arguments in connection with the patent infringement claims and arguing that "any factual admissions or waivers of arguments imputed to Defendants by virtue of their default do not extend to the USTA or the legacy let detection system in use at the 2021 US Open." (citing *Taylor v. Sturgell*, 553 U.S. 880, 892-93 (2008) ("A person who was not a party to a suit generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit.  The application of claim and issue preclusion to nonparties thus runs up against the 'deep-rooted historic tradition that everyone should have his own day in court.'"))).

invention, within the United States or imports into the United States any patented invention during the term of the patent."  35 U.S.C. § 271(a); *see, e.g., IPVX Patent Holdings, Inc. v. Taridium, LLC*, No. 12-CV-5251, 2014 WL 4437294, at *2 (E.D.N.Y. Aug. 6, 2014), *report and recommendation adopted*, 2014 WL 4437307 (E.D.N.Y. Sept. 9, 2014).

Plaintiff's claims raised pursuant to 35 U.S.C. § 271(a), (b), and (c), relate to direct, induced, and contributory infringement, respectively.  Subsection 271(a), which governs direct infringement, requires a pleading to:  "(i) allege ownership of the patent, (ii) name each defendant, (iii) cite the patent that is allegedly infringed, (iv) state the means by which the defendant allegedly infringes, and (v) point to the sections of the patent law invoked." *Am. Infertility of New York, P.C. v. Deep Blue Health New Zealand Ltd.*, No. 17-CV-5666, 2019 WL 10786023, at *6 (S.D.N.Y. Dec. 30, 2019) (quoting *Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*, 2017 WL 74729, at *3 (S.D.N.Y. Jan. 4, 2017)), *report and recommendation adopted*, 2020 WL 4218261 (S.D.N.Y. July 23, 2020); *see also Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1362 (Fed. Cir. 2013).

Subsection (b), which governs induced infringement, provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer."  35 U.S.C. § 271(b).  To establish induced infringement, a plaintiff must assert that the defendant, "(1) had knowledge of the patent-in-suit; (2) knew the induced acts were infringing; and (3) specifically intended to encourage another's infringement." *Crypto Research, LLC v. Assa Abloy, Inc.*, 236 F. Supp. 3d 671, 686-87 (E.D.N.Y. 2017) (quoting *Carson Optical Inc. v. eBay Inc.*, 202 F. Supp. 3d 247, 253 (E.D.N.Y. 2016)).

Contributory infringement, governed by 35 U.S.C. § 271(c), states as follows:

Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or

16

composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use, shall be liable as a contributory infringer.

*Id*.  To prove contributory infringement, a plaintiff must show that:  (1) there is direct infringement; (2) the infringer had knowledge of the patent; (3) the infringing item, process, or component of the process has no substantial non-infringing uses; and (4) the infringing item, process, or component of the process is a material part of the patented invention.  *See Crypto Research*, 236 F. Supp. 3d at 687.

Each of plaintiff's patent infringement claims has a fundamental requirement in common -- namely, that plaintiff must demonstrate that the defendants *actually infringed* its patents. Importantly, in defendants' response to the Order to Show Cause and Temporary Restraining Order dated July 28, 2020, Dkt. 12, defendants submitted legal arguments to the Court arguing that their product cannot infringe plaintiff's patent because the products and the introduction of stop-clock control functionality *preceded* plaintiff's patents.  *See id.* at 6-7 (emphasis added). Defendants argue that the exact product and functionality that plaintiff itself identifies as infringing *preceded* plaintiff's patents.  *See id.*[10]  Additional evidence in the record (submitted by plaintiff) supports defendants' argument that the functionality at issue (*i.e.*, shot clock functionality and let-detection system) (1) *predated* plaintiff's patents or (2) *does not infringe* plaintiff's patents at all.  *See, e.g.,* Reply Memorandum of Law in Further Support of Plaintiff's Application for a Preliminary Injunction attaching defendants' response, Dkt. 10-2, Ex. 1 at ECF pages 7 (¶ 17), 8 (¶ 19) (Trinity inventor states that "the shot clock function was already implemented [in] 2016" and that the Trinity System's "measuring principle is <u>not</u> based on a

---

[10] The USTA, defendants' customer, also asserts that this product and functionality were offered by defendants *before* plaintiff's patents were issued.  *See* Dkt. 65 at 7-8.

force measuring sensor") (emphasis in original); *see id.* at ECF pages 10-42 (further explaining the chronology of the Trinity shot clock function, measuring principles involved, and including emails and document excerpts demonstrating that it was used in 2016 and 2017). These facts are not controverted.

This Court is concerned that plaintiff has not attempted to demonstrate that the allegedly infringing configuration of the Old Trinity System was not already in use *prior* to the issuance of its patents. *See* Am. Compl. ¶¶ 50, 56, 84, 92. If it were found at trial that defendants' present Trinity System or the allegedly infringing configuration of its Old Trinity System pre-existed plaintiff's patents, this would be a complete defense to plaintiff's patent infringement claims. *See Seoul Viosys Co., Ltd. v. P3 Int'l Corp.*, No. 16-CV-6276, 2018 WL 4759744, at *7 (S.D.N.Y. Sept. 30, 2018) ("[a]n accused infringer . . . may overcome a patent's presumption of validity by presenting 'clear and convincing evidence that there was a definite sale or offer to sell more than one year before the application for the subject patent, and that the subject matter of the sale or offer to sell fully anticipated the claimed invention,' or rendered it obvious" (citations omitted)). Not only defendants' submissions, but also plaintiff's own submissions, have put this defense at issue. *See id.* at *8 ("a *patentee* can -- unintentionally -- carry the alleged infringer's burden in those rare cases in which the patentee alleges that a product on sale prior to the critical sales date infringes its patent." (emphasis in original)).

This Court cannot find plaintiff's patent infringement claims to be well pleaded because there are meritorious defenses to the claims. It would be inappropriate for this Court to recommend entering default judgment as to the patent infringement claims at this time. *See Hop Hing Produces Inc.*, 2013 WL 3990761, at *3 ("[a] fact is not 'well-pleaded' if it is . . . 'contrary to uncontroverted material in the file of the case.'"); *Winn*, 1996 WL 325610, at *1 (concluding

"[b]ecause there are serious questions regarding . . . liability in this action, it would be inappropriate to enter a default judgment").

This Court requires proof as to the timing of plaintiff's patents in relation to defendants' introduction of their products and the use of the stop-clock control functionality. This Court understands that plaintiff has acknowledged that the USTA may have relevant evidence and that plaintiff may be filing a related suit against the USTA that will address these concerns. *See* Dkts. 72-73. For these reasons, this Court recommends **denying** plaintiff's motion for default judgment as to the patent infringement claims because plaintiff has not established the facts necessary to demonstrate that plaintiff's patents preceded defendants' introduction of their let-detection system and the use of stop-clock control functionality. *See J&J Sports Prods., Inc. v. Gomez*, No. 18-CV-5119, 2019 WL 4744229, at *4-*5 (E.D.N.Y. Sept. 29, 2019) (denying default without prejudice until plaintiff provides sufficient evidence to establish fact in controversy).

### C.    False Advertising, False Description, and False Representations Under the Lanham Act[11]

Plaintiff asserts claims for false advertising, false description, and false representations under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). *See* Am. Compl. ¶¶ 107-19. Although plaintiff considers false description and representations as separate counts from its false advertising claim, false description and representations fall under the umbrella of a false

---

[11] Although plaintiff references a "federal unfair competition" claim in the introduction to the Amended Complaint and in the Motion for Default Judgment, *see* Dkt. 39 at ¶ 1; Dkt. 48-1 at 5, "there is no specific Federal cause of action for unfair competition. Instead unfair competition under the Lanham Act is a category of claims consisting primarily of causes of action for false designation of origin and false advertising." *Sussman-Automatic Corp. v. Spa World Corp.*, 15 F. Supp. 3d 258, 272-73 (E.D.N.Y. 2014) (quoting *Pot Luck, LLC v. Freeman*, No. 06-CV-10195, 2009 WL 693611, at *4 (S.D.N.Y. Mar. 10, 2009)). This Court considers the discussion of plaintiff's specific claims under the Lanham Act to encompass the federal unfair competition claim.

advertising claim. This Court analyzes these counts together as a false advertising claim. *See Resource Developers, Inc. v. Statue of Liberty-Ellis Island Foundation, Inc.*, 926 F.2d 134, 139 (2d Cir. 1991) (describing the Lanham Act's "two distinct causes of action" as "false designation of origin or source, known as 'product infringement,' and false description or representation, known as 'false advertising'").

Under Section 43(a) of the Act, if a person uses "false or misleading description[s] of fact, or false or misleading representations of fact" as to the "nature, characteristics, qualities, or geographic origin" in advertising or promoting goods and services or commercial activities, that person may be liable to "any person who believes that he or she is or is likely to be damaged by such act." *Id.* To recover under this section, a plaintiff must show that "some consumers were actually confused" by the advertising, description, and/or representation, or that defendant "deliberately or intentionally advertised its product falsely," and that the plaintiff's injury was caused by the false advertising, description, and/or representation. *See Barr Labs, Inc. v. Quantum Pharmics, Inc.*, 827 F. Supp. 111, 117 (E.D.N.Y. 1993).

"[T]o succeed on a false advertising claim, a plaintiff must show (1) a false or misleading statement (2) in connection with commercial advertising or promotion that (3) was material, (4) was made in interstate commerce, (5) damaged or will likely damage the plaintiff, and (6) actually confused consumers, or was likely to confuse consumers." *Fourtek Telnoloji Ve Guvenlik Sistemleri, A.S. v. GSI-Orient, Inc.*, No. 19-CV-3555, 2020 WL 2527754, at *7 (E.D.N.Y. Feb. 26, 2020) (citing *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 112 (2d Cir. 2010); *C=Holdings B.V. v. Asiarim Corp.*, 992 F. Supp. 2d 223, 242 (S.D.N.Y. 2013)). "Courts also require that any alleged Lanham Act misrepresentation concerning a plaintiff's products or services: (1) consist of commercial speech; (2) be made by defendants who are in commercial

competition with plaintiff; and (3) are stated for the purpose of influencing customers to buy defendants' goods or services." *Gmurzynksa v. Hutton*, 257 F. Supp. 2d 621, 629 (S.D.N.Y. 2003), *aff'd*, 355 F.3d 206 (2d Cir. 2004). To properly allege a "false or misleading statement," the plaintiff must show "that the challenged advertisement is literally false, *i.e.*, false on its face," or "that the advertisement, while not literally false, is nevertheless likely to mislead or confuse consumers." *Tiffany*, 600 F.3d at 112 (quoting *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007)).

A plaintiff may establish "literal falsity" by showing that the packaging or advertising "either makes an express statement that is false or a statement that is 'false by necessary implication,' meaning that the advertisement's 'words or images, considered in context, necessarily and unambiguously imply a false message.'" *Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 65 (2d Cir. 2016) (quoting *Time Warner Cable,* 497 F.3d at 158). The "literal falsity" must be unambiguous, and once established, a court need not consider the advertisement's impact on the buying public. *See id.* Alternatively, a plaintiff may demonstrate "implied falsity" by which "the message leaves 'an impression on the listener or viewer that conflicts with reality.'" *Id.* (quoting *Time Warner Cable*, 497 F.3d at 153). To show "implied falsity," a plaintiff may present extrinsic evidence of consumer confusion or use evidence of a defendant's deliberate intention to deceive the public to create a rebuttable presumption of consumer confusion. *See id.* (citing *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 255-56 (2d Cir. 2014)). The plaintiff must also show that the false or misleading statement was not mere puffery. *See Time Warner Cable*, 497 F.3d at 159-60. Mere "puffery" -- vague claims of superiority, exaggerations, and boasts upon which no reasonable buyer would rely -- is not actionable as false advertising. *See id.* at 159-60 (citing *Lipton v.*

*Nature Co.*, 71 F.3d 464, 474 (2d Cir. 1995)); *see, e.g.*, *Weight Watchers Int'l, Inc. v. Noom, Inc.*, 403 F. Supp. 3d 361, 371 (S.D.N.Y. 2019) (holding that a weight loss company's claim that it would provide customers "a healthier you in 16 weeks" was non-actionable puffery).

To be actionable, the misrepresentation must be "material," that is, speaking to an "inherent quality or characteristic of the product." *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 238 (2d Cir. 2001). If the advertisement on its face is susceptible to more than one reasonable interpretation, then the plaintiff must show actual consumer confusion to have an actionable claim. *See C=Holdings B.V.*, 992 F. Supp. 2d at 242 (citing *Time Warner Cable*, 497 F.3d at 158).

Plaintiff's Amended Complaint alleges that defendants made false statements about Group One's products to prospective clients. *See* Am. Compl. ¶¶ 31-39, 107-19. In support of the allegation, plaintiff points to the Trinity Specification -- a document with information about defendants' product that defendants allegedly circulated to prospective clients -- and identifies false statements about Group One's Net System product throughout the document. *See id.* ¶¶ 32-36. According to plaintiff, defendants' clients, who received the Trinity Specification document from defendants, were also prospective Group One clients. *See id.* ¶ 36.

The alleged false statements contained in the Trinity Specification included statements that the Net System (1) had a battery life of only a day; (2) needed a "line of sight" to function, that would prevent the umpire from paying attention to the match because the umpire would be "looking for a good signal all the time;" (3) needed a "charger system;" (4) would not work with a "net cam;" (5) required "big calibration on site" and "tools" for the set up; and (6) had an "Advanced Wind Setting" that only takes away the beep. *See id.* ¶¶ 32-33. Plaintiff alleges that each of these statements is "demonstrably false" and a "material misrepresentation upon which

22

customers or potential customers have, and will rely." *Id*. ¶¶ 33, 108.  In support of the claim

that potential customers are confused by this misinformation and rely on it, plaintiff notes that

"on a conference call following a marketing presentation for the Net System with the USTA . . .

the only question posed to Group One concerned how long the Net System's battery lasted." *Id*.

¶ 36.  Plaintiff asserts that defendants knew that the statements in the Trinity Specification were

false, that defendants submitted the Trinity Specification containing the known falsehoods to the

USTA, that the USTA's decision not to use Group One's Net System was due to the known

falsehoods in the Trinity Specification, and that the known falsehoods have caused and will

continue to cause plaintiff financial and reputational harm.  *See id*. ¶¶ 38-39, 110-11, 118-19.

Unlike the patent infringement claims, defendants did not respond to plaintiff's Lanham

Act claims.  Defendants' default establishes the truth of plaintiff's Lanham Act allegations, and

that, in turn, establishes that defendants deliberately set out to deceive potential clients by

distributing the known falsehoods about plaintiff's product in the Trinity Specification.  That

evidence alone suffices to establish liability for false advertising, and this Court recommends

**granting** plaintiff's motion with respect to its claims of false advertising, false description, and

false representations under Section 43(a) of the Lanham Act.

D.      **State Law Claims**

1.      **Tortious Interference with Business Relations**

Plaintiff alleges a claim for tortious interference with business relations under New York

common law.  *See* Am. Compl. ¶¶ 120-25.  This claim requires a showing that:  "(1) the plaintiff

had business relations with a third party; (2) the defendant interfered with those business

relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper

means; and (4) the defendant's act injured the relationship."  *Sell Below Cost USA LLC v. Blue*

*Island Holding Grp. (US) Inc.*, No. 19-CV-6095, 2021 WL 1394284, at *6 (E.D.N.Y. Feb. 9, 2021) (quoting *Insight Global, LLC v. Wenzel*, No. 17-CV-8323, 2018 WL 11318728, at *3 (S.D.N.Y. Aug. 27, 2018)).

Even though the first prong requires a showing that a plaintiff had business relations with a third party, "[t]he lack of a valid contract . . . is not a barrier to a claim for tortious interference with business relations.  Indeed, [a plaintiff] 'can recover if [it] can prove that the defendant tortiously interfered with 'a continuing business or other customary relationship not amounting to a formal contract.'"  *Scutti Enters., LLC v. Park Place Entm't Corp.*, 322 F.3d 211, 215 (2d Cir. 2003).  This is true for prospective business relations as well.  *See Hannex Corp. v. GMI, Inc.*, 140 F.3d 194, 205 (2d Cir. 1998) ("To state a claim for tortious interference with prospective business relations, a valid contract is not necessary.").  As such, the claim encompasses conduct including "interferences with . . . the opportunity of selling or buying . . . chattels or services, and any other relations leading to potentially profitable contracts."  *Id.* (quoting Restatement (Second) of Torts § 766B cmt. c).  However, "New York courts have placed some limits on what constitutes 'business relations' by rejecting, for example, a claim containing 'only a general allegation of interference with customers without any sufficiently particular allegation of interference with a specific contract or business relationship.'"  *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 262 (2d Cir. 2015) (quoting *McGill v. Parker*, 179 A.D.2d 98, 105 (1st Dep't 1992)).

For the second prong, a plaintiff must show that the defendant interfered with the business relation at issue.  "The law, of course, does not prohibit or even discourage all forms of interference.  The fundamental questions are whether the interference was improper and whether plaintiffs were injured."  *Godinger Silver Art Ltd. v. Hirschkorn*, 433 F. Supp. 3d 417, 426

(E.D.N.Y. 2019).  In light of this, "[t]o satisfy the third prong, the plaintiff must show that the 'defendant's conduct [] amount[ed] to a crime or independent tort,' the conduct was done 'for the sole purpose of inflicting intentional harm on the plaintiff,' or the defendant used 'wrongful means' such as 'physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and extreme and unfair economic pressure.'"  *Sell Below Cost*, 2021 WL 1394284, at *6 (quoting *Insight Global*, 2018 WL 11318728 at *4 (citation omitted)).  "For a tortious inference claim in which the defendant's interference is intended, at least in part, to advance its own competing interest, New York law requires the party seeking relief to prove that the tortfeasor interfered with the prospective relationship using criminal or fraudulent means." *SourceOne Dental, Inc. v. Patterson Companies, Inc*., 328 F. Supp. 3d 53, 69 (E.D.N.Y. 2018).

Here, plaintiff has sufficiently alleged tortious interference with prospective business relations.  The Amended Complaint alleges that plaintiff had a prospective business relationship with the USTA, as it was being considered by the USTA to provide its Net System for use at the 2020 U.S. Open, and had several meetings with the USTA.  *See* Am. Compl. ¶¶ 36, 121. Plaintiff alleges that defendants interfered with this prospective business relationship by disseminating known falsehoods about Group One's product in defendants' Trinity Specification document, a document that defendants used to market their own product to the USTA.  *See id*. ¶¶ 32-36, 122.  Moreover, plaintiff alleges that defendants' actions caused the USTA to contract with defendants for the 2020 U.S. Open, rather than plaintiff.  *See* Am. Compl. ¶¶ 37-38, 123-25.

Plaintiff's unrebutted allegations establish liability for tortious interference with business relations, and defendants' default establishes the truth of these allegations.  As with the Lanham Act claims, defendants have not submitted any response for this Court to consider in connection

with this claim.  This Court recommends **granting** plaintiff's motion for default judgment with respect to the claim for tortious interference with business relations.

### 2.    Unfair Competition

By establishing defendants' liability under the Lanham Act, plaintiff has established defendants' liability on the unfair competition claim under New York common law so long as the allegations demonstrate the defendants' bad faith.  *See Mitchell Grp. USA LLC v. Udeh*, No. 14-CV-5745, 2017 WL 9487193, at *4 (E.D.N.Y. Mar. 8, 2017) (citing *Jeffrey Milstein v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34 (2d Cir. 1995)).  The Amended Complaint adequately alleges, and the default establishes, that defendants willfully and deliberately disseminated known falsehoods about plaintiff's product to prospective clients.  *See* Am. Compl. ¶¶ 31-39, 126-32.  This Court finds that the defendants are liable on plaintiffs' unfair competition claim under New York common law, and recommends **granting** plaintiff's motion for default judgment with respect to the unfair competition claim.

### 3.    Deceptive Trade Practices and False Advertising under N.Y. Gen. Bus. Law

Plaintiff raises claims for deceptive trade practices and false advertising under New York General Business Law §§ 349 and 350.  *See* Am. Compl. ¶¶ 133-44.  These are consumer protection statutes, and corporate competitors have limited standing to enforce them.  *See Feel Better Kids, Inc. v. Kids in Need, Inc.*, No. CV-06-0023, 2012 WL 4483000, at *8 (E.D.N.Y. Aug. 28, 2012) (citing *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269, 273 (S.D.N.Y. 2003)).  "In order for a non-consumer plaintiff to have standing, the 'gravamen of the complaint must be consumer injury or harm to the public interest' and plaintiffs must 'allege conduct that has significant ramifications for the public at large.'"  *Id.* (quoting same).  "Competitors may bring a deceptive acts and practices claim only when it is premised on a harm

26

to the public at large, which is generally based on 'potential danger to the public health or safety.'" *Greenlight Capital, Inc. v. GreenLight (Switzerland) S.A.*, No. 04-CV-3136, 2005 WL 13682, at *6 (S.D.N.Y. Jan. 3, 2005) (quoting same). "[D]isputes between competitors where the core of the claim is harm to another business as opposed to consumers . . . constitute[s] [a] situation[] which courts have found to reflect a public harm that is too insubstantial to satisfy the pleading requirements." *Gucci Am., Inc.,* 277 F. Supp. 2d at 273.

Plainly, Group One has not adequately pled its deceptive trade practices and false advertising claims under the New York General Business Law, as nowhere in the Amended Complaint does Group One specify a significant public harm caused by defendants' actions other than the conclusory allegation that defendants' actions have "caused, and are likely to continue to cause injury to the public, including consumers in New York." *See* Am. Compl. ¶¶ 135, 141; *see also N. Am. Olive Oil Assoc. v. D'Avolio, Inc.*, 457 F. Supp. 3d 207, 229 (E.D.N.Y. 2020) ("Where a plaintiff makes only conclusory allegations of impact on consumers at large, a GBL § 349 claim must be dismissed."). Not only does Group One fail to include any allegations in the Amended Complaint demonstrating significant ramifications for the public at large, but also plaintiff's claims under the New York General Business Law improperly include allegations about harm to plaintiff's business. *See* Am. Compl. ¶¶ 135-36, 141-42.

The gravamen of plaintiff's Amended Complaint is clearly harm to plaintiff's business as opposed to the public at large; plaintiff has not sufficiently pled public harm to establish standing to assert claims under New York General Business Law §§ 349 and 350 as a non-consumer. *See Feel Better Kids*, 2012 WL 4483000, at *8 ("Missing from the Complaint . . . are allegations demonstrating the significant ramifications for the public at large. Therefore, the Court concludes that Plaintiffs have not pled the requisite public harm in order to secure standing as a

27

non-consumer . . . under New York General Business Law §§ 349 and 350-a.").[12]  This Court recommends **denying** plaintiff's motion with respect to its claims of deceptive trade practices and false advertising under New York General Business Law §§ 349 and 350.

### 4.    Trade Libel

Plaintiff alleges a claim for trade libel under New York law.  "Under New York law, trade libel or product disparagement is an action to recover for words or conduct which tend to disparage or negatively reflect upon the condition, value or quality of a product or property. . . . To state a claim for trade libel, a plaintiff must adequately plead (1) falsity of the statement, (2) publication to a third person, (3) malice (express or implied), and (4) special damages."  *Eminah Props. LLC v. Energizer Holdings, Inc.*, 531 F. Supp. 3d 593, 608 (E.D.N.Y. 2021) (quoting *Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 291 (S.D.N.Y. 2016)).  "A party alleging trade libel must establish that the communication was a substantial factor in inducing others not to conduct business with it and, unlike libel *per se,* must adduce proof of special damages in the form of lost dealings."  *Sandler v. Simoes*, 609 F. Supp. 2d 293, 302 (E.D.N.Y. 2009).

"An adequate pleading of special damages must clear several hurdles.  First, special damages are limited to losses having pecuniary or economic value, and must be fully and accurately stated, with sufficient particularity to identify actual losses. . . . In addition, special damages must be the natural and immediate consequence of the disparaging statements to be recoverable."  *Eminah Props.*, 531 F. Supp. 3d at 608 (quoting *Soter Techs., LLC v. IP Video Corp.*, 523 F. Supp. 3d 389, 410 (S.D.N.Y. 2021)).  "The requirement of pleading and ultimately

---

[12] It bears noting that, in contrast to the New York General Business Law false advertising statutes, which are consumer protection statutes, plaintiff need not allege public harm to have standing to bring a claim under the Lanham Act.  *See Feel Better Kids*, 2012 WL 4483000, at *8 n.12.

proving special damages goes to the cause of an action itself and not merely to the recovery. . . . Courts considering product disparagement claims have therefore applied this requirement strictly, granting motions to dismiss . . . for failure to allege special damages with the requisite specificity." *Enigma Software Grp.*, 194 F. Supp. 3d at 292 (citation omitted). "Where loss of customers constitutes the alleged special damages, the individuals who ceased to be customers, or who refused to purchase, must be named and the exact damages itemized." *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.,* 314 F.3d 48, 59 (2d Cir. 2002) (New York law) (quotations omitted). "Pleading damages as a round number with no attempt at itemization alleges general rather than special damages." *Bilinski v. Keith Haring Found., Inc.*, 96 F. Supp. 3d 35, 51 (S.D.N.Y. 2015) (citing *Drug Research Corp. v. Curtis Pub. Co.,* 7 N.Y.2d 435, 441 (1960)).

Here, as to damages, the Amended Complaint alleges only that as a result of defendants' "illicit acts and conduct, the USTA ultimately decided to award the let-detection services 2020 U.S. Open contract to GTE and Weigel over Group One" and that "Group One is thus entitled to exemplary damages in excess of $200,000." Am. Compl. ¶¶ 153-54. Given the pleading requirement of special damages, pleading damages "in excess of $200,000" is insufficient to be deemed well plead. *See Soter Techs.*, 523 F. Supp. 3d at 410 ("Pleading damages of 'at least $1990,' with no further explanation, falls short of the requirement to plead damages with particularity."). While the Amended Complaint specifically identifies the USTA as the customer it lost as a result of defendants' conduct, it "lacks all but the most conclusory allegation that the alleged statements caused it to lose a sale. It pleads no facts that a sale was imminent or even foreseeable with the audience to those statements." *See id.*; *see also, Drug Research*, 7 N.Y.2d at 441 (plaintiff failed to plead special damages where it alleged damages of $5 million because

"[s]uch round figures, with no attempt at itemization, must be deemed to be a representation of general damages").[13]

Because the Amended Complaint does not adequately allege special damages, the Court need not reach the other elements of the trade libel claim. *See Soter Techs.,* 523 F. Supp. 3d at 411. This Court, therefore, recommends **denying** plaintiff's motion with respect to the claim for trade libel.

## IV. Remedies

If liability is found, the Court must also address whether any damages should be awarded to the plaintiff and, if so, in what amount. *See Symbology Innovations, LLC v. Nat. Nectar Inc*., No. 19-CV-04474, 2020 WL 9814098, at *4 (E.D.N.Y. Aug. 21, 2020). Unlike allegations concerning liability, allegations relating to damages are not deemed admitted upon default. *See Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (citing *Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). Rather, damages must generally be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed. *See Greyhound Exhibitgroup*, 973 F.2d at 158. However, "these steps are not necessary as long as [the court] ensure[s] that there was a basis for the damages specified in the default judgment." *Joe Hand Promotions, Inc. v. Levin*, No. 18-CV-9389, 2019 WL 3050852, at *3 (S.D.N.Y. July 12, 2019)

---

[13] The likelihood that a sale was not imminent or necessarily foreseeable with the USTA is further supported by the fact that the only leasing proposal document proffered into evidence by plaintiff is a proposal provided to the USTA in 2015. *See* Goldstein Decl., Dkt. 48-6, Ex. A at ECF pages 11-12. Plaintiff appears to estimate what it would have charged the USTA for the U.S. Open in 2020 and 2021. *See* Goldstein Decl. ¶ 21(d). Given that plaintiff did not submit a leasing proposal to the USTA for these events, this Court finds that plaintiff was only in preliminary discussions with the USTA.

(alterations in original) (internal quotations and citation omitted).  A court may make this determination upon a review of detailed affidavits and documentary evidence.  *See Fustok v. ContiCommodity Servs., Inc.,* 873 F.2d 38, 40 (2d Cir. 1989).

The Court notes that plaintiff's Amended Complaint is internally inconsistent with respect to the relief requested and is also inconsistent with respect to the relief requested in the Motion for Default Judgment.  *Compare* Am. Compl., Dkt. 39 at ¶ 1 (seeking "permanent injunctive relief, statutory damages, compensatory damages, punitive damages, recovery of [plaintiff's] costs and attorney's fees, and other relief authorized by the Patent Act, the Lanham Act, and applicable state laws"), *with* Am. Compl., Prayer for Relief ¶¶ j-q (seeking a permanent injunction; order that defendants "engage in a program of corrective advertising;" compensatory, treble, and punitive damages; an award of costs and expenses; and other relief as the Court deems proper), *and* Pl.'s Mem., Dkt. 48-1, at 19-31 (seeking permanent injunction for patent infringement, lost profits from patent infringement, and lost profits from defendant's false and misleading statements).  The standard for assessing damages for a default judgment, however, requires this Court to assess the "damages *specified in the default judgment*," *see Joe Hand Promotions*, 2019 WL 3050852, at *3 (emphasis added).  As the other forms of relief are not addressed in plaintiff's motion, this Court deems plaintiff to have abandoned these additional forms of relief (*i.e.*, statutory damages, an order that defendants "engage in a program of corrective advertising," treble and punitive damages, attorney's fees and costs, and other relief authorized by state law).  *See Joe Hand Promotions, Inc. v. Bernal,* No. 18-CV-85, 2019 WL 885930, at *3 (E.D.N.Y. Feb. 22, 2019) (although plaintiff sought injunctive relief in its complaint, it did not request such relief in its motion for default judgment, and the Court deemed the claim abandoned).

A.    **Permanent Injunction and Damages for Patent Infringement Claims**

As noted above, this Court finds that plaintiff's patent infringement claims are not well pleaded at this time.  Until such time as plaintiff can provide the requisite proof to establish the necessary facts demonstrating that plaintiff's patents preceded defendants' products and stop-clock control functionality, this Court recommends **denying** plaintiff's request for a permanent injunction and damages in connection with plaintiff's patent infringement claims.

B.    **Non-Patent Damages (Lost Profits) Under Section 43(a) of the Lanham Act and New York Common Law**

This Court will now assess plaintiff's entitlement to lost profits resulting from defendants' false and misleading statements in violation of Section 43(a) of the Lanham Act, and tortious interference with business relations and unfair competition under New York common law.  Plaintiff claims that it is "entitled to at least damages in the form of profits it would have received from the Grand Slam events in at least 2020, and 2021." Pl.'s Mem. at 30.  Plaintiff is seeking non-patent lost profits in the amount of $300,000.  *See id*. at 28-31.[14]  (The remaining $180,000 in damages that plaintiff seeks relate to alleged lost profits for the patent infringement.)

Even though plaintiff does not cite any case law in support of this entitlement, plaintiff could claim entitlement to lost profits under either the Lanham Act or New York common law.  *See Ivy Enters., Inc. v. Missi Cosmetics. Co.*, No. 08-CV-412, 2009 WL 10708938, at *2 (E.D.N.Y. Aug. 20, 2009) ("Under the Lanham Act, the plaintiff is [] entitled to recover:  (1) the defendants' profits; (2) any damages sustained by the plaintiff; and (3) costs of the action.  *See*

---

[14] Plaintiff included the 2020 and 2021 U.S. Open in its request for lost profits in connection with the patent infringement claims.  To avoid double counting, plaintiff excluded these tournaments from its non-patent damages request.  Because the Court recommends denying default for the patent infringement claims, and thus does not assess the damages requested for those claims, the Court considers those two tournaments in evaluating plaintiff's request for non-patent damages.

15 U.S.C. § 1117(a)"); *Int'l Minerals & Resources, S.A. v. Pappas*, 96 F.3d 586, 597 (2d Cir. 1996) (New York law) ("[o]ne who is liable to another for interference with a . . . prospective contractual relation is liable for damages for (a) the pecuniary loss of the benefits of the contract or the prospective relation; (b) consequential losses for which the interference is a legal cause; and (c) emotional distress or actual harm to reputation, if they are reasonably to be expected to result from the interference.").

Because the Lanham Act provides a more lenient standard in assessing such damages, and plaintiff can only recover once for damages suffered, the Court assesses this request under the Lanham Act. *Compare Int'l Minerals & Resources*, 96 F.3d at 597 (New York law) (explaining that "recovery for lost profits [] must be proven with reasonable certainty"), *with Ivy Enters.*, 2009 WL 10708938, at *3 (explaining that the Lanham Act's damages calculation allows courts to "engage in some degree of speculation"); *see also Krasnyi Oktyabr, Inc. v. Royal Sweet Bakery, Inc.*, No. 05-CV-3021, 2007 WL 2815808, at *5 n.7 (E.D.N.Y. Sept. 25, 2007) ("Lost profits are recoverable under both the Lanham Act and common law. Plaintiff, however, is permitted to recover only once for damages it actually suffered. Plaintiff has not specified under which law it seeks an award of lost profits. Therefore, this Court will analyze plaintiff's claim for lost profits under the Lanham Act.").

Under the Lanham Act, "[l]ost profits are calculated by estimating the revenue lost due to the infringing conduct and subtracting what it would have cost to generate that revenue." *See Victoria Cruises, Inc. v. Changjiang Cruise Overseas Travel Co.*, 630 F. Supp. 2d 255, 262 (E.D.N.Y. 2008). Although revenue lost can be proven through declining sales, it must be based on a pre-violation revenue "base line," and the plaintiff must present "evidence tending to discount the effect of any other market factors, such as evidence of positive business conditions

33

or the success of similar businesses not subject to the defendant's tortious conduct." *See id.* Because it may be difficult to determine lost sales caused by infringing conduct, *George Basch Co. v. Blue Coral, Inc.,* 968 F.2d 1532, 1539 (2d Cir. 1992), the Court "may engage in some degree of speculation in computing the amount of damages." *PPX Enters., Inc. v. Audiofidelity Enters.,* 818 F.2d 266, 271 (2d Cir. 1987) (quotations omitted).

Plaintiff calculates its lost profits by claiming that it lost sales in connection with the 2020 and 2021 Grand Slam events.[15] *See* Pl.'s Mem. at 30-31. Plaintiff does not claim, however, to have *ever* successfully contracted with *any* of the Grand Slam events even though plaintiff claims to be "entering its fifth decade," has partnered with the Association of Tennis Professionals and the Women's Tennis Association since 2015, and does not allege any false statements by defendants before summer 2019. *See* Goldstein Decl. ¶¶ 2, 4, 15, Dkt. 48-6. Moreover, plaintiff provides evidence that it submitted a leasing proposal to the USTA in 2015,

---

[15] The Grand Slam events include the 2020 and 2021 U.S. Open, Australian Open, French Open, and Wimbledon. *See* Goldstein Decl. ¶ 7, Dkt. 48-6.

but does not provide any explanation for why a sale was not consummated at that time, despite the fact that plaintiff indicates that it discussed the rejection with the USTA. *See* Goldstein Decl. ¶ 21(d), Dkt. 48-6 ("I was informed by Bruce Littrell, the USTA Director of Professional Officiating, and the Chief Umpire at the U.S. Open that the proposed fee was quite reasonable and not a factor at all in their consideration of whether to switch to Group One in 2015."); *id*. at ECF pages 11-12 (Leasing Proposal). Plaintiff provides no explanation for the lack of sales to the Grand Slam events before summer 2019, and the Court views this pre-violation revenue base line of zero sales as indicative that defendants' statements did not cause plaintiff to lose sales that it never had in the first place.

In addition, even if the Court could assume that plaintiff lost sales for the 2020 and 2021 Grand Slam events due to defendants' conduct, plaintiff does not provide sufficient information for this Court to calculate lost profit. First, plaintiff does not have an exact figure for the fee it would charge for the Grand Slam events. Instead, it estimates that it would have charged $60,000. *See* Goldstein Decl. ¶ 21(d). Plaintiff states that it arrived at this value "since it equates to the first offer to the USTA in early 2015 of the amount of $56,000" and, given "considerable improvements" to plaintiff's Net System since that time, "a $60,000 price tag in 2021 for the current version is a conservative estimate." *Id*. While the Lanham Act damages calculation allows Courts to be more speculative when it comes to calculating damages, this leeway generally occurs when the inability to calculate damages results from the defendant. *See PPX Enters.,* 818 F.2d at 271 (explaining that speculation is allowed "particularly when the inability to compute them is attributable to the defendant's wrongdoing").

Here, where plaintiff allegedly contracts with other tennis organizations, the Court views with skepticism the estimated price tag *in lieu* of an actual one. In addition, because plaintiff

does not provide the cost it would incur in generating revenue -- *i.e.*, production costs, shipping charges, and setup costs -- this Court does not have the ability to calculate plaintiff's lost profits, even speculatively.  This Court, therefore, recommends **denying** plaintiff an award of damages, without prejudice to renew, after plaintiff provides additional evidence and arguments to support its entitlement to non-patent lost profits.  *See Trs. of Laborers Union Local No. 1298 of Nassau & Suffolk Ctys. Benefit Funds v. Sitework Mgmt., Inc.*, No. 14-CV-3052, 2016 WL 11481189, at *6-*7 (E.D.N.Y. July 22, 2016) (denying damages in default proceeding where plaintiff's damages submission was insufficient to support an award of damages); *EAQ Constr. Corp.*, 2015 WL 5793597, at *7 (same).

## Conclusion

For the reasons stated above, this Court recommends granting in part and denying in part plaintiff's motion for default judgment, and denying an award of damages at this time.

As discussed above, this Court requires proof as to the timing of plaintiff's patents in relation to defendants' introduction of their products and the use of the let-detection system and stop-clock control functionality.  Thus, this Court recommends denying plaintiff's motion for default judgment as to plaintiff's patent infringement claims.

This Court further recommends denying plaintiff's motion with respect to its claims of deceptive trade practices and false advertising under New York General Business Law §§ 349 and 350, and claim for trade libel.

This Court recommends granting the motion for default judgment with respect to plaintiff's claims of false advertising, false description, and false representations under Section 43(a) of the Lanham Act; claim for tortious interference with business relations; and claim for unfair competition under New York common law.  As explained above, however, the Court

recommends denying plaintiff an award of damages, without prejudice to renew, after plaintiff provides additional evidence and arguments to support its entitlement to lost profits in connection with its non-patent claims.

Any objections to the recommendations made in this Report must be filed with the Honorable Chief Judge Margo K. Brodie within 14 days after the filing of this Report and Recommendation and, in any event, on or before **March 14, 2022**.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to file timely objections may waive the right to appeal the District Court's order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Small v. Sec'y of Health & Human Servs*., 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*) (discussing waiver under the former ten-day limit).

The Clerk is requested to enter this Report and Recommendation into the ECF system.

**SO ORDERED**

Dated: Brooklyn, New York
February 28, 2022

s/ James R. Cho
James R. Cho
United States Magistrate Judge