UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

GROUP ONE LTD.,

                Plaintiff,           **MEMORANDUM & ORDER**
                                      20-CV-2205 (MKB) (JRC)

       v.

GTE GmbH and RALPH WEIGEL, *in his corporate capacity as owner of GTE and in his individual capacity*,

                Defendants.

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

I.    Background............................................................................................................... 4

   a.   Factual background ........................................................................................... 4

      i.   Plaintiff's Net System ................................................................................. 5

      ii.   Defendants' allegedly infringing Trinity System and false statements about Plaintiff's Net System ............................................................................. 6

      iii.   Plaintiff's patents and Defendants' knowledge of infringement..................... 7

      iv.   Plaintiff's claims ....................................................................................... 8

   b.   Procedural history ............................................................................................ 9

      i.  Plaintiff's first motion for a temporary restraining order and preliminary injunction and Defendants' *pro se* response ............................................... 9

      ii.   Defendants' motion to dismiss and Plaintiff's Amended Complaint............................ 12

      iii.   Plaintiff's second motion for a TRO and PI................................................. 13

   c.   The R&R ......................................................................................................... 18

      i.   Service of process...................................................................................... 18

      ii.   The default judgment ................................................................................ 18

      iii.   Patent infringement claims........................................................................ 19

      iv.   Lanham Act claims for false advertising and use of false descriptions and false representations ......................................................................................... 19

      v.  Tortious interference with prospective business relations under the New York common law.............................................................................................. 20

      vi.   Unfair competition under the New York common law .................................. 21

vii.    Deceptive trade practices and false advertising under the GBL.................................. 21

viii.   Trade libel under the New York common law ........................................................ 22

ix.  Remedies .................................................................................................................. 22

1.  Abandoned forms of relief....................................................................... 22

2.  Permanent injunction and damages for patent infringement claims......................... 23

3.  Non-patent damages under the Lanham Act and New York common law ............... 23

d.  Plaintiff's objections to the R&R ....................................................................... 24

II.  Discussion ................................................................................................................... 25

a.    Standards of review........................................................................................... 25

i.   Report and recommendation ...................................................................... 25

ii.  Default judgment.......................................................................................... 27

b.    Unopposed portions of the R&R ....................................................................... 28

c.    Default judgment ............................................................................................... 29

i.   Willfulness .................................................................................................... 30

ii.  Meritorious defense...................................................................................... 33

iii.  Prejudice ....................................................................................................... 37

d.    Patent infringement claims ................................................................................ 39

i.   Plaintiff's objections .................................................................................... 39

ii.  Liability ......................................................................................................... 42

e.  Lanham Act claims for false advertising and use of false descriptions and false
representations ......................................................................................................... 50

f.    Deceptive trade practices and false advertising under the GBL ........................ 50

g.    Trade libel claim ................................................................................................ 53

h.    Remedies............................................................................................................ 55

i.   Permanent injunction and patent damages ................................................. 55

1.  Permanent injunctive relief....................................................................... 55

A.  Plaintiff is successful on the merits ........................................................ 57

B.  Plaintiff has suffered irreparable injury and remedies available at law are
inadequate to compensate Plaintiff .................................................... 58

C.  The balance of hardships and public interest favor Plaintiff .................. 59

2.  Lost profits based on Plaintiff's patent claims ......................................... 61

ii.  Lost profits based on Plaintiff's non-patent claims ..................................... 67

1.  Judge Cho correctly analyzed lost profits under the Lanham Act, rather than
the New York common law............................................................................ 67

2.  Lost profits analysis.................................................................................. 68

i.    Plaintiff's request to submit additional evidence ............................................................... 73

III.   Conclusion ................................................................................................................. 74

Plaintiff Group One Ltd. ("Group One") commenced the above-captioned action on May 15, 2020, against Defendants GTE GmbH ("GTE") and Ralf Weigel, and filed an Amended Complaint on April 16, 2021, alleging that Defendants infringed Plaintiff's patents for tennis let-detection systems and knowingly spread malicious falsehoods about the capabilities of Plaintiff's systems.  (*See generally* Am. Compl., Docket Entry No. 39; Compl., Docket Entry No. 1.) Plaintiff brings claims of direct, induced, and contributory patent infringement under the Patent Act, 35 U.S.C. § 271(a)–(c); false advertising and use of false descriptions and false representations under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); tortious interference with prospective business relations and unfair competition under the New York common law; deceptive trade practices and false advertising under sections 349(h) and 350(e)(3) of the New York General Business Law ("GBL"), respectively; and trade libel under the New York common law.  (Am. Compl. ¶¶ 61–155.)  After initially appearing in the case, Defendants defaulted, and the Clerk of Court entered default against them on June 30, 2021.  (Clerk's Entry of Default, Docket Entry No. 46.)  On July 9, 2021, Plaintiff moved for default judgment, (Pl.'s Mot. for Default J., Docket Entry Nos. 47–48), and, on July 10, 2021, the Court referred Plaintiff's motion to Magistrate Judge James R. Cho for a report and recommendation, (Order dated July 10, 2021).

By report and recommendation dated February 28, 2022, Judge Cho recommended that the Court (1) deny Plaintiff's motion as to Plaintiff's claims of patent infringement, deceptive trade practices and false advertising under GBL §§ 349 and 350, and trade libel under the New York common law; (2) grant Plaintiff's motion as to its claims of false advertising and use of false descriptions and false representations under the Lanham Act and tortious interference with

prospective business relations and unfair competition under the New York common law; and

(3) deny without prejudice Plaintiff's requests for a permanent injunction and patent

infringement damages, and for an award of lost profits in connection with its non-patent claims

(the "R&R").  (R&R 32, 36–37, Docket Entry No. 92.)  Plaintiff filed objections to the R&R on

March 14, 2022.  (Pl.'s Objs., Docket Entry No. 95.)  Defendants have not filed a response to

Plaintiff's objections and the time for doing so has passed.  For the reasons discussed below, the

Court adopts the R&R in part and grants in part and denies in part Plaintiff's motion.

**I.   Background**

    **a.   Factual background**

    Plaintiff is a "limited liability company in the Isle of Man."[1]  (Am. Compl. ¶ 3.)   GTE is

a "corporation organized under the laws of Germany with a principal place of business" in

Germany.  (*Id.* ¶ 5.)  "Weigel is the CEO, sole employee, and sole [o]wner of GTE" and also

resides in Germany.  (*Id.* ¶ 6.)  The parties are "direct competitors that provide let-detection

systems to major tennis tournaments, events, leagues, sanctioning bodies, and/or organizations

for [tennis] matches which include the let rule."  (*Id.* ¶ 24; *see also* Decl. of Frederic Goldstein

("Goldstein Default J. Decl.") ¶ 6, annexed to Pl.'s Mot. for Default J. as Ex. 6, Docket Entry

No. 48-6 ("GTE is Group One's direct and only competitor . . . .").)  Defendants market their

---

    [1]  The Court assumes the truth of the factual allegations in the Amended Complaint for purposes of Plaintiff's motion.  *See Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 188 (2d Cir. 2015) (per curiam) (noting that courts must accept allegations in the complaint as true "in deciding whether a default judgment is appropriate"); *Johnson v. New Bern Transp. Corp.*, No. 18-CV-1232, 2020 WL 6736861, at *1 n.1 (W.D.N.Y. Nov. 17, 2020) ("Upon entry of default, the court accepts as true the complaint's factual allegations, except those relating to damages, and draws all reasonable inferences in the moving party's favor.").

systems as the "Trinity System."  (Am. Compl. ¶ 13.)  Plaintiff markets its systems as the "Net"

System."  (*Id.* ¶¶ 4, 26.)

### i.   **Plaintiff's Net System**

Plaintiff alleges that Defendants "supplied a relatively unchanged Trinity System for use

at the U.S. Open" every year "from 1995 to 2018" (the "Old Trinity System").  (*Id.* ¶¶ 14–15,

28.)  In response to "certain changes in gameplay rules and a long-felt need in the tennis

market," Plaintiff's Director of Intellectual Property, Frederic Goldstein, invented "a novel let-

detection system" that is "more accurate and reliable" than the Old Trinity System and that

included features "which had never been possible in tennis, such as net tension regulation, an

electronic ball mark inspection sensor, a vibration feature as a signal to chair umpires to indicate

a let, and tennis's first integrated shot clock control feature."  (*Id.* ¶ 25; Goldstein Default J.

Decl. ¶ 1.)  Goldstein applied for U.S. Patent No. 10,272,307 (the "'307 Patent") and U.S. Patent

No. 10,583,341 (the "'341 Patent") covering this system, "and Group One, as the assignee, began

marketing these let detection systems."[2]  (Am. Compl. ¶ 25.)  In or around January of 2015, the

Association of Tennis Professionals (the "ATP") "chose to replace" the Old Trinity System then

in use with Plaintiff's Net System and entered into a five-year contract with Plaintiff to "provide

let-detection systems for its tour events."[3]  (*Id.* ¶ 26.)  During the first four years of the contract,

---

[2]  Plaintiff does not allege when Goldstein invented the patented system or when it began
marketing systems with a shot clock control feature.  Goldstein applied for the '307 Patent on
September 7, 2018, and applied for the '341 Patent on February 15, 2019.  ('307 Patent 2,
annexed to Am. Compl. as Ex. A, Docket Entry No. 39-1; '341 Patent 2, annexed to Am. Compl.
as Ex. B, Docket Entry No. 39-2.)

[3]  In his declaration in support of Plaintiff's default judgment motion, Goldstein indicates
that the "2015 version of the Group One Net System did not have many of the current features,
as it was completely overhauled in 2017, with a multitude of upgrades and extra functions, into
the version today," including "two additional handsets, . . . embedded battery with three[-]week

Plaintiff's Net System "gained additional recognition among key stakeholders in professional tennis," and Plaintiff "began receiving interest from other governing bodies to use the Net System," including from the United States Tennis Association (the "USTA") — "the national governing body for tennis in the United States that runs and hosts the U.S. Open."  (*Id.* ¶ 27.) The contract was renewed for another five-year term in 2019.  (*Id.*)

### ii.   Defendants' allegedly infringing Trinity System and false statements about Plaintiff's Net System

"The increased popularity of the Net System" also drew Defendants' attention, (*id.* ¶ 28), and, "in early 2019, under pressure" from Plaintiff's Net System "having entered the market," and to "avoid losing additional clients" to Plaintiff, including the USTA, Defendants "changed the Old Trinity System" to the new, allegedly infringing Trinity System, which includes "an integrated shot clock control [that] controls the [on-court] shot clock by pressing [a] button on a handset" (the "2019 Trinity System").  (*Id.* ¶¶ 29, 54.)  In addition, Defendants "began knowingly misrepresent[ing] the features and capabilities" of Plaintiff's Net System by preparing the "Trinity Specification" and transmitting it to Plaintiff's customers and potential customers, "including the USTA."  (*Id.* ¶¶ 31, 36.)  The Trinity Specification makes false statements about Plaintiff's Net System's battery life, charging system, setup process, quality, and functionality. (*Id.* ¶¶ 32–34.)  Defendants also "falsely stated that, unlike the [2019 Trinity System], [the Net System] is vulnerable to 'data manipulation,'" suggesting that the Net System "could be disabled during gameplay."  (*Id.* ¶ 33.)

The 2019 Trinity System was "made, used, imported, sold or offered for sale, leased or otherwise made the subject of a commercial contract for Defendant[s'] financial gain at the 2019

---

charge, improved menu functions, new silicon button panel, shot clock button, and more." (Goldstein Default J. Decl. ¶ 21d.)

U.S. Open," (*id.* ¶ 30), and, due to Defendants' misrepresentations, the USTA decided not to use Plaintiff's Net System at the 2020 U.S. Open and instead entered into a contract with Defendants to supply let-detection systems for the event, (*id.* ¶¶ 37–38). Defendants' misrepresentations also caused Plaintiff to "lose other prospective customers" and "business opportunities related to [its] other patented and patent-pending inventions in tennis," which "has caused serious and substantial financial and reputational harm to [Plaintiff's] business." (*Id.* ¶ 39.)

### iii.   Plaintiff's patents and Defendants' knowledge of infringement

On April 18, 2019, Plaintiff's counsel "sent correspondence to [Defendants] notifying [them] of the impending issuance of [the '307 Patent], providing notice that the [2019] Trinity System infringes the '307 patent, and requesting a response concerning [Defendants'] contemplated use of the [2019] Trinity System at the 2019 U.S. Open." (*Id.* ¶ 40.) Defendants did not respond to the letter. (*Id.*)

On April 30, 2019, the United States Patent and Trademark Office (the "USPTO") "issued the '307 [P]atent, titled 'Tennis Net Tension System Including Service Let Indication Feature,' for an invention directed to, *inter alia*, determining if a service let occurs via the detection and measurement of a force exerted by the net." (*Id.* ¶ 41.) The '307 Patent also "included the feature of the first integrated shot clock control in tennis, anticipating the new rule in tennis requiring an on court shot clock display." (*Id.*) All rights to the '307 Patent "have been assigned" to Plaintiff. (*Id.*)

In or around November of 2019, Plaintiff's counsel sent Defendants another letter stating that the use of the 2019 Trinity System at the "2020 Australian Open infringed an Australian patent whose parent patent is the '307 [P]atent," however Defendants "did not respond to this letter either." (*Id.* ¶ 42.) On November 26, 2019, Plaintiff's counsel "sent a letter to Tennis Australia's senior legal counsel informing it that the [2019 Trinity System] it intended to use at

the 2020 Australian Open infringed the Australian patent related to the '307 [P]atent." (*Id.* ¶ 43.)

"After receiving correspondence from Tennis Australia and an email from . . . Weigel — who

stated that his patent attorneys would [m]ake contact within days — [Plaintiff] filed a complaint

for patent infringement of the foreign patent related to the '307 [P]atent in Australia" (the

"Australia litigation"), which is pending before a federal court in Australia. (*Id.* ¶ 44 (citation

omitted).)

On February 26, 2020, Plaintiff's counsel sent correspondence to Defendants "notifying

[them] of the impending issuance of [the '341 Patent], another U.S. patent related to the '307

[P]atent, [and] asserting that the [2019] Trinity System would infringe this patent as well." (*Id.*

¶ 45.) On March 4, 2020, Defendants "responded via a German patent prosecution firm, who

stated that it represented [Defendants] and that it had no information about the issued claims of

the '341 [P]atent" and therefore was incapable of filing a "substantial response." (*Id.* ¶ 46

(quoting Emails dated Mar. 4, 2020, annexed to Am. Compl. as Ex. H, Docket Entry No. 39-8).)

That same day, Plaintiff's counsel provided the claims to Defendants' counsel, stated that the

patent would issue in six days, and noted "that the claims are 'readily accessible on the USPTO's

website.'" (*Id.* ¶ 47 (quoting Emails dated Mar. 4, 2020).)

On March 10, 2020, the USPTO issued the '341 Patent "for an invention directed to, *inter

alia*, a system for determining if a service let occurs via the detection and measurement of a force

exerted by the net." (*Id.* ¶ 49.) The '341 Patent "also included the feature of the first integrated

shot clock control in tennis." (*Id.*) All rights to the '341 Patent "have been assigned" to

Plaintiff. (*Id.*)

### iv.   Plaintiff's claims

Plaintiff commenced this action on May 15, 2020, and filed an Amended Complaint on

April 16, 2021, alleging direct, induced, and contributory infringement of the '307 and '341

8

Patents at the 2019 and 2020 U.S. Open in violation of the Patent Act, 35 U.S.C. §§ 271(a)–(c);

false advertising and use of false descriptions and false representations in violation of section

43(a) of the Lanham Act, 15 U.S.C. § 1125(a); tortious interference with prospective business

relations and unfair competition under the New York common law; deceptive trade practices and

false advertising in violation of GBL §§ 349(h) and 350(e)(3), respectively; and trade libel under

the New York common law.  (Compl. ¶¶ 41–139; *see also* Am. Compl. ¶¶ 51–155.)

### b.   Procedural history

#### i.   Plaintiff's first motion for a temporary restraining order and preliminary injunction and Defendants' *pro se* response

On July 6, 2020, before Plaintiff served Defendants with the Complaint, Plaintiff moved

*ex parte* for a temporary restraining order ("TRO"), an order authorizing alternate service, and an

order to show cause ("OTSC") for preliminary injunction ("PI"), alleging that, without a TRO,

the 2019 Trinity System would be used at the upcoming 2020 U.S. Open.[4]  (Pl.'s First TRO

Mot., Docket Entry No. 6; Pl.'s Mem. in Supp. of Pl.'s First TRO Mot. ("Pl.'s First TRO

Mem."), Docket Entry No. 6-1; Aff. of Service, Docket Entry No. 9.)  On July 8, 2020, following

a hearing, the Court granted Plaintiff a TRO, authorized alternate service, and scheduled a PI

hearing.  (Min. Entry dated July 8, 2020; OTSC, Docket Entry No. 8.)  The Court ordered that

"Defendants' answering papers shall be filed and served upon Plaintiff's counsel by email . . . by

July 16, 2020, and any reply papers shall be filed and served on Defendants by July 20, 2020."

(OTSC 2.)

On July 16, 2020, Defendants, proceeding *pro se*, emailed Plaintiff a response to the

OTSC consisting of a sworn declaration by Weigel with attachments, including unsworn

---

[4]  Plaintiff's TRO motion did not mention the '307 Patent but alleged that the use of the
2019 Trinity System would infringe the '341 Patent.  (*See* Pl.'s First TRO Mem. 2.)

statements by the Trinity System's inventor explaining that the Trinity System does not infringe Plaintiff's patents because, among other things, it does not include an integrated shot clock and it is not capable of measuring force, and that it cannot infringe the patents because its shot clock control functionality predates the patents, rendering them invalid ("Defendants' *Pro Se* OTSC Response").[5]  (*See generally* Defs.' *Pro Se* OTSC Resp., annexed to Pl.'s Reply in Supp. of Pl.'s First TRO Mot. as Ex. 1, Docket Entry No. 10-2.)

On July 22, 2020, the Court held a PI hearing.  (Min. Entry dated July 22, 2020.)  Weigel appeared *pro se*, and the Court explained that he could not "appear on behalf of [GTE] and that [GTE] must appear through an attorney."  (*Id.*)  The Court granted Defendants seven days to retain counsel and directed Weigel to "submit the documents previously emailed to [P]laintiff to the Court either through mail or by filing the documents with the Court through counsel."  (*Id.*)

Pursuant to the Court's order, Defendants retained the law firm Alston & Bird LLP, (Notice of Appearance, Docket Entry No. 11), and, on July 28, 2020, counsel filed a response to the OTSC, repeating Defendant's *pro se* arguments that the Trinity System does not infringe Plaintiff's patents because, while it possesses shot clock control functionality, it does "not include a shot clock" and uses technology that "has no capability to measure a force in the net," and that the Trinity System's shot clock control functionality predates that of Plaintiff's Net

---

[5]  Although Defendants served Plaintiff with their response via email, they did not file it on the docket.  As noted above, Defendants are located in Germany and were proceeding *pro se* in response to an *ex parte* TRO motion and OTSC, which they received simultaneously with the Complaint via email service in June of 2020, during the beginning of the COVID-19 pandemic.  In addition, as discussed below, the Court later determined that it lacked personal jurisdiction over Weigel.  On July 20, 2020, Plaintiff filed its reply, attaching Defendants' *Pro Se* OTSC Response as an exhibit.  (Pl.'s Reply in Supp. of Pl.'s First TRO Mot., Docket Entry No. 10; Defs.' *Pro Se* OTSC Resp., annexed to Pl.'s Reply in Supp. of Pl.'s First TRO Mot. as Ex. 1, Docket Entry No. 10-2.)

System.  (*See generally* Defs.' Counseled OTSC Resp., Docket Entry No. 12.)  Defendants also argued that the 2019 Trinity System would not be used at the 2020 U.S. Open.  (*Id.*)

At the July 29, 2020 PI hearing, Plaintiff moved to strike Defendants' response by counsel as untimely, arguing that although Defendants' *Pro Se* OTSC Response had been served on Plaintiff via email, it was "a jumble of documents including unsigned and unsworn statements" that are not evidence and that Defendants failed to file it on the docket, and therefore the response by counsel, which was the only response they had technically filed, was untimely. (*See* July 29, 2020 Tr. 3–4, 9.)  The Court declined to strike Defendants' counseled response and noted that, with regard to Plaintiff's substantive arguments, it would "need to hear from witnesses at an actual hearing to decide" Plaintiff's motion, as "[t]he papers have raised . . . issues in the Court's mind" as to, among other things, "whether or not there is even any infringement."  (*Id.* at 6–7.)  The Court rejected Plaintiff's arguments that it should disregard Defendants' *Pro Se* OTSC Response because Defendants, through counsel, "specifically in their papers state that they see no need to refile them because they are on the Court's docket," and the Court's understanding was that "in fact, they are relying on those papers."  (*Id.* at 9.)  The Court further adjourned the hearing until July 31, 2020, indicating it would hear testimony and receive evidence in connection with the alleged patent infringement at the next hearing.  (Min. Entry dated July 29, 2020.)  However, following the July 29, 2020 hearing, Weigel and non-party USTA filed declarations representing that the USTA would "not use any [allegedly infringing] functionality of any Trinity product" at the 2020 U.S. Open.  (Decl. of Sean Cary ¶¶ 5, 8–9, Docket Entry No. 15; Decl. of Ralf Weigel ¶¶ 4–5, Docket Entry No. 14.)  Based on these representations, Plaintiff withdrew its PI motion as moot.  (Pl.'s Letter dated July 30, 2020, Docket Entry No. 16.)

11

###### ii.    Defendants' motion to dismiss and Plaintiff's Amended Complaint

On September 23, 2020, Defendants filed a motion to dismiss the Complaint for lack of personal jurisdiction over Weigel and insufficient service of process on GTE. (Defs.' Mot. to Dismiss, Docket Entry No. 21.) On February 3, 2021, the Court granted Defendants' motion to dismiss the case against Weigel and denied the motion to dismiss the claims against GTE. (Mem. and Order 36, Docket Entry No. 25.) Following the Court's decision, Defendants terminated their representation, and, on February 23, 2021, Defendants' attorney moved to withdraw as counsel. (Decl. of Karl Geercken ¶ 3, annexed to Mot. to Withdraw as Attorney as Ex. 1, Docket Entry No. 29-1.) On February 25, 2021, Magistrate Judge Ramon E. Reyes, Jr.[6] granted the motion to withdraw, warning that "[n]ew counsel for GTE . . . must file a notice of appearance within thirty days, after which time GTE . . .will be deemed in default." (Order dated Feb. 25, 2021.) GTE failed to obtain new counsel, and the Clerk of Court entered default against GTE. (Clerk's Entry of Default, Docket Entry No. 37.)

On February 9, 2021, Judge Reyes granted Plaintiff leave to amend the Complaint and to again add Weigel as a Defendant. (Min. Entry dated Feb. 9, 2021.) On April 16, 2021, Plaintiff filed the Amended Complaint, naming Weigel as a Defendant and adding allegations that, despite their representations, Defendants and the USTA had used a Trinity System at the 2020 U.S. Open that Defendants had "modified . . . to locate the shot clock control button on a second handheld device (e.g., a button on a computer mouse)," and thus this system also infringed Plaintiff's patents. (Am. Compl. ¶¶ 30, 50.) Defendants failed to respond to the Amended Complaint, and, on June 30, 2021, the Clerk of Court entered default against them. (Clerk's Entry of Default, Docket Entry No. 46.) On July 9, 2021, Plaintiff moved for default judgment

---

[6]    The case was reassigned to Judge Cho on April 13, 2021. (Reassignment dated Apr. 13, 2021.)

against Defendants, (Pl.'s Mot. for Default J.), and, on July 10, 2021, the Court referred the

motion to Judge Cho for a report and recommendation, (Order Referring Mot. dated July 10,

2021).

### iii.   Plaintiff's second motion for a TRO and PI

On August 18, 2021, Plaintiff filed a second *ex parte* motion for a TRO and PI for the

upcoming 2021 U.S. Open, (Pl.'s Second TRO Mot., Docket Entry No. 51), repeating its new

allegations that although Defendants provided an older, non-infringing version of their system at

the 2020 U.S. Open, this system was combined with "a second handheld device having a

button . . . to control the shot clock" and, therefore, nevertheless infringed the '341 Patent,[7]

making a TRO and PI necessary to prevent Defendants from repeating "the same infringement

from 2020" at the 2021 U.S. Open, (Pl.'s Mem. in Supp. of Pl.'s Second TRO Mot. 4–5, Docket

Entry No. 53; Decl. of Frederic Goldstein in Supp. of Second TRO Mot. ("Goldstein Second

TRO Decl.") ¶ 13, Docket Entry No. 54.)

On August 23, 2021, the Court granted Plaintiff's TRO motion and scheduled a PI

hearing for September 9, 2021.[8]   (Mem. and Order, Docket Entry No. 55.)  On August 24, 2021,

---

[7]  Plaintiff's second TRO motion, like its first TRO motion, did not mention the '307
Patent.  (*See* Pl.'s Mem. in Supp. of Pl.'s Second TRO Mot. 2, Docket Entry No. 53.)

[8]  On August 25, 2021, two days after the Court granted Plaintiff's *ex parte* TRO motion
and one day after the U.S. Open began, Goldstein emailed the USTA "directly, Group One to
USTA (instead of the lawyers)," attaching the TRO and informing the USTA that he had "just
landed in New York with [twenty] units of the Group One Net System" and could "change" the
net systems for all courts in "literally an hour or two," noting that "[o]bviously, contractual
issues will need to be dealt with but ought not delay compliance with this Order by a federal
judge," and that "[w]hen all's said and done, this will represent an upgrade for the US Open."
(Email, annexed to Pl.'s Mot. to Enforce TRO as Ex. 1, Docket Entry No. 58-3.)  Goldstein
suggested "that we arrange that I come to the US Open site asap . . . and let's sit down and
arrange for a smooth transition."  (*Id.*)  When the USTA did not immediately respond, Goldstein
sent a follow-up email the next day, merely forwarding his initial email with high priority.
(Email, annexed to Pl.'s Mot. to Enforce TRO as Ex. 3, Docket Entry No. 58-5.)  Hours later,
Plaintiff's counsel sent the TRO to the USTA.  (Email, annexed to Pl.'s Mot. to Enforce TRO as

the U.S. Open began, and Plaintiff moved to enforce the TRO and restrain the USTA from using

Defendants' systems at the event, seeking seizure of Defendants' systems.  (Pl.'s Mot. to Enforce

TRO, Docket Entry No. 58.)  On August 31, 2021, the Court ordered the USTA to show cause

why the Court should not hold the USTA in contempt for failing to comply with the Court's

TRO.  (OTSC dated Aug. 31, 2021, Docket Entry No. 61.)  The USTA, represented by

Defendants' former counsel, responded to the Court's OTSC, arguing, among other things, that

the system in use at the 2021 U.S. Open did not and cannot infringe the '341 Patent because it

does not measure force and because its shot clock functionality predated the patent, repeating

Defendants' earlier arguments.  (*See generally* USTA's Resps. to Order to Show Cause, Docket

Entry Nos. 65, 70.)  In support of its argument that its shot clock functionality predated the

patent, the USTA provided a 2016 "article from USA Today . . . that describe[d] the

implementation of serve clock functionality by the USTA," as well as the 2017 and 2018 U.S.

Open Chair Umpire Guides, which "reflect the functionality of the let detection system in use at

the 2017 and 2018 U.S. Opens."  (Decl. of Jason Garner ("Garner Decl.") ¶¶ 5–12, annexed to

USTA's Resp. to OTSC dated Aug. 31, 2021, Docket Entry No. 65-2; Nick McCarvel, *U.S.*

*Open to Test Shot Clock, but Tennis Is Split on Issue*, USA Today (Sept. 2, 2016, 9:19 AM),

annexed to Garner Decl. as Ex. A, Docket Entry No. 65-3; 2017 Chair Umpire Guide, annexed to

Garner Decl. as Ex. B, Docket Entry No. 65-4; 2018 Chair Umpire Guide, annexed to Garner

Decl. as Ex. C, Docket Entry No. 64-5.)

---

Ex. 2, Docket Entry No. 58-4.)  The USTA responded later that day, noting Plaintiff's "mistaken
belief that a result of the TRO is that [Plaintiff's] let detection system is the only one available to
the USTA," and that it "[did] not intend to infringe" and would be employing "the same
functionality of the Trinity . . . systems that [it] first tested in 2016," which "predate[s]"
Plaintiff's patent and therefore "cannot infringe" it.  (Email, annexed to Pl.'s Mot. to Enforce
TRO as Ex. 4, Docket Entry No. 58-6.)

At the September 9, 2021 hearing, Plaintiff clarified its belief that the Old Trinity System does not infringe its patents "because those systems back then lacked the additional physical second button that allows for [a] controlled shot clock." (Sept. 9, 2021 Tr. 7.)  Plaintiff argued, however, that while the USTA acquired non-infringing "legacy" systems for the 2020 U.S. Open, it had added a "second physical control button," obtained from a third party, "that allows the chair umpire to actually control . . . when the shot clock starts," and "the use of that button" is what "infringes the patent." (*Id.*)  The USTA argued that "even with that second button," the system does not infringe because the shot clock control functionalities had been tested since 2016 and had been "on the chair umpire's tablets . . . since 2018," prior to the date Plaintiff filed for its first patent,[9] as "documented in the user guides" the USTA provided the Court.[10] (*Id.* at 8–9.)  Plaintiff argued in response that the USTA "has pointed to functionalities" effected through "buttons on the tablet," which "are difficult to press" and which "didn't truly control the

_____

[9]  The 2018 U.S. Open began on August 27, 2018, and concluded on September 9, 2018. Plaintiff filed for its first patent on September 7, 2018, two days before the event ended.  In Defendants' *Pro Se* OTSC Response, they argued that Plaintiff saw their shot clock control in use at the 2018 U.S. Open, copied it, and filed for the patent two days before the event ended in an attempt to patent their ideas and force them out of the market, which they had effectively monopolized long before Plaintiff arrived on the scene. (*See* Defs.' *Pro Se* OTSC Resp. ¶¶ 3, 9, 14.)  Defendants also argued that this lawsuit is the latest in a global campaign, including the Australia litigation, and that the cost of defending these suits is prohibitively higher than the revenue they make from supplying their systems for these tournaments. (*Id.* ¶ 24.)  The USTA similarly argued in response to the 2021 TRO that "[Plaintiff] consciously decided not to sue the USTA and then only sought a TRO just before the 2021 [U.S.] Open began in a transparent effort to disrupt the tournament and to obtain leverage to coerce the USTA into purchasing its products.  The USTA never had and has no intention to use [Plaintiff's] products." (USTA's Resp. to OTSC dated Aug. 31, 2021, at 2 n.1, Docket Entry No. 70.)

[10]  Subsequent to the Court's denial of Plaintiff's motion, Plaintiff stated that because the USTA "had not produced the recent . . . manual that shows what was in use right now," but rather had produced the 2017 and 2018 Chair Umpire Guides, "we challenge them to do so." (Sept. 9, 2021 Tr. 26.)  The Court reminded Plaintiff that the USTA is "not a party." (*Id.*)

shot clock," (*id.* at 11), explaining that "creating the functionality via the second physical button" on the handset "was a great improvement" because "the chair umpires needed this physical tacti[le] interaction with . . . a second physical button in order to . . . truly control the shot clock." (*Id.* at 10–11.)  The USTA, in turn, "direct[ed] the Court to the actual language of the claims," which "is agnostic [as] to whether the shot clock control buttons are on a handset or on a tablet," arguing that "the tablet version of what they claim is their invention is exactly what we used in 2018."[11]  (*Id.* at 11.)

The Court noted that  "the issue [was] whether or not USTA should be held in contempt" for violating the TRO, which requires that Plaintiff "prove noncompliance by clear and convincing evidence," and further noted that "if USTA is, in fact, using a . . . system that has been in place prior to the patent," then "the patent doesn't apply to them," and, "in fact, it makes the patent invalid."  (*Id.* at 12–13.)  Ultimately, the Court denied Plaintiff's contempt motion and deferred ruling on Plaintiff's PI request, noting that it would "issue a decision on Plaintiff's request" when it decided Plaintiff's default judgment motion.[12]  (Min. Entry dated Sept. 9, 2021.)

---

[11]  The September 9, 2021 hearing clarified that the USTA began testing a Trinity System in 2016 that was capable of controlling shot clock functionalities through buttons on a tablet, and that this system was first used at the 2018 U.S. Open.  In contrast, the 2019 Trinity System — the first system Plaintiff alleges infringed its patents — included a separate shot clock button on a handset, and the use of that button is what Plaintiff alleges infringes its patents.  Unlike the 2019 Trinity System, the Trinity System in use at the 2020 U.S. Open was a non-infringing legacy system that did not include a separate shot clock button on a handset, but Plaintiff alleges Defendants modified it "to locate the shot clock control button on a separate handheld device (i.e., a button on a computer mouse)" that still infringes.  (Am. Compl. ¶ 50.)

[12]  After the hearing, Plaintiff filed a motion to continue the hearing, in which it informed the Court that it had "served a Rule 45 subpoena" on the USTA "to obtain further evidence of the collusion between USTA and Defendants" to violate the TRO and "to request that the Court hold in abeyance any final ruling on the issue of USTA's violation until such further evidence has been submitted."  (Pl.'s Mot. to Continue Hearing 1, Docket Entry No. 72.)  The Court denied the motion as moot, noting that it had "already denied Plaintiff's motion to enforce the TRO

On February 28, 2022, Judge Cho issued the R&R on Plaintiff's default judgment

motion.[13]  (R&R.)  On March 14, 2022, Plaintiff filed objections to the R&R.  (Pl.'s Objs.)

---

against USTA for the reasons stated on the record at the September 9, 2021 hearing."  (Order
dated Sept. 15, 2021.)  The USTA then moved to quash Plaintiff's subpoenas.  (USTA's Mots. to
Quash, Docket Entry No. 75.)  In opposing the USTA's motions to quash, Plaintiff argued that
because Defendants "chose to default, no formal discovery occurred in this case, which gave
USTA free reign to selectively disclose and mischaracterize documents to argue that [it] was not
acting in concert with [Defendants] and that there was no infringement of the patent," and the
Court had denied its motion to enforce the TRO "based on the undeveloped record but
recognized the need for discovery and suggested that [Plaintiff] could seek such discovery from
USTA."  (Pl.'s Opp'n to USTA's Mots. to Quash 1 & n.1, Docket Entry No. 76 ("So, to the
extent you are seeking documents from [the USTA], you know how to proceed under the Civil
Procedure laws." (quoting Sept. 9, 2021 Tr. 26)).)  At a hearing on October 19, 2021, Judge Cho
granted the USTA's motions to quash, stating "because the [C]ourt has already ruled that the
contempt proceedings are over and have terminated, . . . the motion[s] to quash [are] going to be
granted . . . because, as [Plaintiff has] acknowledged, [it is] seeking information related to the
USTA and a motion for contempt against them."  (Oct. 19, 2021 Tr. 13, Docket Entry No. 80.)
Judge Cho noted that, to the extent Plaintiff was seeking information related to its pending
default judgment motion against Defendants, who had raised the same noninfringement and
invalidity arguments as the USTA, "the request for the subpoena and the information is untimely,
as well."  (*Id.* at 14.)  Plaintiff acknowledged the same.  (*Id.* at 7–8 (arguing that the USTA
"made arguments relating to non-infringement and invalidity of the patent" and "[t]hose defenses
are now in play . . . *at least in terms of our ability to challenge statements they made in the
contempt proceedings* regarding exactly what system they're using and what were the plans
going into acquiring that system" (emphasis added)).)

[13]   Plaintiff has since filed two motions for reconsideration of the Court's September 9,
2021 rulings with respect to the USTA, which are fully briefed and remain pending.  (Pl.'s Rule
60(b)(1) Recons. Mot., Docket Entry No. 81; Pl.'s Rule 60(b)(3) Recons. Mot., Docket Entry
No. 82.)  On March 7, 2022, one week prior to filing its objections to the R&R, Plaintiff also
filed a notice of appeal regarding these rulings, which was docketed in the Federal Circuit on
April 7, 2022.  (Notice of Appeal, Docket Entry No. 94; Docketing Notice, Docket Entry No.
96.)  Judge Cho noted in the R&R that Plaintiff's reconsideration motions "have no bearing" on
his "analysis of the instant default judgment," and therefore declined to address them.  (R&R 9
n.6.)  Plaintiff objects to this lack of consideration based on its view that the R&R improperly
relied on the USTA's non-infringement and validity arguments in reaching its conclusion that
default judgment against Defendants on Plaintiff's patent infringement claims is inappropriate at
this time.  (*See* Pl.'s Objs. 18.)  The Court agrees with Judge Cho that Plaintiff's motions for
reconsideration of its rulings with respect to the USTA are not relevant to Plaintiff's default
judgment motion against Defendants and declines to consider Plaintiff's reconsideration motions
in this decision.  Although the USTA raised non-infringement and validity defenses in the
contempt proceedings, the Court does not rely on the USTA's arguments in reaching its decision

c.   **The R&R**

i.   **Service of process**

Judge Cho recommends finding that Plaintiff properly served Defendants because Plaintiff served them with the Amended Complaint and Summons by emailing Weigel's wife, Renee Weigel, who is a registered agent of GTE, in accordance with the Court's order authorizing alternate service.  (R&R 7 n.4.)

ii.   **The default judgment**

Judge Cho considered the factors courts must consider to determine whether default judgment is proper — whether the default was willful, the defendant has raised a potential meritorious defense, and the Plaintiff would be prejudiced by the denial of its motion — and found that (1) Defendants' default was willful because they "failed to retain new counsel or otherwise comply" with the Court's order directing them "to appear through counsel within [thirty] days" and "have not opposed" Plaintiff's motion, (*id.* at 13); (2) based on "defenses submitted in this case," there are potential "meritorious defenses to [P]laintiff's patent infringement claims," as there remain "serious questions as to whether [D]efendants' product and functionality preceded [P]laintiff's patents," (*id.* at 14); and (3) although "ignoring the default could prejudice [P]laintiff[]," the USTA's submissions "demonstrate that the USTA is an interested party, may have evidence related to [P]laintiff's patent infringement allegations, and may be prejudiced by entry of default" against Defendants, and given "the existence of alternate means to pursue the patent infringement claim" (i.e., through a suit against the USTA) the "prejudice factor does not necessarily weigh in favor of default judgment," (*id.* at 15).

on Plaintiff's default judgment motion against Defendants but summarizes those proceedings for context.

###### iii.   Patent infringement claims

Judge Cho noted that Plaintiff's claims of direct, induced, and contributory patent infringement all require Plaintiff to demonstrate "that the [D]efendants *actually infringed* its patents." (*Id.* at 17.)  Because Defendants "submitted legal arguments to the [c]ourt" that "their product cannot infringe [P]laintiff's patent because the products and the introduction of stop-clock functionality *preceded* [P]laintiff's patents," and because "[a]dditional evidence in the record (submitted by [P]laintiff) [i.e., Defendants' *Pro Se* OTSC Response, which Plaintiff filed] supports [D]efendants' argument" and "[t]hese facts are not controverted," Judge Cho expressed "concern[] that [P]laintiff has not attempted to demonstrate that the allegedly infringing configuration of the Old Trinity System was not already in use *prior* to the issue of its patents," noting that "[i]f it were found at trial that [D]efendants' present Trinity System or the allegedly infringing configuration of its Old Trinity System pre-existed [P]laintiff's patents, this would be a complete defense." (*Id.* at 17–18.)  Judge Cho concluded that he could "not find [P]laintiff's patent infringement claims to be well pleaded because there are meritorious defenses to the claims," noting that Plaintiff "has acknowledged that the USTA may have relevant evidence and that [P]laintiff may be filing a related suit against the USTA that will address these concerns." (*Id.* at 18–19.)  Accordingly, Judge Cho recommended denying Plaintiff's motion with respect to its patent infringement claims without prejudice "because [P]laintiff has not established the facts necessary to demonstrate that [its] patents preceded [D]efendants' introduction of their let-detection system and the use of stop-clock control functionality." (*Id.* at 19.)

###### iv.   Lanham Act claims for false advertising and use of false descriptions and false representations

Judge Cho noted that Plaintiff's claims under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), "fall under the umbrella of a false advertising claim," and therefore "analyze[d] these

counts together as a false advertising claim."  (R&R 19–20 (citing *Res. Devs., Inc. v. Statue of Liberty-Ellis Island Found. Inc.*, 926 F.2d 134, 139 (2d Cir. 1991) (describing section 43(a)'s "two distinct causes of action" as "false designation of origin or source, known as 'product infringement,' and false description or representation, known as 'false advertising'")).)
Reviewing the Amended Complaint, Judge Cho noted that:

> The alleged false statements contained in the Trinity Specification included statements that the Net System (1) had a battery life of only a day; (2) needed a "line of sight" to function, that would prevent the umpire from paying attention to the match because the umpire would be "looking for a good signal all the time;" (3) needed a "charger system;" (4) would not work with a "net cam;" (5) required "big calibration on site" and "tools" for the set up; and (6) had an "Advanced Wind Setting" that only takes away the beep.  Plaintiff alleges that each of these statements is "demonstrably false" and a "material misrepresentation upon which customers or potential customers have, and will rely."  In support of the claim that potential customers are confused by this misinformation and rely on it, [P]laintiff notes that "on a conference call following a marketing presentation for the Net System with the USTA . . . the only question posed to [Plaintiff] concerned how long the Net System's battery lasted."  Plaintiff asserts that [D]efendants knew that the statements in the Trinity Specification were false, that [D]efendants submitted the Trinity Specification containing the known falsehoods to the USTA, that the USTA's decision not to use Group One's Net System was due to the known falsehoods in the Trinity Specification, and that the known falsehoods have caused and will continue to cause [P]laintiff financial and reputational harm.

(*Id.* at 22–23 (citations omitted).)  Because Defendants never responded to Plaintiff's Lanham Act claims, Judge Cho concluded that "Defendants' default establishes the truth" of these allegations and, in turn, Defendants' liability.  (*Id.* at 23.)  Therefore, he recommended granting Plaintiff's motion with respect to Plaintiff's Lanham Act claims.  (*Id.*)

### v.  Tortious interference with prospective business relations under the New York common law

Judge Cho noted that Plaintiff alleged it "had a prospective business relationship with the USTA, as it was being considered by the USTA to provide its Net System for use at the 2020

U.S. Open, and had several meetings with the USTA"; that Defendants "interfered with this prospective business relationship by disseminating known falsehoods about [Plaintiff's] product in [the] Trinity Specification document," which Defendants "used to market their own product to the USTA"; and that Defendants' actions "caused the USTA to contract with [them] for the 2020 U.S. Open, rather than [P]laintiff." (*Id.* at 25 (citing Am. Compl. ¶¶ 36–38, 121–125).) Because "Plaintiff's unrebutted allegations establish liability for tortious interference with business relations, and [D]efendants' default establishes the truth of these allegations," Judge Cho recommended that the Court grant Plaintiff's motion with respect to its tortious interference claim. (*Id.*)

### vi.   Unfair competition under the New York common law

Judge Cho found that by "establishing [D]efendants' liability under the Lanham Act," Plaintiff "established [D]efendants' liability on the unfair competition claim" because Plaintiff "adequately alleges, and the default establishes, that [D]efendants willfully and deliberately disseminated falsehoods about [P]laintiff's product to prospective clients," demonstrating Defendants' bad faith. (*Id.* at 26.) Therefore, Judge Cho recommended granting Plaintiff's motion with respect to its unfair competition claim under the New York common law. (*Id.*)

### vii.   Deceptive trade practices and false advertising under the GBL

Judge Cho found that Plaintiff "[p]lainly . . . has not adequately plead[ed] its deceptive trade practices and false advertising claims" because the Amended Complaint does not specify "a significant public harm caused by [D]efendants' actions other than the conclusory allegation that [D]efendants' actions have 'caused, and are likely to continue to cause injury to the public, including consumers in New York.'" (*Id.* at 27 (quoting Am. Compl. ¶¶ 135, 141).) In addition, Judge Cho noted that Plaintiff's claims "improperly include allegations about harm to [P]laintiff's business," indicating that the "gravamen of [the] Amended Complaint is clearly

21

harm to [P]laintiff's business as opposed to the public at large." (*Id.* (citing Am. Compl. ¶¶ 135–136, 141–142).)  Judge Cho therefore recommended denying Plaintiff's motion with respect to its GBL claims.

### viii.  Trade libel under the New York common law

Judge Cho found that Plaintiff failed to adequately plead the special damages element of a trade libel claim because Plaintiff "alleges only that as a result of [D]efendants' 'illicit acts and conduct, the USTA ultimately decided to award the . . . 2020 U.S. Open contract to [Defendants] over [Plaintiff]' and that '[Plaintiff] is thus entitled to exemplary damages in excess of $200,000.'" (*Id.* at 29 (quoting Am. Compl. ¶¶ 153–154).)  Judge Cho noted that the Amended Complaint "lacks all but the most conclusory allegation that the alleged statements caused it to lose a sale" because "[i]t pleads no facts that a sale was imminent or even foreseeable with the audience to those statements." (*Id.* (quoting *Soter Techs., LLC v. IP Video Corp.*, 523 F. Supp. 3d 389, 411 (S.D.N.Y. 2021)).)  He further noted that this conclusion is "supported by the fact that the only leasing proposal document proffered . . . by [P]laintiff is a proposal provided to the USTA in 2015." (*Id.* at 30 n.13.)  Because Plaintiff "appears to estimate what it would have charged the USTA for the U.S. Open in 2020 and 2021" and "did not submit a leasing proposal to the USTA for these events," Judge Cho found that Plaintiff "was only in preliminary discussions with the USTA," (*id.*), and recommended denying Plaintiff's motion with respect to its trade libel claim under the New York common law.

### ix.  Remedies

#### 1.  Abandoned forms of relief

Judge Cho noted that the Amended Complaint is "internally inconsistent with respect to the relief requested and is also inconsistent with respect to the relief requested" in Plaintiff's default judgment motion.  (*Id.* at 31.)  Because the "standard for assessing damages for a default

judgment" requires courts "to assess the 'damages *specified in the default judgment*,'" (*id.* (quoting *Joe Hand Promotions, Inc. v. Levin*, No. 18-CV-9389, 2019 WL 3050852, at *3 (S.D.N.Y. July 12, 2019))), and because "the other forms of relief are not addressed in [P]laintiff's motion," Judge Cho recommended that the Court "deem[] [P]laintiff to have abandoned" its requests for "statutory damages, an order that [D]efendants 'engage in a program of corrective advertising,' treble and punitive damages, attorney's fees and costs, and other relief authorized by state law," (*id.*).

### 2. Permanent injunction and damages for patent infringement claims

In view of his finding that Plaintiff's "patent infringement claims are not well pleaded at this time," Judge Cho recommended that the Court deny Plaintiff's requests for a permanent injunction and patent infringement damages "[u]ntil such time as [P]laintiff can provide the requisite proof to establish the necessary facts demonstrating that [its] patents preceded [D]efendants' products and stop-clock control functionality." (*Id.* at 32.)

### 3. Non-patent damages under the Lanham Act and New York common law

With respect to Plaintiff's request for $300,000 in lost profits, Judge Cho noted that Plaintiff "does not cite any case law in support of this entitlement" but "could claim entitlement to lost profits under either the Lanham Act or New York common law." (*Id.* at 32.) "Because the Lanham Act provides a more lenient standard in assessing such damages, and plaintiff can only recover once for damages suffered," Judge Cho "assesse[d] this request under the Lanham Act." (*Id.* at 33.) Judge Cho recommended denying Plaintiff's request for several reasons. First, although "Plaintiff calculates its lost profits by claiming that it lost sales in connection with the 2020 and 2021 Grand Slam events," Plaintiff "does not claim . . . to have *ever* successfully contracted with *any* of the Grand Slam events even though [P]laintiff claims to be 'entering its

23

fifth decade,' has partnered with [other governing bodies] since 2015, and does not allege any

false statements by [D]efendants before summer 2019." (*Id.* at 34.)  Because Plaintiff "provides

evidence that it submitted a leasing proposal to the USTA in 2015" but does "not provide any

explanation for why a sale was not consummated," Judge Cho "view[ed] this pre-violation

revenue baseline of zero sales as indicative that [D]efendants' statements did not cause [P]laintiff

to lose sales that it never had in the first place." (*Id.* at 34–35.)  Second, Judge Cho found that

even if he "could assume that [P]laintiff lost sales for the 2020 and 2021 Grand Slam events due

to [D]efendants' conduct, [P]laintiff does not provide sufficient information for this [c]ourt to

calculate lost profit[s]," as Plaintiff "does not have an exact figure for the fee it would charge"

due to its lack of contracting history with the USTA. (*Id.* at 35.)  Because Judge Cho "view[ed]

with skepticism the estimated price tag *in lieu* of an actual one" and Plaintiff also "does not

provide the cost it would incur in generating revenue," he concluded that he lacked "the ability to

calculate . . . lost profits, even speculatively" and recommended denying Plaintiff's request for

lost profits without prejudice to renew "after [P]laintiff provides additional evidence and

arguments to support its entitlement." (*Id.* at 35–36.)

> ### d. Plaintiff's objections to the R&R

Plaintiff objects to the R&R, arguing that (1) default judgment is proper because (a) the

degree of willfulness alone justifies it, (b) Judge Cho improperly relied on materials outside of

the pleadings and default judgment record in concluding that Defendants raised a meritorious

defense, and (c) prejudice to the USTA should not be considered; (2) Plaintiff has established

patent infringement and need not prove that the patent is valid; (3) the R&R did not mention

Defendants' worst false statements in recommending default judgment on Plaintiff's Lanham

Act claims; (4) default judgment is proper on Plaintiff's GBL claims because Plaintiff has shown

significant harm to the public; (5) default judgment is proper on Plaintiff's trade libel claim because Plaintiff has shown that a deal with the USTA was imminent; and (6) Judge Cho incorrectly (a) recommended denial of a permanent injunction and patent damages and (b) analyzed Plaintiff's nonpatent lost profits.  (*See generally* Pl.'s Objs.)

## II.  Discussion

### a.  Standards of review

#### i.  Report and recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).  When a party submits a timely objection to a report and recommendation, the district court reviews *de novo* the parts of the report and recommendation to which the party objected.  *Id.*; *see also United States v. Romano*, No. 15-992-CR, 2022 WL 402394, at *3 (2d Cir. Feb. 10. 2022) (citing *United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015)).  The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record.  *See S.J. v. N.Y.C. Dep't of Educ.*, No. 21-CV-240, 2022 WL 1409578, at *1 n.1 (2d Cir. May 4, 2022) (noting that district court applied correct legal standard in conducting *de novo* review of portions of magistrate's report to which specific objections were made and reviewing portions not objected to for clear error).  The clear error standard also applies when a party makes only conclusory or general objections. Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the [magistrate judge's] proposed findings and recommendations."); *see also Wu v. Good Samaritan Hosp. Med. Ctr.*, 815 F. App'x 575, 579 (2d Cir. 2020) ("Merely referring the court to previously filed papers or arguments does not

constitute an adequate objection under . . . Fed. R. Civ. P. 72(b)." (quoting *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002))); *Benitez v. Parmer*, 654 F. App'x 502, 503–04 (2d Cir. 2016) (holding that "general objection[s] [are] insufficient to obtain *de novo* review by [a] district court").

Whether clear error review or *de novo* review applies when an objecting party reiterates the arguments made to the magistrate judge is unclear.  While the Second Circuit has suggested that clear error review is appropriate if a party's objection to a magistrate judge's report and recommendation repeats arguments already presented to and considered by the magistrate judge, *see Mario*, 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed. R. Civ. P. 72(b) . . . ."), the Second Circuit has also stated that it is "skeptical" that the clear error standard would be appropriate when the objection is based on a previously asserted argument, *see Moss v. Colvin*, 845 F.3d 516, 520 n.2 (2d Cir. 2017) (per curiam) ("[W]e are skeptical that clear error review would be appropriate in this instance, where arguably 'the only way for [the plaintiff] to raise . . . arguments [on that point] [was] to reiterate them.'" (third and fourth alterations in original) (first quoting *Watson v. Geithner*, No. 11-CV-9527, 2013 WL 5441748, at *2 (S.D.N.Y. Sept. 27, 2013); and then citing 28 U.S.C. § 636(b)(1))); *see also Joseph v. Korn*, No. 19-CV-7147, 2021 WL 912163, at *1 (E.D.N.Y. Mar. 9, 2021) ("Although '[o]bjections that reiterate arguments considered and rejected by the magistrate are reviewed for clear error,' in an abundance of caution, this [c]ourt reviews [the] [p]laintiff's arguments *de novo*." (first quoting *Cruz v. Colvin*, No. 13-CV-1267, 2014 WL 5089580, at *1 (S.D.N.Y. Sept. 25, 2014); and then citing *Parker v. Comm'r of Soc. Sec'y Admin.*, No. 18-CV-3814, 2019 WL 4386050, at *6 (S.D.N.Y. Sept. 13, 2019))); *Harewood v. N.Y.C. Dep't of Educ.*, No. 18-CV-5487, 2021 WL 673476, at *6

(S.D.N.Y. Feb. 22, 2021) ("[W]hen the objections simply reiterate previous arguments or make only conclusory statements, the court should review such portions of the report only for clear error." (first citing *Dickerson v. Conway*, No. 08-CV-8024, 2013 WL 3199094, at *1 (S.D.N.Y. June 25, 2013); and then citing *Kirk v. Burge*, 646 F. Supp. 2d 534, 538 (S.D.N.Y. 2009))), *aff'd*, No. 21-584, 2022 WL 760739 (2d Cir. Mar. 14, 2022); *Castorina v. Saul*, No. 19-CV-991, 2020 WL 6781078, at *1 (S.D.N.Y. Nov. 18, 2020) ("While courts in this [d]istrict sometimes state that objections that 'simply reiterate [the] original arguments' merit only clear error review, this rule lacks support in either 28 U.S.C. § 636(b)(1)(C) or Rule 72(b)(2) of the Federal Rules of Civil Procedure. The Second Circuit has expressed similar skepticism." (alteration in original) (citations omitted)).

## ii. Default judgment

Pursuant to Rule 55 of the Federal Rules of Civil Procedure, there is "a 'two-step process' for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)). "[T]he court may, on plaintiffs' motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true." *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015). "A default . . . only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant." *Taizhou Zhongneng Imp. & Exp. Co. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013); *LG Funding, LLC v. Fla. Tilt, Inc.*, No. 15-CV-631, 2015 WL 4390453, at *2 (E.D.N.Y. July 15, 2015) ("To determine whether the default judgment should issue, the [c]ourt examines whether 'the factual allegations, accepted as true,

27

provide a proper basis for liability and relief.'" (quoting *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010))).  However, because there is a strong "'preference for resolving disputes on the merits,' and because 'a default judgment is the most severe sanction which the court may apply,' . . . a district court's discretion in [granting default judgment is] 'circumscribed,'" *Mickalis Pawn Shop, LLC*, 645 F.3d at 129 (first quoting *Green*, 420 F.3d at 104; then quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993); and then citing *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 168 (2d Cir. 2004)), and "all doubts must be resolved in favor of the [defaulting] party," *Green*, 420 F.3d at 104.  "Further, concerns regarding the protection of a litigant's rights are heightened when the party held in default appears *pro se*. . . . Hence, as a general rule a district court should grant a default judgment sparingly . . . when the defaulting party is appearing *pro se*." *Enron Oil Corp.*, 10 F.3d at 96.  "The entry of a default, while establishing liability, 'is not an admission of damages.'" *Mickalis Pawn Shop, LLC*, 645 F.3d at 128 (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 83 n.6 (2d Cir. 2009)).  "There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (first citing Fed. R. Civ. P. 55(b)(2); and then citing *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)).

> **b.   Unopposed portions of the R&R**

No party has objected to Judge Cho's recommendations that the Court (1) find that Plaintiff properly served Defendants; (2) find Defendants' default to be willful, (3) grant default judgment with respect to Plaintiff's tortious interference with prospective business relations claim and unfair competition claim, and (4) deem as abandoned Plaintiff's requests for relief that

are not included in Plaintiff's default judgment motion.  The Court has reviewed the unopposed

portions of the R&R and, finding no clear error, adopts the recommendations pursuant to 28

U.S.C. § 636(b)(1).

### c.   Default judgment

Plaintiff objects to Judge Cho's recommendation that the Court find default judgment

inappropriate on Plaintiff's patent infringement claims, arguing that the degree of Defendants'

willfulness in defaulting justifies the entry of default judgment, Defendants did not present

evidence of a meritorious defense, and Judge Cho improperly considered prejudice to the USTA.

The decision to grant a motion for default judgment is left to the sound discretion of the

district court.  *See Finkel*, 577 F.3d at 87 ("In permitting, but not requiring, a district court to

conduct a hearing before ruling on a default judgment, Rule 55(b) commits this decision to the

sound discretion of the district court."); *Palmieri v. Town of Babylon*, 277 F. App'x 72, 74 (2d

Cir. 2008).  In determining whether to grant a default judgment, the court looks to the same

factors that apply to a motion to set aside a default judgment for good cause, namely: "(1) the

willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-

defaulting party."  *See Bricklayers*, 779 F.3d at 186 (quoting *Guggenheim Cap., LLC v.

Birnbaum*, 722 F.3d 444, 455 (2d Cir. 2013)); *Guggenheim Cap., LLC*, 722 F.3d at 455 (same);

*see also Sik Gaek, Inc. v. Yogi's II, Inc.*, 682 F. App'x 52, 55 (2d Cir. 2017) (same).  "Other

relevant equitable factors may also be considered, for instance, whether the failure to follow a

rule of procedure was a mistake made in good faith and whether the entry of default would bring

about a harsh or unfair result."  *Keebler v. Rath*, 405 F. App'x 517, 519 (2d Cir. 2010) (quoting

*Enron Oil Corp.*, 10 F.3d at 96).

i. **Willfulness**

Plaintiff maintains that Judge Cho "correctly recommends that the Court find Defendants' default to be willful," but objects to Judge Cho's (1) "omission of additional facts that demonstrate that the degree of willfulness justifies entry of default judgment regardless of" the other factors, (Pl.'s Objs. 6); and (2) discussion of willfulness "to the extent that it states that '[D]efendants provided information in response to the Complaint'"[14] rather than to the OTSC why a TRO/PI should not issue, (*id.* at 7 (quoting R&R 13)).

A default is willful if it is "'more than merely negligent or careless,' but is instead 'egregious and . . . not satisfactorily explained.'" *Bricklayers*, 779 F.3d at 186 (quoting *S.E.C v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998)); *see also Jaramillo v. Vega*, 675 F. App'x 76, 76 (2d Cir. 2017) (same). "Although more than mere negligence is required, 'the degree of negligence in precipitating the default is a relevant factor to be considered.'" *Jaramillo*, 675 F. App'x at 76–77 (quoting *Green*, 420 F.3d at 108). A default may be "satisfactorily explained" when it was caused by "a mistake made in good faith." *Swarna v. Al-Awadi*, 622 F.3d 123, 142 (2d Cir. 2010) (quoting *Enron Oil Corp.*, 10 F.3d at 96); *see also Johnson v. N.Y.U.*, 324 F.R.D. 65, 70 (S.D.N.Y. 2018) ("[A] defendant's inadvertent mistake may be excusable." (quoting *Vedder Price P.C. v. US Cap. Partners, LLC*, No. 16-CV-6787, 2017 WL 4180021, at *3 (S.D.N.Y. Sept. 20, 2017))), *aff'd*, 800 F. App'x 18 (2d Cir. 2020). In contrast, where a defendant provides no justification for the failure to respond or "deliberately fail[s]" to respond to the complaint, the defendant's default may be considered egregious and not satisfactorily explained. *Green*, 420 F.3d at 109 (finding default willful where the defendants "offered no explanation for their

---

[14] The Court addresses below Plaintiff's objection to Judge Cho's statement that "[D]efendants provided information 'in response to the Complaint.'" (Pl.'s Objs. 7 (quoting R&R 13).)

30

counsel's failure to appear or seek an extension of time to respond to the complaint" nor "any justification for their failure to take action after receiving notice that the clerk had entered a default against them"); *Johnson*, 324 F.R.D. at 70 (finding default egregious and not satisfactorily explained where the defendants "failed, for untenable reasons, after defendants had 'purposely evaded service for months,' to answer the complaint" (quoting *McNulty*, 137 F.3d at 739)).

Defendants' default was willful based on Defendants' failure to obtain new counsel per Judge Cho's order and failures to respond to the Amended Complaint and default judgment motion. *See, e.g.*, *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001) (upholding default judgment where individual and corporate defendants did not obtain counsel in time frame ordered by court); *Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.*, 782 F.2d 329, 336 (2d Cir. 1986) (same); *Trs. of Bldg. Trades Educ. Benefits Fund v. Romero Elec. LLC*, No. 19-CV-3515, 2021 WL 3604811, at *4 (E.D.N.Y. July 19, 2021) (same), *report and recommendation adopted*, 2021 WL 3603613 (E.D.N.Y. Aug. 13, 2021).

Although Defendants' conduct was willful, the degree of willfulness does not justify entry of default judgment regardless of the other factors the Court must consider. Plaintiff selectively quotes *American Alliance Insurance Co. v. Eagle Insurance Co.*, 92 F.3d 57, 61 (2d Cir. 1996) in support of its argument that "[d]efault judgment is an appropriate sanction for 'defaults that arise from egregious or deliberate conduct.'" (Pl.'s Objs. 6 (quoting *Am. All. Ins. Co.*, 92 F.3d at 61).) Plaintiff also cites *1st Bridge LLC v. 682 Jam. Ave., LLC*, No. 08-CV-3401, 2009 WL 301941 (E.D.N.Y. Feb. 6, 2009). (*Id.*) However, in neither case did the court find default judgment appropriate based solely on willfulness. In *American Alliance Insurance Co.*, the Second Circuit noted that it has "refused to vacate judgment where the moving party had

31

apparently made a strategic decision to default." *Am. All. Ins. Co.*, 92 F.3d at 60.  As another

court has explained, "[s]uch cases typically involve application of the more onerous Rule 60(b)

standard,[15] and more egregious willfulness by the defaulting party."  *Saunders v. Morton*, 269

F.R.D. 387, 402 (D. Vt. Aug. 18, 2010) (citing *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504,

507 (2d Cir. 1991)).  *Compare Action S.A.*, 951 F.2d at 507 (denying motion to vacate default

judgment where the defendant waited eight years to seek relief); *with Saunders*, 269 F.R.D. at

402 ("Because [the *pro se* defendant] is held to the lesser Rule 55(c) standard, and because he

delayed for the comparatively short — though still inexcusable — duration of nine months, his

willfulness counts against granting his [m]otion [to vacate default judgment] but is not sufficient

to defeat it entirely.").  Although a court may refuse to vacate a default judgment based solely on

willfulness, Plaintiff has not cited, and the Court has not found, any cases in which a court

granted default judgment based solely on willfulness.  Accordingly, the Court declines to find

default judgment appropriate based solely on willfulness.

---

[15] Courts consider willfulness, the existence of meritorious defenses, and prejudice not only when determining whether to grant default judgment, *see, e.g.*, *Maldonado v. Landzign Corp.*, No. 15-CV-3054, 2016 WL 4186815, at *2, *4 (E.D.N.Y. July 14, 2016) (collecting cases), *report and recommendation adopted*, 2016 WL 4186982 (E.D.N.Y. Aug. 8, 2016), but also when considering whether good cause exists to set aside an entry of default pursuant to Rule 55(c) and whether to vacate a default judgment pursuant to Rule 60(b), *see Peterson v. Syracuse Police Dep't*, 467 F. App'x 31, 33 (2d Cir. 2012) (citing *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)).  "[C]ourts apply the factors more rigorously in the case of [vacating] a default judgment [than in the case of vacating an entry of default] because the concepts of finality and litigation repose are more deeply implicated in the latter action."  *Enron Oil Corp.*, 10 F.3d at 96 (citation omitted); *see also Peterson*, 467 F. App'x at 33 (noting that "[t]he same factors are applied in the context of a Rule 60(b) motion to set aside a default judgment, although they are applied more rigorously," and describing Rule 60(b) standard as "stricter" than Rule 55(c) standard); *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981) (per curiam) (noting that Rule 55(c) standard is "less rigorous" than Rule 60(b) standard).  However, it is unclear whether the factors should also be applied more rigorously in the context of granting a default judgment.

###### ii.    Meritorious defense

Plaintiff objects to Judge Cho's finding that there are potential meritorious defenses to

Plaintiff's patent infringement claims on four grounds: (1) "there can be no 'meritorious defense'

of patent invalidity because Defendants did not plead such a defense," (Pl.'s Objs. 9–10); (2) he

improperly relied on "materials outside of the pleadings and default judgment record," (*see id.* at

10–15); (3) he "incorrectly concludes that Defendants (or some hypothetical litigant) might have

had a meritorious defense," (*id.* at 15–16); and (4) he "improperly shifts the burden" to Plaintiff

to prove validity, (*id.* at 16–19).

"The existence of a meritorious defense is a key factor" in the default judgment analysis.

*Green*, 420 F.3d at 109.  A defaulting defendant bears the "burden of offering evidence sufficient

to establish a complete defense." *Bricklayers*, 779 F.3d at 187 (citing *State St. Bank & Tr. Co.*,

374 F.3d at 167).  "[T]he defaulting party need not establish his defense conclusively, but he

must present credible evidence of facts that would constitute a complete defense." *Beyonics Int'l*

*PTE Ltd. v. Smith*, 833 F. App'x 492, 493 (2d Cir. 2020) (citing *Enron Oil Corp.*, 10 F.3d at 98);

*Sik Gaek, Inc.*, 682 F. App'x at 55 (stating that, in order to make a sufficient showing of a

meritorious defense, a "defendant need not establish his defense conclusively, but he must

present evidence of facts that, if proven at trial, would constitute a complete defense" (quoting

*Green*, 420 F.3d at 109)); *see also Gardner v. Lefkowitz*, 737 F. App'x 597, 598 (2d Cir. 2018)

("A defense is meritorious if it is good at law so as to give the factfinder some determination to

make." (quoting *Am. All. Ins. Co.*, 92 F.3d at 61)); *State St. Bank & Tr. Co.*, 374 F.3d at 167

("Whether a defense is meritorious 'is measured not by whether there is a likelihood that it will

carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete

defense.'" (quoting *Enron Oil Corp.*, 10 F.3d at 98)).  However, a defendant "must present more

than conclusory denials when attempting to show the existence of a meritorious defense."
*Bricklayers*, 779 F.3d at 187 (quoting *Green*, 420 F.3d at 110).

Where a defendant has not filed a responsive pleading or otherwise responded to the
operative complaint, and has not responded to a default judgment motion, courts are generally
unable to determine whether a meritorious defense exists.  (Pl.'s Objs. 9–10); *see, e.g.*, *Bautista
v. ABC Corp.*, No. 19-CV-3963, 2021 WL 1225872, at *2 (S.D.N.Y. Apr. 1, 2021) (stating that
"where a defendant fails to answer the complaint, courts are unable to determine whether the
defendant has a meritorious defense" and collecting cases); *Dollar Tree Stores, Inc. v. Serraty*,
No. 16-CV-6818, 2018 WL 1180165, at *6 (E.D.N.Y. Feb. 14, 2018) ("As the [d]efendant has
not answered the complaint, the [c]ourt cannot make a determination as to whether [the]
[d]efendant has a meritorious defense.  While he has interposed a motion, [he] has failed to
indicate that he has any defense on the merits to the claims herein." (citation omitted)), *report
and recommendation adopted*, 2018 WL 1175159 (E.D.N.Y. Mar. 6, 2018).

Although Defendants raised noninfringement and prior art defenses at the outset of this
case in their *Pro Se* OTSC Response, in their counseled OTSC response, and in oral argument at
the initial PI hearing, and although the USTA raised similar arguments in connection with the
contempt proceedings, (*see, e.g.*, Defendants' *Pro Se* OTSC Response 15–27; Defs.' Counseled
OTSC Response 6, 9; July 29, 2020 Tr. 11–12; Sept. 9, 2021 Tr. 7–12), these materials are not
part of the default judgment record,[16] (Pl.'s Objs. 10–12), and they consist of unsworn statements

---

[16]  Plaintiff argues that the Court may not consider matters outside the pleadings, the
default judgment motion, supporting affidavits, and evidence of which the Court may take
judicial notice on a default judgment motion.  (Pl.'s Objs. 10–12.)  The Second Circuit has
occasionally considered materials outside the default judgment record in determining whether a
meritorious defense exists.  *See Enron Oil Corp.*, 10 F.3d at 97–98 (considering "proof set forth
in [a *pro se* defendant's] original motion to dismiss," along with subsequent affidavits and

and arguments, which are not evidence,[17] (*id.* at 12, 14); *Peterson v. Syracuse Police Dep't*, 467

F. App'x 31, 34 (2d Cir. 2012) (finding that district court did not "improperly conclude that the

_____

deposition testimony, where motion was "responsive to the second amended complaint");
*Traguth v. Zuck*, 710 F.2d 90, 92, 94 & n.2 (2d Cir. 1983) (finding, based on *pro se* defendant's
letter to the district judge that "explained her view of the dispute" and requested an extension to
answer the complaint, that "[i]t appears that [the defendant] presented meritorious defenses").
However, these cases are distinguishable.  Unlike the defendants in *Enron* and *Traguth*,
Defendants' default was willful, and they have not responded in any way to the Amended
Complaint or default judgment motion.  In addition, the cases Plaintiff cites in support all
involved situations where courts declined to consider extrinsic evidence in determining whether
the plaintiff's allegations established liability, rather than the existence of a meritorious defense.
*See J & J Sports Prods., Inc. v. Abdelraouf*, No. 18-CV-2547, 2019 WL 457719, at *4, *11
(E.D.N.Y. Feb. 5, 2019) ("[The] [p]laintiff's assertion that a court may consider documents
outside of the pleadings when evaluating *a defendant's liability* on a motion for default judgment
is plainly contradicted by black-letter law." (emphasis added)); *Johannes Baumgartner
Wirtschafts-Und Vermogensberatung GmbH v. Salzman*, 969 F. Supp. 2d 278, 287 (E.D.N.Y.
2013) ("[A] district court may not enter a default judgment unless *the plaintiff's complaint* states
a valid facial claim for relief." (quoting *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d
114, 137 (2d Cir. 2011))).

[17]   Although some courts in this Circuit have considered unsworn materials in
determining whether a meritorious defense exists, these cases generally involve statements in
materials submitted in response to the default judgment motion or in connection with a motion to
set aside a default judgment.  *See, e.g.*, *United States v. Maye*, No. 11-CV-6334, 2014 U.S. Dist.
LEXIS 49361, at *2, *5 (W.D.N.Y. Mar. 4, 2014) (considering *pro se* defendant's "one-
paragraph unsworn response" to default judgment motion, in which the defendant "vaguely
contends that he has a defense" but "has not explained why that is"); *Seifts v. Consumer Health
Sols. LLC*, No. 05-CV-9355, 2013 U.S. Dist. LEXIS 189474, at *13–14 (S.D.N.Y. Aug. 5, 2013)
(noting that the *pro se* defendant's "unsworn letters" do "not constitute evidence" but
nevertheless concluding that the letters "fail to demonstrate . . . a meritorious defense" because
they "include only conclusory denials of liability"), *report and recommendation adopted*, 2015
U.S. Dist. LEXIS 29896 (S.D.N.Y. Mar. 10, 2015); *Saleh v. Francesco*, No. 11-CV-438, 2012
WL 1071261, at *2 (S.D.N.Y. Mar. 29, 2012) (noting that, in granting default judgment, the
court had previously held an "ambiguous, unsworn assertion" in the *pro se* defendant's
affirmation to be "a conclusory denial of the sort that is inadequate to . . . vacate entry of
default"), *aff'd sub nom. Saleh v. Qderopateo LLC*, 537 F. App'x 5 (2d Cir. 2013); *Goodrich v.
WFS Fin., Inc.*, No. 06-CV-1435, 2008 WL 1805819, at *3 (N.D.N.Y. Apr. 18, 2008) (finding,
in light of the defendant's "*pro se* status, the presumption in favor of a trial on the merits, the fact
that this case is likely to turn on factual disputes," and the defendant's "contrary version of
events" in unsworn letter "that default judgment based on the lack of a meritorious defense
would be unduly harsh"); *Lowey v. Dannenberg Cohen PC v. Dugan*, 249 F.R.D. 67, 69–70
(S.D.N.Y. Mar. 28, 2008) (denying motion to vacate default judgment where the defendants'

defendants had not established a meritorious defense" by overlooking a fact in a memorandum of law "because unsworn statements in a memorandum of law are not evidence" (citing *Kulhawik v. Holder*, 571 F.3d 296, 298 (2d Cir. 2009))); *Feel Better Kids, Inc. v. Kids in Need USA, Inc.*, No. 06-CV-23, 2012 WL 4483000, at *6 (E.D.N.Y. Aug. 28, 2012) (finding that defense counsel's assertions in response to order to show cause "do not constitute 'evidence of facts' for purposes of a default judgment" (citing *McNulty*, 137 F.3d at 740)).   As Plaintiff also argues, Judge Cho's reliance on these materials and recommendation that the Court deny Plaintiff default judgment on its patent infringement claims because Plaintiff has not "established the facts necessary to demonstrate that [its] patents preceded [D]efendants' introduction of their let-detection system and the use of stop-clock control functionality," (R&R 19), improperly shifts the burden to Plaintiff[18] to prove the validity of its presumptively valid patents where Defendants willfully defaulted rather than following the proper procedures for raising this defense.[19]   (*See* Pl.'s Objs. 16–19); *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 645 (2015) (noting "various proper ways to obtain a ruling" that a patent is invalid, including filing a declaratory judgment action,

---

"unsworn excuse" for delay in moving to vacate, contained in their memorandum in support, was "flimsy" and the defendants "offered no factual allegations, affidavits, or other evidence to support their assertion").

[18]   Plaintiff argues that patent challengers must "prove invalidity by clear and convincing evidence" and cannot avoid this burden simply by asserting the prior art defense.  (Pl.'s Objs. 15–16 (quoting *Tate Access Floors v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1367 (Fed. Cir. 2002)).)  Plaintiff also objects to Judge Cho's "reliance on the hypothetical 'if it were found at trial'" standard.  (*Id.* at 18 (quoting R&R 18).)  These objections are meritless.  As noted above, in determining whether a potential meritorious defense exists, a defendant need only set forth "evidence of facts that, if proven at trial, would constitute a complete defense." *Green*, 420 F.3d at 109 (quoting *McNulty*, 137 F.3d at 740).

[19]   The Court notes that Defendants may still move to set aside the default judgment under Rule 55(c), which provides that a court "may set aside a final default judgment under Rule 60(b)."  Fed. R. Civ. P. 55(c).

seeking *inter partes* review at the Patent Trial and Appeal Board, and seeking *ex parte* reexamination of the patent by the USPTO, and raising the affirmative defense of invalidity). Accordingly, the Court declines to rely on these materials and finds that Defendants have not presented evidence of facts that, if proven, would constitute a complete defense.[20] Therefore, default judgment is appropriate on Plaintiff's patent infringement claims.[21]

### iii.  Prejudice

Although Plaintiff believes Judge Cho "correctly acknowledges that [Plaintiff] will suffer prejudice" because "there is no other avenue for [Plaintiff] to obtain relief," Plaintiff objects to Judge Cho's (1) consideration of non-party USTA's interests; (2) suggestion that USTA has raised the issue of prejudice; (3) speculation as to Plaintiff's "intentions to file an action against USTA" and "assumption" that such an action would be a viable "alternate means to pursue the patent infringement claims"; and (4) "recommendation that the prejudice factor does not weigh in [Plaintiff's] favor."  (*See* Pl.'s Objs. 7–8.)

In determining whether to enter or vacate an entry of default, a court must consider "whether and to what extent, [entering or] vacating the default judgment will prejudice the non-

---

[20]  The Court declines to address Plaintiff's additional objections.  (*See generally* Pl.'s Objs. 9–10 (arguing that Defendants waived their defenses by failing to plead them); *id.* at 10–15 (objecting to Judge Cho's "efforts to argue a defense on behalf of [D]efendants" and to his reliance on Defendants' *Pro Se* OTSC Response because it was not provided in response to the Complaint; arguing that these materials should not be construed as a response to the Complaint because Defendants did not file them despite a court order to do so, and the fact that Plaintiff filed them does not make them uncontroverted material in the case file that negates the well-pleaded allegations in the Amended Complaint; objecting to Judge Cho's reliance on the USTA's arguments in connection with the contempt proceedings and arguing that the USTA's arguments are not evidence, are not part of the default judgment record, were impermissible in the context of a contempt proceeding, and were demonstrated to be meritless); *id.* at 16–19 (arguing that Plaintiff did not have a full and fair opportunity to argue an affirmative case of validity and repeating other arguments).

[21]  Defendants have not raised any defenses with respect to Plaintiff's other claims.

defaulting party." *Green*, 420 F.3d at 110. "Some delay is inevitable when a motion to vacate a default judgment is granted; thus, 'delay alone is not a sufficient basis for establishing prejudice.'" *Id.* (quoting *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983)). Accordingly, in determining whether a plaintiff has suffered prejudice, courts consider "the effect of the delay caused by the defendant's default, such as thwarting plaintiff's recovery or remedy resulting in the loss of evidence, creating increased difficulties of discovery, or providing greater opportunity for fraud and collusion." *Swarna*, 622 F.3d at 142 (alterations omitted); *see also Green*, 420 F.3d at 110 (same). "To meet this standard, 'the plaintiff must demonstrate that any prejudice resulting from the defendant's default cannot be rectified in the [c]ourt in another manner were the default to be [not entered or] vacated." *Weingeist v. Tropix Media & Ent.*, No. 20-CV-275, 2022 WL 970589, at *11 (S.D.N.Y. Mar. 30, 2022) (quoting *Murray Eng'g, P.C. v. Windermere Props. LLC*, No. 12-CV-52, 2013 WL 1809637, at *5 (S.D.N.Y. Apr. 30, 2013)).

Plaintiff will suffer prejudice if its motion is denied because Plaintiff will be unable to recover against Defendants for the claims adequately set forth in its Amended Complaint. *See, e.g.*, *Trs. of Bldg. Trades Educ. Benefit Fund v. Romero Elec. LLC*, No. 19-CV-3515, 2021 WL 3604811, at *4 (E.D.N.Y. July 19, 2021) ("[I]n light of the defaulting [d]efendants' failure to obtain new counsel and [the] [p]laintiffs' interest in prosecuting their case, ignoring the default would prejudice [the] [p]laintiffs, 'as there are no additional steps available to secure relief in this [c]ourt.'" (quoting *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008))), *report and recommendation adopted*, 2021 WL 3603613 (E.D.N.Y. Aug. 13, 2021). This factor therefore weighs in Plaintiff's favor.[22]

---

[22] The Court notes that although Plaintiff could choose to separately pursue patent infringement claims against the USTA, this alternative does not provide a basis for denying

38

Accordingly, Plaintiff is entitled to default judgment on all claims for which the well-pleaded allegations in the Amended Complaint establish Defendants' liability.  The Court considers the claims below.

> **d.   Patent infringement claims**

Plaintiff brings claims of direct, induced, and contributory infringement of the '307 and '341 Patents based on the Trinity Systems in use at the 2019 and 2020 U.S. Opens.  (Am. Compl. ¶¶ 51–106.)

> **i.   Plaintiff's objections**

Plaintiff objects to Judge Cho's statements that Plaintiff's patent infringement claims all require Plaintiff to demonstrate that Defendants "*actually infringed*" its patents, to the extent it suggests that Plaintiff (1) may not rely on its well-pleaded allegations and Defendants' default to demonstrate infringement, and (2) must prove that Defendants directly infringed.  (Pl.'s Objs. 19.)  In support, Plaintiff argues that, to demonstrate contributory and induced infringement, it "need only allege that a third party directly infringed and that Defendants contributed to or induced that infringement."  (*Id.*)  In addition, Plaintiff objects to Judge Cho's conclusion that "the Court cannot find [P]laintiff's patent infringement claims to be well pleaded because there are meritorious defenses to the claims"; to his analysis "that negate[d] the statutory presumption of validity and shift [sic] the burden onto [P]laintiff to prove validity"; and to his citation to *J & J Sports Products, Inc. v. Gomez*, No. 18-CV-5119, 2019 WL 4744229 (E.D.N.Y. Sept. 29, 2019), as support for his recommendation that Plaintiff "must establish that the patent is valid in order to obtain default judgment."  (*Id.*)

---

Plaintiff default judgment against Defendants, as a suit against the USTA would not allow Plaintiff to recover for infringement committed by Defendants.

Although induced and contributory infringement both require underlying direct infringement,[23] whether a meritorious defense may exist to these claims is an issue separate from whether Plaintiff's well-pleaded allegations establish liability for these claims.  *See, e.g.*, *Bricklayers*, 779 F.3d at 187–89 (considering willfulness, existence of a meritorious defense, and prejudice in deciding whether to set aside an entry of default for good cause and then separately considering whether allegations, taken as true, established liability entitling the plaintiff to entry of a default judgment because "[a] court's decision to enter a default . . . does not by definition entitle plaintiffs to an entry of default judgment"); *Mattel, Inc. v. Store*, No. 21-CV-1507, 2022 WL 525698, at *6 (S.D.N.Y. Jan. 31, 2022) ("Because all three factors have been satisfied, entry of default judgment is warranted . . . [and] the question becomes whether [the] [p]laintiff's allegations, accepted as true, establish liability for their claims." (quoting *J & J Sports Prods., Inc. v. 1400 Forest Ave. Rest. Corp.*, No. 13-CV-4299, 2014 WL 4467774, at *5 (E.D.N.Y. Sept. 9, 2014))); *Maldonado v. Landzign Corp.*, No. 15-CV-3054, 2016 WL 4186815, at *2, *4 (E.D.N.Y. July 14, 2016) (noting that "courts within this Circuit have held that the same factors [i.e., willfulness, meritorious defense, and prejudice] are germane in determining whether to grant a default judgment" and separately considering whether allegations established liability before recommending grant of default judgment), *report and recommendation adopted*, 2016 WL 4186982 (E.D.N.Y. Aug. 8, 2016).  Therefore, the existence of a potential meritorious defense does not bear on whether Plaintiff's claims are well pleaded, and Plaintiff is not required

---

[23] *See, e.g.*, *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1354 (Fed Cir. 2018) ("It is axiomatic that '[t]here can be no inducement or contributory infringement without an underlying act of direct infringement.'" (alteration in original) (quoting *R+L Carriers, Inc. v. Driver Tech LLC (In re Bill of Lading Transmission & Processing Sys. Patent Litig.)*, 681 F.3d 1323, 1333 (Fed Cir. 2012)).

to offer proof beyond its well-pleaded allegations to "demonstrate that the defendants *actually infringed* its patents" and are therefore liable for patent infringement.  (R&R 17.)

In addition, Defendants' *Pro Se* OTSC Response is not uncontroverted material in the case file — indeed, Plaintiff has controverted the facts raised in Defendants' response throughout this case, including in its reply to the responses.  *See Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 63 (2d Cir. 1971) ("[Material] which only *tends* to contradict the allegations of the complaint has no legal effect . . . unless it could not conceivably [be] refuted and disproved by [the plaintiff at] a trial."), *rev'd on other grounds sub nom. Hughes Tool Co. v. Trans World Airlines, Inc.*, 409 U.S. 363 (1973); *cf. Getty Images (USA) v. Advernet, Inc.*, 797 F. Supp. 2d 399, 439 (S.D.N.Y. 2011) ("[T]he [c]ourt here determined that the allegations in the complaint were contradicted by the plaintiff's own uncontroverted evidence, making them not well-pleaded.").  Further, "[a] plaintiff is not required to plead the absence of [an affirmative] defense."  *Chen v. Major League Baseball Props., Inc.*, 798 F.3d 72, 81 (2d Cir. 2015).  Therefore, the facts raised in Defendants' *Pro Se* OTSC Response do not negate Plaintiff's well-pleaded allegations, and the fact that Plaintiff did not include allegations in the Amended Complaint responding to these facts also does not bear on whether Plaintiff's allegations are well pleaded.

Plaintiff also objects to Judge Cho's citation to *J & J Sports* for the proposition that "Plaintiff must establish that the patent is valid in order to obtain default judgment."  (Pl.'s Objs. 20.)  In *J & J Sports*, the Court denied default judgment without prejudice to allow the plaintiff an opportunity to provide evidence to establish a fact in controversy, which is consistent with Rule 55, which permits courts to hold an evidentiary hearing to investigate factual issues before granting default judgment.  Fed. R. Civ. P. 55.  In view of the Court's findings that Defendants

have not presented evidence of a meritorious defense and that Defendants' *Pro Se* OTSC

Response does not bear on whether Plaintiff's allegations are well pleaded, the Court declines to

require Plaintiff to prove the validity of its presumptively valid patents.  The Court therefore

considers whether Plaintiff's well-pleaded allegations establish liability as to its infringement

claims.

### ii.  Liability

Plaintiff alleges that Defendants committed direct, induced, and contributory

infringement of the '307 and '341 Patents at the 2019 and 2020 U.S. Opens under 35 U.S.C.

§ 271(a)–(c), respectively.  In support, Plaintiff argues that its well-pleaded allegations establish

Defendants' liability on these claims because Plaintiff set forth in the Amended Complaint claim

charts demonstrating that the systems used at the 2019 and 2020 U.S. Opens "meet[] every

limitation" of the methods asserted in Claim 12 of the '307 Patent and Claim 9 of the '341

Patent.  (*See* Pl.'s Mem. 7–12.)

Subsection 271(a) creates liability for direct patent infringement and provides that

"whoever without authority makes, uses, offers to sell, or sells any patented invention, within the

United States or imports into the United States any patented invention during the term of the

patent therefor, infringes the patent."  35 U.S.C. § 271(a).  To state a claim for direct patent

infringement under 35 U.S.C. § 271(a), a plaintiff must (i) allege ownership of the patent,

(ii) name each defendant, (iii) cite the patent that is allegedly infringed, (iv) state the means by

which the defendant allegedly infringes, and (v) point to the sections of the patent law invoked."

*Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1362 (Fed. Cir. 2013) (citing *Phonometrics,*

*Inc. v. Hosp. Franchise Sys., Inc.*, 203 F.3d 790, 794 (Fed Cir. 2000)); *see also, e.g., Display*

*Techs., LLC v. Leantegra, Inc.*, No. 20-CV-7816, 2022 WL 354667, at *4 (S.D.N.Y. Feb. 7, 2022) (same).

Subsection 271(b) creates liability for induced infringement and provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer."  35 U.S.C. § 271(b). "Induced infringement under 35 U.S.C. § 271(b) requires . . . proof that (1) 'the defendant knew of the patent,' (2) the defendant knew . . . that 'the induced acts constitute patent infringement,' and (3) the defendant 'possessed specific intent to encourage another's infringement.'"  *Bio-Rad Lab'ys, Inc. v. Int'l Trade Comm.*, 998 F.3d 1320, 1335 (Fed. Cir. 2021) (quoting *Sanofi, LLC v. Watson Lab'ys Inc.*, 875 F.3d 636, 643–44 (Fed. Cir. 2017)); *Uni-Systems, LLC v. U.S. Tennis Ass'n*, 350 F. Supp. 3d 143, 166 (E.D.N.Y. 2018); *see also Commil USA, LLC*, 575 U.S. at 638–39.  "Evidence of active steps taken to encourage direct infringement such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe."  *GlaxoSmithKline LLC v. Teva Pharms. USA, Inc.*, 7 F.4th 1320, 1333–34 (Fed. Cir. 2021) (quoting *Metro-Goldwyn Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005)).

Subsection 271(c) creates liability for contributory infringement, which is "the aiding and abetting of direct infringement by another party," *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 764 (2011), and provides that:

> Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

35 U.S.C. § 271(c).  "Contributory infringement under 35 U.S.C. § 271(c) requires proof that (1) the defendant had 'knowledge of the patent in suit,' (2) the defendant had 'knowledge of patent infringement,' and (3) the accused product is not a staple article or commodity of commerce suitable for a substantial noninfringing use." *Bio-Rad Lab'ys, Inc.*, 998 F.3d at 1335 (quoting *Commil USA, LLC*, 575 U.S. at 639); *Crypto Rsch., LLC v. Assay Abloy, Inc.*, 236 F. Supp. 3d 671, 687 (E.D.N.Y. 2017) ("To prove contributory infringement, the plaintiff must demonstrate: '1) that there is direct infringement, 2) that the accused infringer had knowledge of the patent, 3) that the component has no substantial noninfringing uses, and 4) that the component is a material part of the invention.'" (quoting *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010))).  "A substantial noninfringing use is any use that is 'not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.'" *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1357 (Fed. Cir. 2018) (quoting *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1327 (Fed. Cir. 2009)).  "For purposes of contributory infringement, the inquiry focuses on whether the accused products can be used for purposes *other than* infringement." *Id.* (quoting *In re Bill of Lading*, 681 F.3d at 1338).

With respect to direct infringement, Plaintiff alleges that it owns all rights to the '307 and '341 Patents by assignment, and that Defendants "literally and/or under the doctrine of equivalents" infringed under 35 U.S.C. § 271(a) at least Claim 12 of the '307 Patent and Claim 9 of the '341 Patent by selling, importing, or offering to the USTA a system featuring a shot clock control button on a handset for use in the 2019 U.S. Open, and a system modified to locate the shot clock button on a second handheld device for use in the 2020 U.S. Open.  (Am. Compl. ¶¶ 4, 41, 49 (alleging ownership); *id.* ¶¶ 5–7, 14–15 (naming Defendants); *id.* ¶¶ 52, 80 (identifying patents); *id.* ¶¶ 52–54, 56–57, 80–82 (providing claim charts with pictures of New Trinity

System used in 2019 and allegations as to each element of Claims 12 and 9, and alleging

modification of Old Trinity System in 2020 that "does not circumvent infringement"); *id.* ¶¶ 52,

80 (citing 35 U.S.C. § 271(a)).)  Defendants' default establishes the truth of these allegations,

which, in turn, establishes their liability for direct infringement of the '307 and '341 Patents.[24]

*See, e.g.*, *Display Techs., LLC*, 2022 WL 354667, at *4 (granting default judgment where the

plaintiff alleged ownership "with sole rights to enforce" the patent, "identified the [d]efendant

through its advertisements and provided screen captures and explanations of the means by which

the [d]efendant has infringed," and "specified that [the] [d]efendant's infringement violated 35

U.S.C. § 271"); *Brydge Techs., LLC v. OGadget LLC*, No. 19-CV-5692, 2021 WL 1200316, at

*4 (E.D.N.Y. Mar. 4, 2021) (recommending default judgment where the plaintiffs alleged they

---

[24] Plaintiff alleges that the final element of the method in Claim 12 of the '307 Patent is "[c]ontrolling the on court shot clock by pressing a button on a handset."  (Am. Compl. ¶ 54.)  However, Claim 12 of the '307 Patent does not include this element, (*see* '307 Patent 16), which first appears as an element of the method in Claim 9 of the '341 Patent, (*see* '341 Patent 16).  Notably, Plaintiff clarified at the September 9, 2021 hearing that it believed the use of the shot clock button is what infringes the patents, and Plaintiff's requests for injunctive relief in this case have been based on the '341 Patent only.  The Federal Circuit has explained that "[a] plaintiff is not required to plead infringement on an element-by-element basis," and "a plaintiff cannot assert a plausible claim for infringement . . . by reciting the claim elements and merely concluding that the accused product has those elements" but rather must allege facts "that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim."  *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352–53 (Fed. Cir. 2021).  In addition, not only are "allegations that are 'merely consistent with' infringement'" insufficient but allegations that "are actually *inconsistent* with and contradict infringement . . . are likewise insufficient to state a plausible claim," and "it is possible that, in pleadings its claims, a plaintiff may find it has pleaded itself out of court."  *Id.* at 1353 (first quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 557 (2007); and then citing *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1348–50 (Fed. Cir. 2018)) (noting that "claim 1 requires that the game program and authentication program be stored together, separately from the motherboard," but the plaintiff alleged "that the authentication program is located on the . . . motherboard itself," and "[t]hat allegation renders [the plaintiff's] infringement claim not even possible, much less plausible").  Although Claim 12 of the '307 Patent does not include "[c]ontrolling the on court shot clock by pressing a button on a handset" as an element, Plaintiff alleges that the method practiced by Defendants' system meets all of the elements that *are* contained in Claim 12.  Therefore Plaintiff's allegations nevertheless establish infringement of Claim 12.

had "exclusive ownership" of patent "*by assignment*, including the exclusive right to enforce"
the patent, "identifie[d]" the patent, "name[d]" the defendant, "contend[ed] that a side-by-side
comparison of the two [products] demonstrates" that they are "virtually identical," and alleged
that the defendants' activities "injured [them] and threaten[ed] future injury" by "diminishing
[their] goodwill and causing [them] to lose sales"), *report and recommendation adopted*, 2021
WL 1193003 (E.D.N.Y. Mar. 30, 2021); *Am. Infertility of N.Y., P.C. v. Deep Blue Health N.Z.
Ltd.*, No. 17-CV-5666, 2020 WL 4218261, at *4 (S.D.N.Y. July 23, 2020) (granting default
judgment where the plaintiff alleged it "own[ed]" the patent, that the defendant "infringed that
patent by offering the [i]nfringing [p]roduct for sale on its website and by 'advertising and
instructing others to purchase, use and/or administer the infringing product in a manner that
infringe[d]'" the patent, and "that this conduct violate[d] 35 U.S.C. §§ 271(a) and (b)");
*Whirlpool Props. v. Menpin Supply Corp.*, No. 19-CV-2722, 2020 U.S. Dist. LEXIS 183459, at
*11 (E.D.N.Y. Sept. 30, 2020) (recommending default judgment where the plaintiff alleged that
its patents "are registered" and provided "evidence of [the] same," that the defendant "infringed
and continues to infringe on at least claims 1 and 4" of the patents, and that the plaintiff "ha[d]
been and continue[d] to be damaged").

      With respect to the common elements of induced and contributory infringement, Plaintiff
alleges that Defendants had knowledge of the patents and of the patent infringement because
Plaintiff notified Defendants "of the impending issuance" of the Patents and of its belief that a
Trinity System with a shot clock button would infringe both Patents, and Defendants
nevertheless provided the New Trinity System to the USTA for use in the 2019 U.S. Open, and,
despite their representations to the Court, provided a system modified to locate a shot clock
button on a second handheld device for use in the 2020 U.S. Open.  (Am. Compl. ¶¶ 40–50); *see*

*Commil USA, LLC*, 575 U.S. at 639 ("Like induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement." (citing *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964))).

        In addition, with respect to induced infringement, Plaintiff alleges that "all elements of the asserted [Patent] claims are present in the . . . Trinity System used at the 2019 U.S. Open and the modified Trinity System used in the 2020 U.S. Open," (Am. Compl. ¶¶ 57, 93), and that Defendants had the specific intent to encourage infringement because they encouraged infringement "through [their] marketing, sales and support of the products by . . . creating and disseminating promotional and marketing materials, instructional manuals, product manuals, and other technical materials related to the infringing products," and by assisting with the setup and configuration of both systems and providing technical support.  (*Id.* ¶¶ 19, 63–64, 91–92.) Accepting these allegations as true, they establish that Defendants knew of the Patents, knew the USTA's use of their system in 2019 and 2020 would constitute patent infringement, and had specific intent to encourage such infringement, establishing their liability for induced infringement.  *See, e.g.*, *Symbology Innovations LLC v. Nat. Nectar Inc.*, No. 19-CV-4474, 2020 WL 9814098, at *4 (E.D.N.Y. Aug. 21, 2020) (recommending default judgment on induced infringement claim where the plaintiff alleged the defendant "had knowledge of the patent-in-suit by way of proper service of the complaint but failed to stop selling its products" and "knowingly induced . . . customers to infringe . . . by advertising, offering for sale, and selling its products," and finding allegation that the defendant "continued to sell its products containing the infringing patent" sufficient to establish specific intent "to encourage others to infringe"); *KX Tech, LLC v. Zuma Water Filters, Inc.*, No. 16-CV-1433, slip op. at 4–5 (D. Conn. Apr. 19, 2018) (granting default judgment on induced infringement claim where the plaintiff alleged the defendants

47

"actively induced infringement of the method for extracting and attaching a filter housing assembly from a filter base" through offering for sale and selling infringing replacement water filters and the defendants "knew or should have known that their activities would lead to infringement"); *see also Dynamic Data Techs., LLC v. Dell Inc.*, No. 18-CV-10454, 2019 WL 10248834, at *3 (S.D.N.Y. Apr. 23, 2019) (denying motion to dismiss induced infringement claim where the plaintiff alleged the defendant "was aware that normal and customary use of its products would infringe, . . . encouraged its customers to infringe by providing them with product manuals and other information about how to use its products," and knowledge could be inferred from allegations that "the patents were well known and commonly cited in the industry").[25]

      With respect to contributory infringement, Plaintiff alleges that Defendants' "customers and other end users directly infringe one or more claims" of the Patents by using Defendants' "infringing products[,] including . . . the Trinity System," (Am. Compl. ¶¶ 72, 100); that Defendants have "offered for sale, sold, leased and/or imported supplemental, ancillary, and/or

---

[25] The court in *Dynamic Data Technologies, LLC v. Dell Inc.* addressed a motion to dismiss rather than a default judgment motion; however, courts apply the same standard for assessing the sufficiency of allegations to both motions. *See, e.g.*, *S.E.C. v. Yin*, No. 17-CV-972, 2020 WL 6801915, at *3 (S.D.N.Y. Nov. 19, 2020) ("[A]bundant authority establish[es] that the legal sufficiency of a complaint is reviewed under the same standard whether on a motion to dismiss or on a motion for default judgment." (citing *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014))); *Byrnes v. Eltman Law, P.C.*, No. 18-CV-1485, 2019 WL 4578922, at *8 (E.D.N.Y. Aug. 22, 2019) ("A court resolving a motion for entry of default judgment applies essentially the same standard as a court resolving a Rule 12(b)(6) motion to dismiss." (citing *Steginsky*, 741 F.3d at 368)), *report and recommendation adopted*, 2019 WL 4575380 (E.D.N.Y. Sept. 20, 2019); *Roberts v. Bennaceur*, No. 12-CV-1222, 2015 WL 1471889, at *17 (D. Conn. Mar. 31, 2015) ("I apply the same standard to assess the propriety of default judgment as I would apply to a motion to dismiss; in other words, I must accept as true all factual matter alleged in the complaint and draw all reasonable inferences in a plaintiff's favor."), *aff'd*, 658 F. App'x 611 (2d Cir. 2016); *see also Steginsky*, 741 F.3d at 368 (finding that "[t]he district court properly applied an identical standard" in assessing a motion for default judgment and a motion to dismiss "and accepted all of the complaint's factual allegations as true").

replacement components that are specially made and/or specially adapted for infringing use with infringing products, including . . . the Trinity System," (*id.* ¶¶ 73, 101); and that such products, "including at least the Trinity System," are "specifically and solely designed and intended for infringing use and have no substantial non-infringing use," (*id.* ¶¶ 75, 103).  These allegations, accepted as true, sufficiently establish Defendants' liability for contributory infringement.  *See, e.g.*, *Crypto Rsch., LLC*, 236 F. Supp. 3d at 687–88 (denying motion to dismiss where the plaintiff alleged the defendants sold their infringing products, supporting the inference that the defendants "expected that customers would use its products and, by doing so, [directly] infringe the plaintiff's patent," that the defendants "knew about the plaintiff's patents by . . . setting out the letters that the plaintiff sent" them, and that the infringing products have no substantial noninfringing use, and noting that "many courts post-*Iqbal* have not demanded detailed factual allegations that the defendants' products lack substantial noninfringing uses"); *Conair Corp. v. Jarden Corp.*, No. 13-CV-6702, 2014 WL 3955172, at *4 (S.D.N.Y. Aug. 12, 2014) (denying motion to dismiss where the plaintiff alleged the defendant "sold coffee makers that infringed [the plaintiff's] patent in a removable milk container attachment," supporting inference that the defendant "intended and expected that its customers would *use* the milk container attachment and, by doing so, infringe [the] patent," that the defendant "knew about [the plaintiff's] patent by describing the notice that [the plaintiff] sent [the defendant]," that the defendant's customers use the defendant's allegedly infringing coffee machines, and that the defendant's products "are not suitable for substantial non-infringing use"); *Uni-Systems, LLC*, 350 F. Supp. 3d at 170 (denying motion to dismiss where the plaintiff alleged the defendant "sold components" of the Ashe Retractable Roof and Armstrong Retractable Roof "that constituted material parts" of the patents "after being placed on notice that the designs infringed [the] plaintiff's patents").

49

Accordingly, Plaintiff's allegations establish Defendants' liability for direct, induced, and contributory infringement of the '307 and '341 Patents with respect to the 2019 and 2020 U.S. Opens.

     **e.    Lanham Act claims for false advertising and use of false descriptions and false representations**

Plaintiff argues that Judge Cho "does not mention the worst of the false statements that impugned [Plaintiff's] equipment" — that it was the "cheapest stuff" and "causes more problems than it solves" — or "even cite some of the countless outrageous, defamatory, and false statements in Defendants' July 16, 2020 'answer' to the TRO." (Pl.'s Objs. 20.)

Judge Cho recommended granting Plaintiff's motion with respect to Plaintiff's Lanham Act claims based on Plaintiff's allegations. Plaintiff does not object to Judge Cho's analysis, but rather to the fact that he did not mention all of the false statements by Defendants that Plaintiff alleged. Because Plaintiff cites no support for its proposition that Judge Cho was required to mention every allegation, and because his analysis — that Defendants' default establishes the truth of Plaintiff's allegations — extends to the allegations he did not specifically mention, the Court adopts Judge Cho's recommendation and grants Plaintiff's motion with respect to its Lanham Act claims for false advertising and use of false descriptions and false representations.

     **f.    Deceptive trade practices and false advertising under the GBL**

Plaintiff objects to Judge Cho's statement that "the Amended Complaint includes no allegations that Defendants' actions have caused significant public harm," arguing that "Defendants are challenging the legitimacy of [Plaintiff's] patent, which erodes the public's confidence in the patent system." (Pl.'s Objs. 20.) In addition, Plaintiff argues that Judge Cho's conclusion that Plaintiff's claims "improperly include allegations concerning harm to [Plaintiff]" is "unsupported." (*Id.*)

GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a). GBL section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." *Id.* § 350. "'The standard for recovery under . . . § 350, while specific to false advertising, is otherwise identical to [§] 349,' and therefore the Court will merge its analysis of the two claims." *Cosgrove v. Or. Chai, Inc.*, 520 F. Supp. 3d 562, 575 (S.D.N.Y. 2021) (citation omitted) (quoting *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 & n.1 (2002); *see also Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020) (recognizing that GBL section 350 is analyzed under the same "reasonable consumer" standard as section 349). To assert a claim under either section, "a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." *Electra v. 59 Murray Enters.*, 987 F.3d 233, 258 (2d Cir. 2021) (quoting *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009)); *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) ("To successfully assert a claim under either section, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" (quoting *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 944 (2012))); *Plavin v. Grp. Health Inc.*, 35 N.Y.3d 1, 10 (2020) ("We have explained that, to state a claim under sections 349 or 350, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) [the] plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" (quoting *Koch*, 18 N.Y.3d at 941)).

"Section 349 allows recovery by non-consumers if there is 'some harm to the public at large.'" *Electra*, 987 F.3d at 258 (quoting *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995)).  "Th[is] same interpretation has also been applied to [s]ection 350." *Maurizio v. Goldsmith*, 230 F.3d 518, 522 (2d Cir. 2000) (per curiam); *SmileDirectClub, LLC v. Jacqueline I. Fulop, D.M.D. P.C.*, No. 19-CV-9582, 2020 WL 1322838, at *3 (S.D.N.Y. Mar. 20, 2020) ("Although each statute 'is, at its core, a consumer protection device,' 'corporate competitors' have standing to sue under §§ 349 and 350 'so long as some harm to the public at large is at issue.'" (quoting *Securitron Magnalock Corp.*, 65 F.3d at 264)).  Therefore, "to successfully state a claim under [s]ection 349 [or 350,] 'the gravamen of the complaint must be consumer injury or harm to the public interest.'" *Electra*, 987 F.3d at 258 (quoting *Securitron Magnalock Corp.*, 65 F.3d at 264); *SmileDirectClub, LLC*, 2020 WL 1322838, at *3 ("[F]or a competitor to have standing under §§ 349 and 350, 'the gravamen of the complaint must be consumer injury or harm to the public interest,' and the complaint 'must allege conduct that has significant ramifications for the public at large.'" (citation omitted) (first quoting *Securitron Magnalock Corp.*, 65 F.3d at 264; and then quoting *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269, 273–74 (S.D.N.Y. 2003))).  "[I]njury or harm that satisfy this standard include 'potential danger to the public health or safety.'" *Sofa Doctor, Inc. v. N.Y. Couch Doctor, Inc.*, No. 14-CV-5496, 2016 WL 951523, at *2 (E.D.N.Y. Mar. 9, 2016) (quoting *Gucci Am., Inc.*, 277 F. Supp. 2d at 273).

As Judge Cho notes, Plaintiff has not alleged that Defendants' actions caused a significant public harm "other than the conclusory allegation that [D]efendants' actions have 'caused, and are likely to continue to cause injury to the public, including consumers in New York.'" (R&R 27 (quoting Am. Compl. ¶¶ 135, 141).)  Plaintiff's argument that Defendants'

challenge to the legitimacy of Plaintiff's patents "erodes the public's confidence in the patent system" is unpersuasive, as this is not the type of injury or harm that satisfies the standard.  *See, e.g.*, *Sofa Doctor, Inc.*, 2016 WL 951523, at *3 (rejecting "sweeping allegations" of harm above and beyond consumer confusion where "the gravamen of [the] [p]laintiff's [c]omplaint is harm to its own business interests arising from consumer confusion"); *cf. Securitron Magnalock Corp.*, 65 F.3d at 264–65 (finding public interest substantially affected where defendant allegedly provided false information about the plaintiff's products to a regulatory agency concerned with public safety, causing it to undertake unnecessary investigations and diverting its resources).  In addition, although Plaintiff objects to Judge Cho's conclusion that Plaintiff's claims "improperly include allegations concerning harm to [Plaintiff]," the Court agrees with Judge Cho that the "gravamen of [the] Amended Complaint is clearly harm to [P]laintiff's business as opposed to the public at large."  (R&R 27.)

Accordingly, the Court adopts Judge Cho's recommendation and denies Plaintiff's motion with respect to its GBL claims.

### g.   Trade libel claim

Plaintiff argues that "additional facts in the Amended Complaint . . . support that a deal with USTA for the 2020 U.S. Open was imminent," and, "[w]ith those allegations taken as true, [Plaintiff] has stated a cause of action."  (Pl.'s Objs. 21.)  In support, Plaintiff points to its allegations that it "was being considered by the USTA to provide its Net System . . . for use at the 2020 U.S. Open, with several physical and telephonic meetings taking place," (Am. Compl. ¶ 121); that it had made a marketing presentation to USTA for the 2020 U.S. Open and had a follow-up conference call, (*id.* ¶ 36); that "USTA's decision not to use [Plaintiff's] Net System for the U.S. Open event was due to the known falsehoods concerning the Net System in the

Trinity Specification [Defendants] submitted to the USTA," (*id.* ¶ 38); that Defendants introduced those falsehoods "while the USTA was deciding between using [Defendants'] or [Plaintiff's] let-detection systems" in order "to avoid losing another significant client to [Plaintiff]," (*id.* ¶¶ 122–123); and that "[b]ut for such conduct, the USTA would have awarded the 2020 U.S. Open let-detection services contract to [Plaintiff]," (*id.* ¶ 124).

"To recover for product disparagement under New York law, plaintiffs must show defendants' publication of a defamatory statement directed at the quality of their goods, which statement caused 'special damages.'" *Bilinski v. Keith Haring Found., Inc.*, 632 F. App'x 637, 641 (2d Cir. 2015) (quoting *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 59 (2d Cir. 2002)); *Eminah Props. LLC v. Energizer Holdings, Inc.*, 531 F. Supp. 3d 593, 608 (E.D.N.Y. 2021) ("To state a claim for trade libel, a plaintiff must adequately plead (1) falsity of the statement, (2) publication to a third person, (3) malice (express or implied), and (4) special damages." (quoting *Enigma Software Grp. USA, LLC v. Bleeping Comp. LLC*, 194 F. Supp. 3d 263, 291 (S.D.N.Y. 2016))). Special damages are defined as the "loss of something having economic or pecuniary value." *Bilinski*, 632 F. App'x at 641 (quoting *Albert v. Loksen*, 239 F. 3d 256, 271 & n.13 (2d Cir. 2001)). "Where loss of customers constitutes the alleged special damages, the individuals 'who ceased to be customers, or who refused to purchase, must be named' and the exact damages itemized." *Fashion Boutique of Short Hills, Inc.*, 314 F.3d at 59 (quoting *Drug Res. Corp. v. Curtis Publ'g Co.*, 7 N.Y.2d 435, 441–42 (1960)); *see also* *Bilinski*, 632 F. App'x at 641 (same); *Drug Res. Corp.*, 7 N.Y.2d at 441 (holding that if lost customers "are not named, no cause of action is stated" and that "round figures, with no attempt at itemization, must be deemed to be a representation of general damages" (quoting *Reps.' Ass'n of Am. v. Sun Printing & Publ'g Ass'n*, 186 N.Y. 437, 442 (1906))).

54

While Judge Cho did not discuss all of Plaintiff's allegations, Plaintiff does not address Judge Cho's concern that Plaintiff estimated a round number for its damages and trade libel requires that exact damages be itemized.  The Court agrees with Judge Cho that Plaintiff's allegation that it is entitled to "exemplary damages in excess of $200,000" is deficient, and Plaintiff does not cite any cases to the contrary.  The Court therefore adopts Judge Cho's recommendation and denies Plaintiff's motion with respect to its trade libel claim.

      **h.   Remedies**

Plaintiff objects to Judge Cho's (1) "recommendation that the Court deny the permanent injunction and patent damages on the basis that [Plaintiff's] infringement claims are not well-pleaded"; (2) "recommendation that lost profits damages should be assessed under the Lanham Act only to the extent that doing so would preclude a more advantageous calculation of lost profits under any of the other causes of action that are ultimately reflected in the default judgment"; (3) "interpretation of [Plaintiff's] contracting history"; (4) "conclusion that [Plaintiff] has not provided sufficient information to calculate lost profits for the loss of the Grand Slam tournaments in 2020 and 2021"; and (5) skeptical view of Plaintiff's "estimated price tag *in lieu* of an actual one."  (Pl.'s Objs. 22–23 (quoting R&R 35).)

      **i.   Permanent injunction and patent damages**

Plaintiff claims that it is entitled to permanent injunctive relief and patent damages.  (Pl.'s Mem. 25–36.)

      **1.   Permanent injunctive relief**

Plaintiff argues it is entitled to a permanent injunction under the Patent Act because (1) "Defendants' default constitutes an admission of liability," (*id.* at 20); (2) Plaintiff has suffered irreparable harm because its harm "cannot be easily remedied by monetary damages," the parties are "direct competitors in a two-supplier market," and Defendants' "blatant infringement" harms

Plaintiff's goodwill and reputation and interferes with its business relationships and "statutory

right to exclude," (*id.* 20–22); (3) remedies at law are inadequate to compensate Plaintiff because

the let-detection services industry is highly competitive, such that a lost sale to a competitor

"means that the lost customer is unlikely to seek [Plaintiff's] services for years, if ever," and this

harm is "compounded because consumers seeking let-detection services are heavily influenced

by the experiences and choices of the[] Grand Slam tournaments," (*id.* at 22–24); and (4) the

balance of hardships favors Plaintiff because Defendants will continue capitalizing on Plaintiff's

patented innovations and denying Plaintiff its exclusive rights, other infringers will be

encouraged to ignore Plaintiff's efforts to exclude them or to enter into the market with new

infringing products, and competition from infringing products could also erode prices and

Plaintiff's market share, whereas Defendants' hardship is "no greater than any other patent

infringer's," (*id.* at 24–25); and (5) the public interest supports permanent injunctive relief

because there is a strong public policy favoring the enforcement of patent rights, (*id.* at 26).

   "A court may issue an injunction on a motion for a default judgment provided that the

moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2)

it meets the prerequisites for the issuance of an injunction." *Kaneka Corp. v. Purestar Chem

Enter. Co.*, No. 16-CV-4861, 2018 WL 3215680, at *4 (E.D.N.Y. May 1, 2018) (quoting *Stark

Carpet Corp. v. Stark Carpet & Flooring Installations, Corp.*, 954 F. Supp. 2d 145, 157

(E.D.N.Y. 2013)), *report and recommendation adopted*, 2018 WL 3213281 (E.D.N.Y. June 29,

2018).  The Patent Act empowers courts to "grant injunctions in accordance with the principles

of equity to prevent the violation of any right secured by patent, on such terms as the court

deems reasonable."  35 U.S.C. § 283.  "The requirements for a permanent injunction are

'essentially the same' as for a preliminary injunction, except that the moving party must

demonstrate 'actual success' on the merits." *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012) (quoting *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987)); *see also JTH Tax, Inc. v. Sawhney*, No. 19-CV-4035, 2020 WL 6825585, at *5 (S.D.N.Y. Nov. 20, 2020) ("The standard for a permanent injunction is similar to [that of a preliminary injunction].").   "[A] plaintiff seeking a permanent injunction . . . must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57 (2010) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)); *see also Entergy Nuclear Vt. Yankee, LLC v. Shumlin*, 733 F.3d 393, 422–23 (2d Cir. 2013).

## A.   Plaintiff is successful on the merits

Because Defendants' default constitutes an admission of liability, Plaintiff has succeeded on the merits of its patent infringement claims. *Asia TV USA Ltd. v. Kamran Int'l Trade, Ltd.*, No. 17-CV-5057, 2018 WL 6313215, at *10 (E.D.N.Y. Sept. 25, 2018) ("[S]ince [the] plaintiffs have established their Copyright Act claims by virtue of [the] defendants' default, and thereby succeeded on the merits, plaintiffs are entitled to an injunction if they can establish the remaining factors." (citing *Salinger v. Colting*, 607 F.3d 68, 77 (2d Cir. 2010))), *report and recommendation adopted*, 2018 WL 6313180 (E.D.N.Y. Dec. 3, 2018); *Mister Softee, Inc. v. Konstantakakos*, No. 15-CV-4770, 2016 WL 11445964, at *4 (E.D.N.Y. June 27, 2016) ("[The] plaintiffs have established liability by virtue of the well-pleaded allegations of their complaint and [the] defendants' default, and have thus succeeded on the merits of their trademark

infringement and false designation of origin claims."), *report and recommendation adopted*, 2016 WL 4250314 (E.D.N.Y. Aug. 11, 2016).

> ### B. Plaintiff has suffered irreparable injury and remedies available at law are inadequate to compensate Plaintiff

Plaintiff has suffered irreparable injury and remedies at law are inadequate to compensate Plaintiff's injuries.  First, it is not possible to quantify the full extent of the damages, as there has been no discovery into Defendants' infringing sales due to their failure to respond to this action. *See Salinger*, 607 F.3d at 81 ("Harm might be irremediable, or irreparable, for many reasons, including that a loss is difficult to replace or difficult to measure, or that it is a loss that one should not be expected to suffer.").  Second, because the parties directly compete in a two-supplier market that is limited to the ATP tour, the WTA tour, and the Grand Slam tournaments, and because consumers in this industry are brand-loyal, Defendants' continued infringement will cause Plaintiff to lose actual and potential customers and market share.  *See Kaneka Corp.*, 2018 WL 3215680, at *5 ("Purestar's product directly competes with Kaneka Ubiquinol. . . . As a result, the [c]ourt finds that [the] [d]efendant's continued infringement will likely result in lost sales and market share sufficient to show irreparable harm." (citing *Stein Indus., Inc. v. Jarco Indus., Inc.*, 934 F. Supp. 55, 58 (E.D.N.Y. 1996))); *see also Celsis in Vitro, Inc. v. Cellzdirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012) ("Price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm."); *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 67 (2d Cir. 2007) ("It is well-established that a movant's loss of current or future market share may constitute irreparable harm.").  Third, because Defendants are foreign entities that have defaulted, and, as Plaintiff alleges, are undercapitalized and likely cannot satisfy a money judgment, remedies at law would likely not compensate Plaintiff.  (Am. Compl. ¶¶ 9–10); *see Evriholder Prods. LLC v. Simply LBS Co.*, No.

17-CV-4329, 2020 WL 7060336, at *12 (S.D.N.Y. Apr. 21, 2020) ("Because [the] defendant is a foreign entity which has defaulted, 'there is serious doubt that [the plaintiff] will be successful in collecting any monetary award' the [c]ourt does issue, rendering [the] [p]laintiff's injuries 'likely irreparable.'" (quoting *Acticon Techs. v. Heisei Elecs. Co.*, No. 06-CV-4316, 2008 WL 356872, at *5 (S.D.N.Y. Aug. 1, 2007), *report and recommendation adopted*, 2008 WL 356872 (S.D.N.Y. Feb. 5, 2008))), *report and recommendation adopted*, 2020 U.S. Dist. LEXIS 230226 (S.D.N.Y. Dec. 8, 2020). Finally, because Defendants' infringement interferes with Plaintiff's statutory right to exclude others from using and disseminating its patented technology, monetary damages are an inadequate remedy. *See Evriholder Prods. LLC*, 2020 WL 7060336, at *12 ("'[B]ecause the principal value of a patent is its statutory right to exclude,' courts have concluded that monetary damages are an inadequate remedy against future infringement." (quoting *ALAN Sportartikel GmbH v. Ultra Fitness Equip.*, No. 09-CV-4909, 2011 WL 13305254, at *5 (E.D.N.Y. Feb. 10, 2011), *report and recommendation adopted*, 2011 WL 13305255 (E.D.N.Y. Mar. 29, 2011))); *see also Hybridtech Inc. v. Abbott Lab'ys*, 849 F.2d 1446, 1456–57 (Fed. Cir. 1988) ("It is well-settled that, because the principal value of a patent is its statutory right to exclude, the nature of the patent grant weighs against holding that monetary damages will always suffice to make the patentee whole.").

### C. The balance of hardships and public interest favor Plaintiff

The balance of hardships favors Plaintiff. If an injunction is granted, Defendants will be required to compensate Plaintiff. However, as noted above, it is unclear whether Defendants can satisfy a judgment, and any potential harm resulting from an injunction is caused by Defendants' decision to continue infringing Plaintiff's patents after being put on notice of the patents and even after commencement of these proceedings. As Plaintiff argues, if an injunction is denied,

59

Defendants will likely continue capitalizing on Plaintiff's patented innovations and denying

Plaintiff its exclusive rights, and "other infringers will be encouraged to ignore [Plaintiff's]

efforts to exclude them, or to enter into the market with new infringing products." (Pl.'s Mem.

24); *see Trebro Mfg., Inc. v. Firefly Equip., LLC*, 748 F.3d 1159, 1172 (Fed. Cir. 2014) (finding

that the balance of hardships favored the patentee where the defendant was the "only nonlicensed

competitor in the market," as this "suggest[ed] that this patent will have significantly less value if

[the plaintiff] cannot use it to exclude an infringing product from the market"); *Celsis*, 664 F.3d

at 931 (affirming grant of preliminary injunction and finding equities favored injunction where

"the preliminary record suggest[ed] that [the defendant's] losses were the result of its own

calculated risk in selling a product with knowledge of [the plaintiff's] patent"); *see also Kaneka

Corp.*, 2018 WL 3215680, at *5 ("The balance of hardships clearly tips in [the] plaintiff's

favor . . . where it has established irreparable harm[,] . . . the infringing conduct is likely to

continue absent injunctive relief . . . [and the] plaintiff has already incurred substantial legal costs

in protecting its [ . . . ] rights . . . . " (second and fourth alterations in original) (quoting *Hilton v.

Int'l Perfume Palace, Inc.*, No. 12-CV-5074, 2013 WL 5676582, at *13 (E.D.N.Y. Oct. 17,

2013))).

In addition, the "strong public policy favoring the enforcement of patent rights" favors

Plaintiff. *See PPG Indus., Inc. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1567 (Fed. Cir. 1996);

*see also i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 863 (Fed. Cir. 2010) ("[T]he

touchstone of the public interest factor is whether an injunction, both in scope and effect, strikes

a workable balance between protecting the patentee's rights and protecting the public from the

injunction's adverse effects."). *See Evriholder Prods. LLC*, 2020 WL 7060336, at *12 ("'The

only hardships involved inure in favor of' [the] plaintiff, and 'the public interest in the

enforcement of intellectual property rights warrants the issuance of injunctive relief as the only enforceable remedy.'" (quoting *Acticon Techs.*, 2008 WL 356872, at *5)).

Accordingly, the Court grants Plaintiff's request for a permanent injunction enjoining Defendants from infringing, as well as inducing or contributing to infringement of, the '307 and '341 Patents.

### 2. Lost profits based on Plaintiff's patent claims

Plaintiff argues it is entitled to lost profits from Defendants' infringement under *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152 (6th Cir. 1978) because (1) there is an ongoing market demand for let-detection systems for use at major tennis tournaments because they are necessary to effectively judge the tournaments and the market is "essentially limited to the ATP tour, the WTA tour, and [Grand Slam] tournaments," (Pl.'s Mem. 27); (2) there are no acceptable non-infringing alternative let-detection systems because systems "with an integrated shot clock function are the only acceptable systems used at professional tournaments" due to a change in the rules, (*id.*); (3) Plaintiff "has ample capacity to meet market demand" as it "currently services the two largest governing bodies in all of tennis" and "has the ability to service every major tennis tournament" and "most tournaments — in particular, the Grand Slams — do not overlap," (*id.* at 28); and (4) Plaintiff has lost a $60,000 profit for the 2019, 2020, and 2021 U.S. Open events, for a total of $180,000, (*id.*). Plaintiff also argues that Defendants' infringement was willful and Plaintiff "is thus entitled to treble damages, or $540,000, (*id.* at 29–30), and that Plaintiff is also entitled to enhanced damages under the factors set forth in *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992). In support of its requests, Plaintiff has provided a declaration by its Director of Intellectual Property, Frederic Goldstein. (Goldstein Default J. Decl.)

The Patent Act provides that "the court shall award [the patent owner] damages adequate to compensate for the infringement but in no event less than a reasonable royalty for the use made of the invention by the infringer."  35 U.S.C. § 284; *WesternGeco LLC v. ION Geophysical Corp.*, --- U.S. ---, ---, 138 S. Ct. 2129, 2137 (June 22, 2018) (quoting 35 U.S.C. § 284).  "Under the statute, 'damages adequate to compensate' means 'full compensation for . . . any damages [the patent owner] suffered as a result of the infringement."  *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1283 (Fed. Cir. 2017) (alteration in original) (quoting *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 654–55 (1983)).  When a patentee demonstrates a reasonable probability that "it would have made additional sales but for a defendant's infringement, the patentee is entitled to be made whole for the profits it proves it lost."  *Sunoco Partners Mktg. & Terminals L.P. v. U.S. Venture, Inc.*, 32 F.4th 1161, 1180 (Fed. Cir. 2022) (quoting *Mentor Graphics Corp.*, 851 F.3d at 1284).  "There is no particular required method to prove but for causation," however "[o]ne 'useful, but non-exclusive' method to establish the patentee's entitlement to lost profits is the *Panduit* test first articulated by the Sixth Circuit."  *Mentor Graphics Corp.*, 851 F.3d at 1284 (quoting *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc) (citing *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978))); *see also TEK Global, S.R.L. v. Sealant Sys. Int'l*, 920 F.3d 777, 789–90 (Fed. Cir. 2019); *Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1241 (Fed. Cir. 2017).  "Under the *Panduit* test, a patentee is entitled to lost profit damages if it can establish four things: (1) demand for the patented product; (2) absence of acceptable non-infringing alternatives; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of profit it would have made."  *Mentor Graphics Corp.*, 851 F.3d at 1285 (citing

*Panduit*, 575 F.2d at 1156); *see also Sunoco Partners Mktg. & Terminals L.P.*, 32 F.4th at 1180; *Georgetown Rail Equip. Co.*, 867 F.3d at 1241.

      "Damages under *Panduit* are not easy to prove." *Mentor Graphics Corp.*, 851 F.3d at 1285. "The first factor — demand for the patented product — considers demand for the product as a whole." *Id.* (citing *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330–31 (Fed. Cir. 2009)). "The proper inquiry asks whether demand existed in the marketplace for the patented product, i.e., a product 'covered by the patent in suit or that directly competes with the infringing device.'" *Georgetown Rail Equip. Co.*, 867 F.3d at 1241 (quoting *DePuy Spine, Inc.*, 567 F.3d at 1330). "The second factor — the absence of non-infringing alternatives — considers demand for particular limitations or features of the claimed invention." *Mentor Graphics Corp.*, 851 F.3d at 1285 (citing *DePuy Spine, Inc.*, 567 F.3d at 1331). "To prove the absence of acceptable, non-infringing alternatives, the patentee may prove either that the potential alternative was not acceptable to potential customers or was not available at the time." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1380 (Fed. Cir. 2017) (citing *Grain Processing Corp. v. Am. Maize-Prod. Co.*, 185 F.3d 1341, 1353–55 (Fed. Cir. 1999))); *Mentor Graphics Corp.*, 851 F.3d at 1286 ("[I]f there is a noninfringing alternative which any given purchaser would have found acceptable and bought, then the patentee cannot obtain lost profits for that particular sale."). "Together, requiring patentees to prove demand for the product as a whole and the absence of non-infringing alternatives ties lost profit damages to specific claim limitations and ensures that damages are commensurate with the value of the patented features." *Mentor Graphics Corp.*, 851 F.3d at 1285. "For sales in which the patentee cannot prove the elements necessary to establish entitlement to lost profits, the statute guarantees the patentee a reasonable royalty for those sales." *Id.* at 1286. "A reasonable royalty can be

calculated from an established royalty, the infringer's profit projections for infringing sales, or a hypothetical negotiation between the patentee and infringer . . . ." *Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1319 (Fed. Cir. 2010).

"Section 284 [of the Patent Act] gives district courts the discretion to award enhanced damages against those guilty of patent infringement." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 110 (2016). It provides that, "in a case of infringement, courts 'may increase the damages up to three times the amount found or assessed.'" *Id.* at 97 (quoting 35 U.S.C. § 284). "[A]wards of enhanced damages are discretionary, and 'courts should . . . take into account the particular circumstances of each case in deciding whether to award damages, and in what amount.'" *Georgetown Rail Equip. Co.*, 867 F.3d at 1244 (quoting *Halo Elecs., Inc.*, 579 U.S. at 106). "[S]uch punishment should generally be reserved for egregious cases typified by willful misconduct." *Halo Elecs., Inc.*, 579 U.S. at 106; *Stryker Corp. v. Zimmer, Inc.*, 837 F.3d 1268, 1279 (Fed. Cir. 2016) (quoting *Halo Elecs., Inc.*, 579 U.S. at 106). "[T]he subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages . . . ." *Georgetown Rail Equip. Co.*, 867 F.3d at 1244 (quoting *Halo Elecs., Inc.*, 579 U.S. at 105). "When deciding how much to award in enhanced damages, district courts often apply the non-exclusive factors articulated in *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992), *abrogated in part on other grounds by Markman v. Westview Instruments*, *Inc.*, 517 U.S. 370 (1996)." *Id.* at 1244–45; *WCM Indus., Inc. v. IPS Corp.*, 721 F. App'x 959, 972 (Fed. Cir. 2018) ("Because a finding of willful infringement does not command the enhancement of damages, the *Read* factors, although not mandatory, do assist the trial court in evaluating the degree of the infringer's culpability and in determining whether to exercise its discretion to award enhanced damages at all, and if so, by how much the damages should be increased."). The *Read* factors consider:

> (1) "whether the infringer deliberately copied the ideas of another"; (2) "whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed"; (3) "the infringer's behavior as a party to the litigation"; (4) the "[d]efendant's size and financial condition"; (5) the "[c]loseness of the case"; (6) the "[d]uration of the defendant's misconduct"; (7) "[r]emedial action by the defendant"; (8) the "[d]efendant's motivation for harm"; and (9) "[w]hether the defendant attempted to conceal its misconduct."

*Georgetown Rail Equip. Co.*, 867 F.3d at 1245 n.6 (quoting *Read Corp.*, 970 F.2d at 827); *WCM Indus., Inc.*, 721 F. App'x at 972–73 (listing *Read* factors). "Although 'the district court is not required to discuss the *Read* factors,' it 'is obligated to explain the basis for the [enhanced damages] award, particularly where the maximum amount is imposed.'" *Polara Eng'g, Inc. v. Campbell Co.*, 894 F.3d 1339, 1355 (Fed. Cir. 2018) (citation omitted) (alteration in original) (first quoting *Presidio Components, Inc.*, 875 F.3d at 1382; and then quoting *Read Corp.*, 970 F.2d at 828); *see also Presidio Components, Inc.*, 875 F.3d at 1382–83 (noting that courts are "not required to discuss the *Read* factors" and "[t]he *Halo* test merely requires . . . court[s] to consider the particular circumstances of the case to determine whether it is egregious").

Plaintiff has offered evidence that Defendants are its "direct and only competitor" and that there is market demand for let-detection systems among a "small subset of potential clients" that "control a closed market comprising virtually the entirety of the professional tennis tournaments." (Goldstein Default J. Decl. ¶¶ 6–7.) In addition, Plaintiff argues that "[d]ue to a change in the rules, let-detection systems with an integrated shot clock function are the only acceptable systems used at professional tournaments," (Pl.'s Mem. 27), and Plaintiff has provided evidence that "[a]ll high level tournaments [at] the [U.S.] Open require means for let detection *and* means to enforce an on court shot clock that alerts the players when the [twenty-five] seconds to start the next point . . . is running out." (Goldstein Default J. Decl. ¶ 21(b).) As

the integrated shot clock button is a limitation or feature of the inventions claimed in the '307

and '341 Patents and is required at all high-level tournaments at the U.S. Open, it appears there

are no acceptable non-infringing alternatives to Plaintiff's system.  ('307 Patent; '341 Patent.)

Plaintiff has also introduced evidence that it has the manufacturing and marketing capability to

exploit the demand, as Plaintiff merely leases its systems for the duration of tournaments and the

U.S. Open occurs only once a year, and thus "any product dedicated only to the [U.S.] Open

would be produced in advance and then used year after year."  (Goldstein Default J. Decl. ¶ 21c.)

However, Plaintiff has provided an estimate of its lost leasing fees rather than of its actual

damages, or lost profits, from the U.S. Open tournaments.  Goldstein explains that the $60,000

leasing fee per Grand Slam event is "arrived at since it equates to the first offer to the USTA in

early 2015 of the amount $56,000," which the USTA informed him "was quite reasonable and

not a factor at all in their consideration of whether to switch to [Plaintiff] in 2015."  (*Id.* ¶ 21d.)

"Given the considerable improvements (e.g. two additional handsets included in the Group One

Net System, embedded battery with three week charge, improved menu functions, new silicon

button panel, shot clock button, and more), plus the passage of six years of inflation," Goldstein

maintains that "a $60,000 price tag in 2021 for the current version is a conservative estimate of

the profits [Plaintiff] would make from each Grand Slam."  (*Id.*)  Because Plaintiff did not

provide evidence of its fixed costs, the Court is unable to determine the profits Plaintiff would

have made.  *See, e.g.*, *Panduit Corp.*, 575 F.2d at 1156 (affirming denial of lost profits where

there was "a lack of evidence on [the plaintiff's] fixed costs); *Town & Country Linen Corp. v.

Ingenious Designs LLC*, No. 18-CV-5075, 2022 WL 2757643, at *23 n.15 (S.D.N.Y. July 14,

2022) (noting that without evidence of fixed costs, "a factfinder could not establish with

reasonable certainty the profits [a patentee] would have made").  Nor has Plaintiff provided

evidence to support an award of reasonable royalties.  Accordingly, the Court denies without prejudice Plaintiff's requests for lost profits and enhanced damages based on its patent claims.

### ii.   Lost profits based on Plaintiff's non-patent claims

Plaintiff claims that it is "entitled to at least damages in the form of profits it would have received from the Grand Slam events in at least 2020, and 2021." (Pl.'s Mem. 30.)  As Judge Cho noted, "[e]ven though [P]laintiff does not cite any case law in support of this entitlement, it could claim entitlement to lost profits under either the Lanham Act or New York common law" resulting from Defendants' false and misleading statements in violation of section 43(a) of the Lanham Act, 15 U.S.C. 1125(a), and tortious interference with prospective business relations and unfair competition under New York common law.  (R&R 32.)  "Because the Lanham Act provides a more lenient standard in assessing damages, and [P]laintiff can only recover once for damages suffered," Judge Cho assessed Plaintiff's request for damages under the Lanham Act. (*Id.* at 33.)

### 1.   Judge Cho correctly analyzed lost profits under the Lanham Act, rather than the New York common law

Plaintiff objects to Judge Cho's "recommendation that lost profits damages should be assessed under the Lanham Act only to the extent that doing so would preclude a more advantageous calculation of lost profits under any of the other causes of action that are ultimately reflected in the default judgment." (Pl.'s Objs. 22.)  However, Plaintiff has not offered an alternative calculation of lost profits under any of the other causes of action on which the Court has deemed default judgment appropriate, leaving the Lanham Act and the New York common law as the only bases for awarding non-patent lost profits.  In addition, the Court agrees with Judge Cho that the Lanham Act provides a more lenient standard than the New York common law, as it allows courts to engage in "some degree of speculation" about the amount of damages,

*PPX Enters. v. Audiofidelity Enters.*, 818 F.2d 266, 271 (2d Cir. 1987) (quoting *Burndy Corp. v. Teledyne Indus., Inc.*, 748 F.2d 767, 771 (2d Cir. 1984)), rather than requiring Plaintiff to prove its lost profits with "reasonable certainty," *Int'l Mins. & Res. S.A. v. Pappas*, 96 F.3d 586, 597 (2d Cir. 1996). Accordingly, the Court analyzes Plaintiff's lost profits under the Lanham Act. (*See* R&R 33 (citing *Krasnyi Oktyabr, Inc. v. Royal Sweet Bakery, Inc.*, No. 05-CV-3021, 2007 WL 2815808, at *5 n.7 (E.D.N.Y. Sept. 25, 2007))); *Krasnyi Oktyabr, Inc.*, 2007 WL 2815808, at *5 n.7 ("Lost profits are recoverable under both the Lanham Act and common law. Plaintiff, however, is permitted to recover only once for damages it actually suffered. Plaintiff has not specified under which law it seeks an award of lost profits. Therefore, this [c]ourt will analyze plaintiff's claim for lost profits under the Lanham Act.").

### 2.  Lost profits analysis

Plaintiff argues that "Defendants' deliberate dissemination of false and misleading statements about [Plaintiff] and its products to [Plaintiff's] prospective customers, including the USTA, proximately caused it to lose contracts with the other Grand Slam events." (Pl.'s Mem. 30.) In support, Plaintiff argues that these events "generally . . . use the same let-detection provider used by the other Grand Slam tournaments and are likely to purchase the same service provider again and again," and a "single lost sale can thus mean a loss of future business both to the same customer and to others." (*Id.* (citing Goldstein Default J. Decl. ¶¶ 7, 9–10).) Plaintiff seeks $300,000 in non-patent damages "in the form of profits it would have received from the Grand Slam events in at least 2020, and 2021," but for Defendants' false advertising. (Pl.'s Mem. 30.) The Grand Slam events include the U.S. Open, Australian Open, French Open, and

Wimbledon.[26]  (Goldstein Default J. Decl. ¶ 7.)  To avoid double counting with its request for patent infringement damages related to the U.S. Open, Plaintiff does not include the U.S. Open in its request for non-patent lost profits.  (Pl.'s Mem. 30 n.4.)

When a plaintiff establishes a violation of the Lanham Act, "subject to the principles of equity," the plaintiff is entitled "to recover (1) [the] defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."  *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 261 (2d Cir. 2014) (quoting 15 U.S.C. § 1117(a)); *see also Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 80 n.1 (2d Cir. 2020).  "[A] plaintiff who establishes false advertising in violation of § 43(a) of the Lanham Act will be entitled only to such damages as were caused by the violation."  *Burndy Corp.*, 748 F.2d at 771.  Although "causation must first be established," a court "may engage in some degree of speculation in computing the *amount* of such damages, particularly when the inability to compute them is attributable to the defendant's wrongdoing."  *Id.*; *Church & Dwight Co. v. SPD Swiss Precision Diagnostics GmbH*, No. 14-CV-585, 2018 WL 4253181, at *14 (S.D.N.Y. Sept. 5, 2018) ("In order to recover lost profits, [the plaintiff] must prove that the violation — false advertising — caused it damages, and then provide a reasonable basis for the amount of damages.").

Regarding causation, "[i]t is well settled that in order for a Lanham Act plaintiff to receive an award of damages the plaintiff must prove either actual consumer confusion or

---

[26]  Goldstein contends that the Australian Open and French Open showed interest in Group One's Net System "by inviting [Plaintiff] to enter [their] formal public tender bidding process."  (Goldstein Default J. Decl. ¶ 13.)  Goldstein notes that, "[d]uring both interviews, similar questions were posed to [him] which indicated" that the Australian Open and French Open, like the USTA, had been exposed to Defendants' false statements, and that "in recent correspondence regarding . . . Wimbledon, several unusual statements were made indicating they too were exposed to some of the same falsehoods and prejudicial remarks."  (*Id.* ¶¶ 15–16.)

deception resulting from the violation, or that the defendant's actions were intentionally deceptive thus giving rise to a rebuttable presumption of consumer confusion." *Merck Eprova AG*, 760 F.3d at 256 (emphasis omitted) (quoting *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1537 (2d Cir. 1992)). "Actual consumer confusion often is demonstrated through the use of direct evidence, e.g., testimony from members of the buying public, as well as through circumstantial evidence, e.g., consumer surveys or consumer reaction tests." *PPX Enters, Inc.*, 818 F.2d at 271. However, "where a defendant's advertising of products is literally false, a Lanham Act plaintiff need not 'provide evidence of actual consumer confusion by resort to witness testimony, consumer surveys, or other such evidence in order to establish entitlement to damages under the Lanham Act.'" *Merck Eprova AG*, 760 F.3d at 256 (quoting *PPX Enters., Inc.*, 818 F.2d at 273); *Time Warner Cable, Inc. v. DirecTV*, 497 F.3d 144, 153 (2d Cir. 2007) ("When an advertisement is shown to be literally or facially false, consumer deception is presumed, and 'the court may grant relief without reference to the advertisement's [actual] impact on the buying public.'" (alteration in original) (quoting *Coca-Cola Co. v. Tropicana Prods., Inc.*, 690 F.2d 312, 317 (2d Cir. 1982)). Rather, "[i]n a false advertising case . . . where the parties are direct competitors in a two-player market, and where literal falsity and willful, deliberate deception have been proved, the presumptions of injury and consumer confusion may be used for the purposes of awarding . . . monetary damages to a successful plaintiff." *Merck Eprova AG*, 760 F.3d at 262.

"Although the quantum of damages, as distinguished from entitlement, must be demonstrated with specificity," *PPX Enters., Inc.*, 818 F.2d at 271 (quoting *Monsanto Chem. Co. v. Perfect Fit. Prods. Mfg. Co.*, 349 F.2d 389, 293 (2d Cir. 1965)), "courts may engage in 'some degree of speculation in computing the *amount* of damages, particularly when the inability to

compute them is attributable to the defendant's wrongdoing,'" *id.* (quoting *Burndy Corp.*, 748 F.2d at 771). "Lost profits are calculated by estimating the revenue lost due to the infringing conduct and subtracting what it would have cost to generate that revenue." *Abbott Lab'ys v. Adelphia Supply USA*, No. 17-CV-6002, 2019 WL 5696148, at *46 (E.D.N.Y. Sept. 27, 2019) (quoting *Victoria Cruises v. Changjiang Cruise Overseas Travel Co.*, 630 F. Supp. 2d 255, 262 (E.D.N.Y. 2008)); *Merck Eprova AG v. Brookstone Pharms., LLC*, 920 F. Supp. 2d 404, 428 (S.D.N.Y. 2013). "Ultimately, a plaintiff only bears the burden of showing 'that its damages calculation is a "fair and reasonable approximation" of its lost profits,'" *Church & Dwight Co.*, 2018 WL 4253181, at *3 (quoting *Merck Eprova AG*, 920 F. Supp. 2d at 428), and "the methodology of assessing and computing damages is committed to the sound discretion of the district court," *Abbott Lab'ys*, 2019 WL 5696148, at *46 (quoting *King Instruments Corp. v. Perego*, 65 F.3d 941, 952 (Fed. Cir. 1995)); *Church & Dwight Co.*, 2018 WL 4253181, at *3 (same).

As Judge Cho noted, Plaintiff "does not claim to have *ever* successfully contracted with *any* of the Grand Slam events" and "provides no explanation" for its lack of sales to these events prior to Defendants' false advertising in 2019. (R&R 34–35.)   Courts generally look to evidence of a plaintiff's pre-violation baseline of sales as a method of establishing the amount of lost profits based on declining sales.  *See, e.g.*, *Strippit, Inc. v. Coffee*, No. 09-CV-905A, 2009 WL 3644247, at *4 (W.D.N.Y. Oct. 27, 2009) ("In order to determine lost profits based on declining revenue, a pre-infringement 'base line' must be established to predict what revenue plaintiff would have generated absent the infringement. . . . [P]roof of a general decline in sales or a disruption of anticipated business growth following the defendant's misconduct can be sufficient in some cases to justify an inference of causation."); Restatement (Third) of Unfair Competition

§ 36 cmt. h (Am. L. Inst. 1995) (same).  Plaintiff's damages request is not based on a decline in

sales but on the loss of new sales to prospective customers, and Defendants' false advertising

may have caused prospective customers to decide not to do business with Plaintiff.  In addition,

because Defendants are Plaintiff's "direct and only competitor," (Goldstein Default J. Decl. ¶ 6),

and because Defendants' default establishes the truth of Plaintiff's allegations that Defendants'

statements were literally false and deliberately deceptive, Plaintiff is entitled to a presumption

that Defendants' false advertising caused Plaintiff injury, entitling it to damages.  *See Merck*

*Eprova AG*, 760 F.3d at 256–57, 262; *N. Shore Vascular Assocs. v. Body Sols. Unlimited, Inc.*,

No. 07-CV-4903, 2009 WL 10708814, at *1 (E.D.N.Y. Aug. 31, 2009) (finding that the

defendant's default established willfulness and "creates an unrebutted presumption of consumer

deception and the right to recover lost profits"), *report and recommendation adopted*, 2009 WL

10708813 (E.D.N.Y. Sept. 18, 2009).

Judge Cho concluded that Plaintiff does "not provide sufficient information for this Court

to calculate lost profit[s]," (R&R 35), because Plaintiff "does not have an exact figure for the fee

it would charge for the Grand Slam events" and instead "estimates that it would have charged

$60,000" per event, and thus he "view[ed] with skepticism the estimated price tag *in lieu* of an

actual one," (*id.*).  Plaintiff argues that "[b]ecause of Defendants' defamatory remarks, [it]

cannot be certain of the amount it would have obtained," and thus "the amount can be more

speculative."  (Pl.'s Objs. 23.)  In addition, Plaintiff appears to argue that the leasing price it

charges for other tournaments — the only actual "price tag" on which it could rely — would not

be helpful in calculating lost profits for the Grand Slam events because the leasing fees are very

different, as "[t]he tours have a combined annual 120 tournaments in [thirty-five] different

countries over [an eleven]-month season" and the Grand Slam events "are just four tournaments over [twelve] weeks in four countries."  (*See id.*)

The Court agrees with Judge Cho that Plaintiff has not provided all of the information necessary to allow the Court to calculate Plaintiff's lost profits.  As noted above, "[r]ecoverable damages . . . can be calculated by estimating the plaintiff's revenues lost as a result of the unlawful conduct *and subtracting any expenses associated with the lost revenues*."  *Merck Eprova AG*, 920 F. Supp. 2d at 428 (emphasis added).  As Judge Cho explains, "because [P]laintiff does not provide the cost it would incur in generating revenue — *i.e.*, production costs, shipping charges, and setup costs — [the] Court does not have the ability to calculate [P]laintiff's lost profits, even speculatively."  (R&R 36); *see Zuppardi's Apizza, Inc. v. Tony Zuppardi's Apizza, LLC*, No. 10-CV-1363, 2014 WL 4841085, at *11 (D. Conn. Sept. 29, 2014) (noting that a plaintiff "is not entitled to recover for lost sales; it is entitled to recover lost profits"); *see also Victoria Cruises, Inc.*, 630 F. Supp. 2d at 263 (collecting cases showing overhead expenses and costs must be deducted to calculate net profits).  Accordingly, the Court denies without prejudice Plaintiff's request for non-patent lost profits.

### i.  Plaintiff's request to submit additional evidence

Plaintiff requests "an opportunity to provide the evidence and proof the Court believes is lacking" within thirty days "so that the Court may have comfort that [Plaintiff's] patents are indeed valid and infringed and that its damage claims are reasonable and supported."  (Pl.'s Objs. 23–24.)  In addition, Plaintiff "requests that the Court's decision [be] held until that time so as to avoid an unnecessary need to renew [its] motion for default judgment."  (*Id.* at 24.)

Based on the foregoing, the Court defers ruling on Plaintiff's requests for damages only. The Court grants Plaintiff thirty days from the date of this Memorandum and Order to provide additional evidence in support of its damages requests.

**III.   Conclusion**

For the reasons stated above, the Court (1) grants default judgment with respect to Plaintiff's claims of patent infringement under the Patent Act, tortious interference with prospective business relations and unfair competition under the New York common law, and false advertising claims under the Lanham Act; (2) denies default judgment with respect to Plaintiff's deceptive trade practices and false advertising claims under the GBL and claim of trade libel under the New York common law; (3) grants Plaintiff's request for a permanent injunction; and (4) defers ruling on Plaintiff's requests for damages.  The Court grants Plaintiff leave to submit additional evidence in support of its damages requests within thirty days of this Memorandum and Order.

Dated:  September 2, 2022
　　　　Brooklyn, New York

　　　　　　　　　　　　　　　SO ORDERED:


　　　　　　　　　　　　　　　　s/ MKB
　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　MARGO K. BRODIE
　　　　　　　　　　　　　　　United States District Judge